ON MAILING

Dec 1 4 2010

COPIED
ORIGINAL SCANNED

COPY   UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT D. HORNAGAY,
        Plaintiff,

vs.                    Case No: 3:09 CV 281) LAC) EMT
OFFICER BURT, et al.,
        Defendants /

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Come Now, Plaintiff, Robert D. Hornagay, pro se, and
hereby submits this response in opposition to defendants'
Motion for Summary judgment. Additionally, Plaintiff
requests that the Court Strike Exhibits (C) through (G), (1)
through (H), (N); (P) through (R), (Y), and (Z) of defendants'
Motion for Summary judgment for failure to comply
with Rule 56 (e) of Fed. R. Civ. P.

PLAINTIFF'S STATEMENT OF MATERIAL AND
GENUINE FACTS

1. On October 5, 2008, Plaintiff filed a informal inmate
grievance on defendant Burt. This grievance was answered
and denied by defendant Burt on October 9, 2008. (Exh's
A, B)

2. On October 10, 2008, At 3:30 pm, defendant Burt went to the Plaintiff's cell and made it clear that he intended to put the Plaintiff on a hit list and conspire with the "Good Ole boys ②" inorder to write false disciplinary reports, have the Plaintiff sprayed with chemical agents, and have the Plaintiff up graded to the most restrictive level of Close management, because of the grievance filed by Plaintiff on October 5, 2008. (Exh's D:3, E:3-4, F:3, G:1) (also See Exh A2:7)

3. Moments after threatening the Plaintiff, defendant Burt falsely claimed that Plaintiff was yelling on the wing and arguing with him, and the Plaintiff received an unsatisfactory mark on his daily record of special housing, from defendant Burt. (Exh. 1, G)

4. Later on that same day, defendant Covin, while doing his routine security check, stopped at Plaintiff's cell door for exactly twelve seconds, while examining the cell, before continuing his check. ③ (Exh J)

5. Defendant Covin falsely claimed that while doing his routine security check the Plaintiff threatened him, and Covin wrote the Plaintiff A false disciplinary report (here in after DR) on October 11, 2008, inorder to avoid overtime on October 10, 2008. (Exh H) The DR defendant Covin wrote the Plaintiff stated in relevant part:

footnotes
① Plaintiff's grievance was directed to defendant Gredow for review, but was answered by defendant Burt contrary to prison rules (Exh B:1, C)
② Plaintiff states in his declaration, "The Good ole boys is a well known prison phrase for officers who hide/cover the misdeeds of one another and conspire against inmates." (Exh G)
③ The disposition of the videotape evidence supports that defendant Covin was at plaintiff's cell door for exactly 12 seconds.

Inmate Hornaday, Robert Dc# J13805 is being charged with a violation of Chapter 33-601.314 rules of prohibited Conduct (1-3) Spoken or written threats. On 10/10/08 I was assigned as a D-dormitory housing officer. At approximately 9:30pm, I was conducting a security check in wing three when I overheard yelling coming from D3115, where inmate Hornaday, Robert Dc# J13805 is housed with inmate Sanderson, John Dc# J24620. I observed inmate Hornaday standing up in the cell yelling at inmate Sanderson who was lying on the top bunk, I ordered inmate Hornaday to stop yelling and he replied, "Shut the fuck up! Y'all always be fucking with me. I'm gonna kick your punk ass when I get the chance". I again ordered inmate Hornaday to stop yelling and inmate Hornaday replied "Fuck yourself" and sat on his bed and refused to reply to my attempts to counsel with him. [4] (EXHS F:6-10, E:5, G, H)

Defendant Crelow found the Plaintiff guilty of the DR based on defendant Covan's statement alone. The DR resulted in Plaintiff having his telephone, visitation, and exercise privileges suspended for fifteen days (EXHA). Plaintiff also had to serve thirty days in confinement, and the DR was considered when upgrading the Plaintiff to the most restrictive level of close management.

6. The Plaintiff has been living in the same dorm that defendant Covan was working in; throughout the seven months of being in the same dormitory as defendant Covan, the Plaintiff has never been wrote up or reprimanded by defendant Covan [5]

footnote

[4] No reasonable jury would find that all the action threats alleged in defendant Covan's DR could have been place in exactly twelve seconds. (EXH. J)

[5] In Covan's answer to interrogatories, he could not recall having to write the plaintiff up for any type of aggressive, violent, disrespectful

for anything, until it was discovered that Plaintiff filed a grievance on defendant Bur's. (Exh.G,H

7. On October 12, 2008, the Plaintiff filed another inmate grievance against defendant Burt, which was reviewed and denied by defendant Crelow, After holding a interview with defendant's Burt on October 16, 2008. (Exh's N, O-2)

8. A few hours after the interview, defendant Burt wrote the Plaintiff two unsatisfactory marks on his daily record of special housing, falsely claiming that the Plaintiff was yelling on the wing during count and trying to talk to other inmates while in the CM3 dayroom. (Exh P)

9. Prior to defendant Burt's interview with defendant Crelow, the Plaintiff, maintained a satisfactory security rating since October 10, 2008, which is when the initial act of retaliation by defendant Burt and Covan took place. (Exh 1, P)

10. On October 15, 2008, the Plaintiff filed another inmate grievance against defendant Burt, which was reviewed and denied by Defendant Crelow after holding a interview with defendant Burt on October 17, 2008. (Exh's B-3, O-1, Q)

11. A few hours after the interview, defendant Engstrom threatened him and wrote falsely claimed that the Plaintiff'd false DR. (Exh.R) The DR defendant Engstrom wrote the Plaintiff stated in revelant Part :-

Footnote
_____

or threatening conduct prior to plaintiff's alleged conduct on October 10, 2008. (Exh.L.) 1. In Covan's answers to the first set of Interrogatories, when asked to describe any and all type of disruptive, aggressive, violent, disrespectful, or threatening conduct defendant Covan personally witnessed of the plaintiff on or prior to October 10, 2008, defendant Covan could only point to the allegations made in his DR, which was wrote after Plaintiff's grievance was denied by defendant Burt. (Exh's M-16, λ)

4

I was responding to a disturbance in wing 3 when I was directed to cell D3115 where inmate Hornaggy, Robert DC# J13805, who is housed in D3115L, was beating his death in his cell singing, "Fuck the police". I ordered inmate Hornaggy to stop singing and he stated to me, "The only way I'm gonna stop singing is if I get out of this cell and beat your country ass!" I again ordered inmate Hornaggy to stop his disruptive behavior and he stated, "[You're lucky I'm feeling good, I'm gonna stop for now." (Exhs E:10, F:4-5,5, G)

Defendant Cielow found the Plaintiff guilty of the DR based on defendant Engstrom statement alone. The DR resulted in Plaintiff serving thirty additional days in confinement and was considered when upgrading Plaintiff to the most restrictive level of close management along with getting Plaintiff placed on heighten security status for six months. (Exh R)

12. Throughout the timeframe the Plaintiff was housed in the same dorm defendant Engstrom worked in, the Plaintiff has never been subject to any write ups or reprimanded by defendant Engstrom for anything, until it was discovered that Plaintiff filed a grievance on defendant Burt. (Exhs F:10, G, U:1-2, G)

footnotes

[1] Florida Administrative Code inregards to reporting disciplinary infractions, (F.A.C) 33-601.33(1)(a)and(2), states in relevant part : If the employee cannot resolve the matter through a verbal reprimand or corrective consultation, the employee shall consult with and obtain approval from his supervisor regarding preparation of a formal DR". (See Exh 1) The DR wrote by defendant Engstrom clearly supports that the Plaintiff ceased his alleged disruptive behavior; therefore, defendant Engstrom had effectively resolved the alleged matter through a verbal reprimand; however, Engstrom failed to comply with the mentioned prison policy, when moving to write a formal disciplinary report after the alleged infraction had been properly disposed of. - Prison officials compliance with prison policy is evidence of them acting either in good

5

13. On October 17, 2008, while passing out mail, defendant Burt stopped at Plaintiff cell door holding a piece of mail addressed the Plaintiff then kept on walking pass to the next cell. Defendant Burt walked pass the Plaintiff's cell approximately thirty minutes later and stated to the Plaintiff "It was good to receive mail from Gladys Stokes[7], to bad it went in the trash." (Exh's D:3, F:3, B:5, V, W)

14. On October 18, 2008, defendant Burt wrote the Plaintiff a unsatisfactory mark on his daily record of special housing, falsely claiming that the Plaintiff was yelling on the wing. (Exh's G, P)

15. On October 17, 2008, Plaintiff filed a informal inmate grievance on defendant Burt. This grievance was answered and denied by defendant Burt on October 21, 2008. (Exh's B:6, E:12-13, X)

16. On October 21, 2008, defendant Burt wrote the Plaintiff two more false and unjustified unsatisfactory marks on his daily record of special housing. (Exh's G Y)

17. On October 21, 2008, at approximately 10:00 am, Plaintiff appeared at a disciplinary hearing and described to defendant Gielow, the lieutenant of the housing area, the events that took place over the past two weeks, and Plaintiff requested a transfer to another dorm. (Exh's E:14, G)

18. At approximately 10:25 am, defendant Gielow went to Plaintiff's cell door and directed Plaintiff to stop filing grievances and to write a statement saying that all the grievances filed against defendant Burt were based upon lies. (Exh's E:15, D:7, Z:12) ■■■,

Footnotes

or bad faith. See Campbell v. Sikes, 169 F.3d at 1377, and Sims v. Mashburn, 25 F.3d 980, 985; Williams v. Bergerin 77 F.3d 766.

In Plaintiff's declaration he states the following: "Gladys Stokes is my mother, who has been writing me every week since I came to prison". (Exh E:9)

6

19. Plaintiff failed to write the statements exactly how defendant Cielow directed him to, so defendant Cielow ordered defendant Rayborn to spray the Plaintiff with chemical agents. (Exhs E:15-17, D:7, Z:12, O:4, A2, B2) (Also see Exh D2)

20. At 9:40 p.m on October 21, 2003, defendant Grace approached Plaintiff's cell and stated "So your the crying little bitch that wants to write everything up? We have something for this kind of shit around here." (Exh E:18, F:10, E2)

21. Defendant Grace then lied by claiming that the Plaintiff attempted to spit on him, and he wrote the Plaintiff a false disciplinary report. (Exhs E:19, G, E2, f2)

22. At 10:21 p.m on October 21, 2003, defendant Burt wrote Plaintiff another unsatisfactory mark on his daily record of Special housing, falsely claiming that the Plaintiff was kicking on the cell door. (Exhs Y, G)

23. At 10:50 pm, defendant Grace walked past Plaintiff's cell and falsely claimed that the Plaintiff spit on him, and he wrote the Plaintiff a false disciplinary report. (Exhs E:20, G, E2, G2, H2)

24. The disciplinary reports resulted in Plaintiff serving one hundred and twenty days in confinement, was considered when upgrading the Plaintiff to the most restrictive level of close management; Plaintiff was forced to wear a face mask for six months and placed on a management meal diet by Captain Jackson recommendation. (Exhs H2, I2, E:21)

25. As a result of the management meal, the Plaintiff suffered[1] approximately twenty-five pounds, starvation do to said punitive diet being uneatable, unappetizing[2] and repulsive, sleep deprivation for seven days, psychological and physiolog[y]

_____
footnotes

[1] In Mr. Pryor's declaration he states "I lost 15 pounds being on a management meal in the dept of corrections." And "I couldn't eat the loaf because everytime I eat it, it makes me gag." (Exh C2)

2

deterioration, emotional pain, and mental anguish. (Exhs E:22,C2)

26. By defendant Gielow being the Shift lieutenant / Shift Supervisor he had a duty to make daily visits in order to follow the Plaintiff's progress while on the Special Management meal and to determine when the Plaintiff should be removed from the Special management meal status. (Exhs 12, O:5, E:23)

27. Defendant Gielow had full knowledge that throughout Plaintiff's placement on management meal, the Plaintiff had not been involved in any other alleged misconduct that would require continued placement on management meal diet. (Exh E:23,O:3)

28. With total disregard for the prison policy, defendant Gielow did not make daily visits with the Plaintiff to determine if he [Plaintiff] should be removed from the management meal diet. (Exhs O:3:5, E:23,12)

29. On the night of October 21-22, 2008, defendants Rayborn and Orso approached the Plaintiff's cell, and defendant Rayborn stated "horndoggy you done went and passed the lieutenant off with them grievances, now I get to spray up the place, I'll be back in a few so get ready." (Exhs D:3, E:24, Z:6)

30. At all material times, Plaintiff was secured behind a cell door, followed all orders, and never once yelled or kicked on the cell door (See videotape and Exhs D:6, E:25, Z:5-6)

31. At approximately 12:15 am, defendants Rayborn and Orso went to Plaintiff's cell door with a video camera. Defendant Orso issued Plaintiff a verbal order to cease his disruptive behavior, which the Plaintiff was never creating. (See videotape and Exhs D:6, E:24-28, Z:5-6) (also see Exh R2:3)

32. At approximately 1:05 am, defendant Raybon, acting on the verbal order of defendant Grelow, falsely claimed that the Plaintiff was creating a disturbance on the wing and sprayed the Plaintiff with chemical agents. (Exh's E:25, F:12, 32)

33. Defendant Raybon sprayed exactly 109 grams of chemical agents into the Plaintiff's cell. (Exh H2)

34. After the application of chemical agents, the Plaintiff was allowed to shower and was seen by Medical Staff; however, Medical Staff was ordered not to remove Plaintiff's face mask; therefore, Medical Staff was unable to attend the Plaintiff's scalp (See videotape, Exh G)

35. Defendant's Raybon and ORSA placed the Plaintiff back in the same cell that was inefficiently decontaminated. (Exh's D:9-10, E:30)(also See Exh R2:5)

36. With total disregard for the fact that there was Chemical agents on the cell floor, walls, sink area, and on both beds, the defendants Raybon and ORSA still placed the Plaintiff back in the same cell. (Exh's D:9-10, E:30-31)(also R2:5)

37. The defendants Raybon and ORSA refused to allow the Plaintiff to exchange his chemical agent stained sheets, Blanket, and clothes for approximately three and a half hours. The Plaintiff was placed back in the cell at 1:47am but was not allowed to exchange the chemical agent stained material for clean material until 3:30 am. (Exh's G, also See Second page of Exh. Y, Daily record of Special housing)

Footnote
@
In Mr. Hodges deposition he states "I worked for sergeant Raybon as a house-man and they would tell us not to worry about cleaning up the cells sometimes saying, as I remember, "that mother fuckers going right back in that shit" and out of fear "us" orderlies did as told." (Exh D:9)

38. The Chemical agents, that was all over the cell, would transfer to the Plaintiff's skin when ever he touched rubbed, or sat on anything in his cell. (Exh's G, E:32

39. Prior to the application of chemical agents, the Defendants turned off the circulation fans on the wing and kept them off for the rest of the night. The strong vapors from the chemical agents lingered in the Plaintiff's cell and on the wing. (see videotape : Exh E:33, D:11)

40. The exposure of chemical agents made the Plaintiff suffer from burning skin and lungs, congested breathing and tearing eyes, nasal discharge and dizziness, and a sensation of respiratory distress. The Plaintiff experienced dramatic effects of choking and went through a intense state of helplessness and fear of dying. (Exh's D:12, E:34, L2, M2, N2, O2) (also see Exh Z:8)

41. The Chemical agents lingered in the Plaintiff's cell for approximately five days, causing excruciating physical pain, as if the Plaintiff was being subject to the direct application of chemical agents all over again (Exh E:35, L2, M2, N2, O2) (also see Exh Z:8

42. Chemical agents do have a lingering effect that normally lasts up to six days when fresh air is provided, but the agents are intensified and lasts longer when the circulation fans on the wing are turned off and kept off. (Exh's L2, M2, N2, O2, Z:9)

footnotes _____

[10] In Mr. Nelson declaration he states "I was moved into a cell in G-dorm were another inmate was sprayed with agents, upon moving into the cell it wasn't decontaminated properly therefore causing respiratory problems severe coughing also struggling to breathe as if I was being gased with agents" And "Chemical agents are very strong and affects everyone surrounding you it also lingers for hours disturbing breathing patterns." (Exh L2)

43. As a proximate result of the defendants actions, the Plaintiff has suffered physical injury and will continue to suffer extreme mental anguish and emotional distress, depression and anxiety. Plaintiff now has difficulty sleeping for fear of being attacked with chemical agents without provocation. (Exhs E:39, G) (also see Exh Z:8)

44. Defendant Rayboon filed a false disciplinary report against the Plaintiff to "cover up" and justify his use of chemical agents and to retaliate against the Plaintiff for filing grievances. (Exhs E:40, J2, P2)

Defendant Gielow found the Plaintiff guilty of the DR based on defendant Rayboon's statement alone. The DR resulted in Plaintiff serving thirty additional days in confinement, and the DR was considered when up grading the Plaintiff to the most restrictive level of close management. (Exhs E:41, P2)

45. Throughout the acts of retaliation and after, Plaintiff continued to file grievances in order to exhaust his administrative remedies and to appeal the guilty findings on all the DRs under litigation. (Exh G)

46. The DRs given to Plaintiff during October of 2008 and the chemicals utilized on Plaintiff on October 22, 2008 were done solely because of Plaintiff's use of the inmate grievance procedure. (Exhs D:3-8, E:1-44, F:3-10, Z:3:12, H, V, A2, B2, E2, G2, J2)

47. Defendants Covan, Burt, Gielow, Engstrom, Grace, Orsa, and Rayboon all had knowledge of the grievances filed against defendant Burt by Plaintiff in October of 2008. (Exhs D:3;7, F:3-10, H, V, Z:12, A2, B2, E2, G2, J2)

48. Plaintiffs continued placement on close management was a direct result of the false DRs wrote by the defendants. (Exhs R)

## MEMORANDUM OF LAW

1. The Plaintiff has clearly established a claim of retaliation against all of the Defendants, in violation of the First Amendment.

In order for Plaintiff to state a First Amendment retaliation claim, "a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1250 (11th Cir. 2005).

As to the first prong, it is well established that a prisoner's filing of grievances is protected speech. <u>Douglas v. Yates</u>, 535 F.3d 1316, 1321 (11th Cir. 2008).

As to the second prong, for a prisoner to demonstrate a total chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim, is impossible. The Prison Litigation Reform Act of 1996 ("PLRA") establishes strict prerequisites to the filing of prisoner civil rights litigation. Most notably, PLRA requires that "No action shall be brought with respect to prison conditions under ... 42 U.S.C. 1983, or any other Federal law, by a prisoner until such administrative remedies as are available are exhausted. A prisoner's speech can be chilled even when not completely silenced. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 561 (9th Cir. 2004) ("fact that State prisoner undertook exhaustive efforts, including filing of internal administrative grievances, external appeals, and a 1983 suit, to remedy alleged violations of his First Amendment rights to file grievances and pursue civil rights litigation, and that he thus may have failed to demonstrate chilling of such rights, didn't demonstrate that his First Amendment rights

were not violated at all, adoption of such theory would subject prisoners to a "Catch-22," by establishing rule that, by virtue of inmates having fulfilled requirements necessary to pursue cause of action in federal court, he would be precluded from prosecuting the very claim he was forced to exhaust.")

[11] The Plaintiff has been subject to ~~different~~ different acts of retaliation such as five false disciplinary reports, resulting in Plaintiff having to serve over two hundred days in confinement, personal mail unlawfully confiscated, loss of multiple privileges, placed on a management meal, and sprayed with chemical agents; the harm suffered by the Plaintiff is more than minimal and will almost always have a chilling effect. Alleging harm and alleging the chilling effect would seem under the circumstances to be no more than a nicety. See Pratt v. Rowland, 65 F.3d 802, 307 (9th Cir. 1995) also See e.g. Rhodes, 408 F.3d at 62 (The infliction of harms other than a total chilling effect can establish prison officials' liability for retaliating against a prisoner for exercising his or her First Amendment rights).

As to the third prong, the Plaintiff has clearly set forth a causal connection between the grievances filed against defendant Burt and the retaliatory conduct of defendants Burt, Cavin, Engstrom, Grace, Gielow, Ratzon, and Ortsa. (Exh's D: 3-12, E: 1-42, F: 3-10, 4, 5, V, Z: 13, A2, B2, E2, G2, J2)

Furthermore, the temporal proximity between the Plaintiff's grievances and the disciplinary action may serve as circumstantial evidence of retaliation. [12] Colon v. Coughlin, 58 F.3d 865, 871 (2nd Cir 1995); Harris v. Fleming, 839 F.2d 1232, 1233 (7th Cir 1988)

footnote _____

[11] It is noted that the Eleventh Circuit adoption of the "ordinary firmness" test, would be unfit for prisoners. Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005)- the "ordinary firmness" test is for private citizens.
[12] Circumstantial evidence is as valid legally as direct evidence,

13

; In the instant case, the Plaintiff filed a grievance on October 5, 2008, that grievance was reviewed and denied by defendant Burt on October 9, 2008, the very next day defendant Covin retaliated by writing the Plaintiff a false DR, and defendant Burt retaliated by writing a baseless unsatisfactory mark on Plaintiff's daily record of Special housing. (Exh's A, B:1-9, 4, H)

The Plaintiff filed another grievance on October 12, 2008, that grievance was reviewed and denied by defendant Gielow on October 16, 2008, after conducting a interview with defendant Burt, which resulted in defendant Burt retaliating by writing another baseless unsatisfactory mark on Plaintiff's daily record of Special housing. (Exh's N, B:3, P)

The Plaintiff filed another grievance on October 15, 2008, that grievance was reviewed and denied by defendant Gielow, after conducting a interview with defendant Burt, on October 17, 2008, the very same day, defendant Burt intercepted and destroyed Plaintiff's incoming mail, and defendant Engstrom retaliated by writing the Plaintiff a false DR. (Exh's Q, B:3, F:3-5, v)

The Plaintiff filed another grievance on October 17, 2008, upon information and belief, defendant Burt reviewed and denied the grievance on October 21, 2008, which is the same day the Plaintiff made a verbal grievance to defendant Gielow at a DR hearing, that resulted in Gielow going to Plaintiff's cell door trying to force

footnotes
_____

though it may not be as persuasive. See Smith v Mieschner, 3M F.2d 940, and fosster v wynch, 823 F.2d 218

Plaintiff do write a statement saying he [Plaintiff] l____ on all the grievances wrote against Burs. Plaintiff refused to ___ write the statement, so that very same day, defendant Grace ___ wrote the Plaintiff two false DR's all in retaliation, and when ___ mid-night shift ● came on, defendant Rayben retal____ by spraying the Plaintiff with chemical agents then ___ the Plaintiff a false DR. (Exh's D:4-8, B-6, X, Z:12, A2, B2___ __2)

It has been long held that the burden of proof ___ met by circumstantial evidence such as time seque___ of a legal action and the alleged retaliation. See Smit___ Maschner, 899 F.2d 940, 947-49 (10th Cir 1990); Flaherty v. C____ 713 F.2d 10 (2d Cir. 1983), Baker v. Zlochowen, 741 F. Supp.4__ 40 (S.D. N.Y. 1990).

Moreover, Plaintiff's Complaint did aver a chronology ___ which may be read as providing support for an inference___ retaliation. (Exh E). In Milhouse v. Carlson, 652 F.2d 37_ (3rd Cir 1981)[ the Court held "prisoner's allegations should b_ as a unit, rather than as isolated incidents,"So viewed, the____ cate a series of actions designed to punish prisoner for____ access to the courts.")

In addition, the Plaintiff has setforth another form of____ stantial evidence such as prior good behavior; prior to th___ Plaintiff filing his october 5, 2005, grievance against de____ Fortnote

● In Harris deposition he stated," I vividly recall the LT tryin____ force him to write the statement. He said if he proceeds ___ his grievances he'll get gassed." (Exh. Z:12)

Burd, the Plaintiff, with the exception of one minor DR for lying to staff about hiding cigarette butts, maintained a above satisfactory security rating and remained DR free for approximately twenty months (Exh's G)
See Flaherty v. Coughlin, 713 F.2d 10,13 (2d Cir.1983)

II. The Plaintiff has stated an Eighth Amendment violation.
As stated in the Plaintiff's Complaint, Defendant Raybon sprayed Plaintiff with chemical agents at the behest of Defendant Grelow in retaliation for Plaintiff filing grievances (Exh JA) Defendant Orso was present during the use of excessive force and did collaborate with said defendants plot to cause harm to Plaintiff. (Exh D:7)

The Eighth Amendment prohibits punishment that is deliberately administered for a penal or disciplinary purpose. See Wilson v. Seiter, 501 U.S. 294, 301, 111 S.Ct. 2321, 2325, 115 L.ed.2d 271 (1991) As well as those that transgress todays broad and idealistic concepts of dignity, civilized standards, humanity, and decency. Wilson, 111 S.Ct. 2329 the eighth amendment's ban on infliction of cruel and unusual punishments, made applicable to the States by the fourteenth amendment, proscribes more than physical barbarous punishments; it involves the unnecessary and wanton infliction of pain --- among unnecessary and wanton infliction of pain are those that are totally without penological justification. id.

When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. See Despain v. Uphoff, 264 F.3d 965, 978 (10th Cir. 2001) citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct

995, 117 L.Ed.2d 156 (1992). Even where chemical agents are used, "--- chemical agents like tear gas become instruments of brutality when used indiscriminately." DeSpain, 264 F.3d at 980.

The use of chemical agents as a means of force against a recalcitrant prisoner who refuses to obey an order generally does not, in itself, violate the Eighth Amendment. See Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008) (holding in context of pretrial detainee's excessive force claim that the use of "pepper spray is an accepted non-lethal means of controlling unruly inmates" and that "a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders"). This is true even though chemical agents, by their very nature, are "designed to disable a person by causing intense pain, a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx," and, occasionally, "disorientation, anxiety, and panic in the person sprayed." Id. at 1309 (citing cases). Thus, this degree of pain is constitutional because the effects are temporary -- or at least are intended to be.

However, even the temporary pain caused by the use of chemical agents may be constitutionally cognizable when the chemical agents are used unnecessarily. Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002) (holding that use of pepper spray is excessive force under Fourth Amendment where crime is minor, arrestee surrenders, is secured, is not violent or threatening officer safety); Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir. 1984) (recognizing that "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities

greater than necessary or for the sole purpose of punish-
ment or the infliction of pain") (emphasis supplied), <u>Guna v.
Sullivan</u>, No. 2:04-cv-229-f3M-94SPC, 2007 WL 80859, at 4
(M.D. Fla. Jan. 8, 2007)(holding that a jury could find unreason-
able and excessive force had been used if inmate, who
allegedly suffered shortness of breath just following
non-spontaneous use of chemical agents, could prove that
he was arbitrarily selected for punishment hours after
inmates stopped yelling in their cells). See also <u>Rhodes</u>,
452 U.S. at 346 (Among 'unnecessary and wanton' inflictions
of pain are those that are 'totally without penological justi-
fication.") (citation omitted).

Even where chemical agents are permissibly used, when
the effects are longer lasting or exacerbated by prolonged
exposure, inadequate decontamination, or poor ventilation --
something beyond the immediate short term effects
of being sprayed with the chemical agent -- the use of
chemical agents may pose an unreasonable risk to an inmate's
health that is serious enough to trigger inquiry under
the Eighth Amendment. <u>Danley</u>, 540 F.3d at 1311.

Plaintiff also stated a sufficient Eighth Amendment
violation in regards to mental and emotional injuries. See
<u>Strickler v. Waters</u>, 989 F.2d 1375 (4th Cir. 1993) holding that
Eighth Amendment challenge can be met by proof of
serious or significant physical or emotional injury. <u>Jordan
v. Gardner</u>, 986 F.2d 1521 (9th Cir. 1993) holding that inmates
with history of sexual abuse met eighth amendment pain
standard warranting injunctive relief when they were
subject to severe psychological injury and emotional pain
and suffering by prison's pat-down search policy. See
also <u>Smith v. Albingers</u>, 999 F.2d 169 (5th Cir. 1993) reversing

and remanding where district court failed to consider
whether fear alone could be an eighth amendment violation.
See also Hope v. Pelzer, 536 U.S. 730 (2002) highlighting
taunting and humiliation as circumstances which contribute
to finding that handcuffing Petitioner to hitching post
violated the basic concepts underlying the eighth amendment,
which is nothing less than the dignity of man.

Moreover, defendants Grelow and Rayborn violated the
Plaintiff's eighth amendment right, when disregarding
the prison policy, by keeping the Plaintiff on a manage-
ment meal diet for twenty one meals, without any other
alleged misconduct incidents that would require continued
placement on management meal diet. (Exh'sG, O=3:5)

The defendants had the management meal diet no longer
had a necessary penological purpose, such as the defendants
alleged purpose for placing the Plaintiff on the management meal.
To begin with, Estelle v Gamble, 429 U.S. 97, 102 (1976) "prison
conditions rise to the level of an Eighth Amendment violation
only when they involve the wanton and unnecessary infliction
of pain." Hazen v. Pasley, 768 f.2d 226, 228 n.2 (8ᵗʰ Cir 1985)
(holding diet causing "notable weight loss and mildly dimini-
shed health" was unconstitutional) (Exh's E-22,6)

The Plaintiff do not argue that being given a management meal
violated his eighth amendment rights; the Plaintiff asserts that
being kept on the management meal longer than necessary
without a penological purpose is what violated his rights, especially
when considering that the diet was causing notable weight loss.
(Exh's E:22,6)

III. PLAINTIFF'S ENTITLEMENT TO COMPENSATORY AND
PUNITIVE DAMAGES.

It is clear from the Plaintiff's complaint and the exhibits
attached to this motion that the Plaintiff suffered physical

injury that is more than de minimus. Defendant's argument that Plaintiff has not suffered any physical injury and is therefore not entitled to receive damages under 42 U.S.C. 1997e(e), is plainly incorrect. As the evidence show, Plaintiff suffered from burning skin and lungs, congested breathing and tearing eyes; nasal discharge and dizziness, and a sensation of respiratory distress. The Plaintiff experienced dramatic effects of choking and went through a intense state of helplessness and fear of dying. The chemical agents caused the Plaintiff excruciating physical pain and lingered onto his body for approximately five days, which was a result of the application of chemical agents, but moreso because of plaintiff being placed back in a inefficiently decontaminated cell that lingered with chemical agents. These injuries are indisputably "physical" in nature and more than de minimus. They were so serious the Plaintiff had lasting burn marks on his skin. (Exhis E:34, G) Defendants do not cite any case law in support of their argument that 1997e(e) precludes a damages remedy for Plaintiff in this situation. Summary judgment on this basis is improper. See. <u>Watkins v. Trinity Service Group Inc.</u>, 8:05-cv-1142-T-24 MSS, 2006 WL 3408176 (M.D. Fla. Nov. 27, 2006) Citing <u>Luong v. Hatt</u>, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (holding in relevant parts that "Under requirements of Prison Litigation Reform Act, appropriate de minimus standard is whether injury is of nature that would require free world person to visit emergency room or have doctor attend to, give opinion, diagnosis or medical treatment for injury or whether home treatment would suffice.") Therefore, under these footnotes

In Mr Hodges deposition when asked did he recall hearing sounds throughout the night coming from Plaintiff's cell as if he was fighting to breath, he stated, " yes. My roommate even made fun of him, there were coughs, grunts, speeks, spitting sounds, struggling to clear his throat, sneezing, and swearing. (Exh D:12)

standards a injury that constitute a serious medical need is more than de minimus.

In <u>Adams v. Poag</u>, 61 F.3d 1537 (11th Cir. 1995), it was stated that a prisoner's chronic asthma, which resulted in frequent asthma attacks, constituted a serious medical need. Id. at 1539-40, 1543. Plaintiff's allegations about his congested breathing, burning lungs, sensation of respiratory distress, dramatic effects of choking, and intense state of helplessness and fear of dying essentially describe an asthma attack. See 1 J.E. Schmidt, M.D., Attorney's Dictionary of Medicine and word finder A-572 (Matthew Bender & Co., Inc. 2007)(defining "asthma" as a "Condition characterized by recurring attacks of dyspnea (shortness of breath), a feeling of pressure on the chest, wheezing, cough, fear, etc."). While the Plaintiff in Adams allegedly suffered only breathing difficulties, the Plaintiff in this case alleges that he suffered burning skin and lungs, congested breathing and tearing eyes, nasal discharge and dizziness, a sensation of respiratory distress; he experienced dramatic effects of choking and went through a intense state of helplessness and fear of dying. The chemical agents caused excruciating pain and lingered onto Plaintiff's body for approximately five days. If the Plaintiff in <u>Adams</u> stated a serious medical need, as it was held he did, then the Plaintiff in this case does as well. Therefore, under the de minimus standard in <u>Luong</u>, 971 F.Supp.2d 486, the Plaintiff's injuries suffered is more than de minimus, because the injuries constituted a serious medical need. See <u>Danley v. Allen</u>, 540 F.3d 1298, 1310 (11th Cir 2008).

Furthermore, it could be argued that chemical agents does not create a serious medical need because it causes "only temporary discomfort", which is true in some cases,

21

however, the Plaintiff's injuries are a result of prolonged exposure to chemical agents with inadequate decontamination and poor ventilation, not the immediate effects of the chemical agents. Also see Robison v Via, 821 F.2d 913,924 (2d Cir 1987)

IV. Defendant's Has failed to Satisfy the Requirements of Fed.R.Civ.P.56(e).

Due to the Defendants failure to Satisfy the requirements of Rule 56(e), Exhibits "C" through "G", "I" through "M", "N", "P" through "R", Y, and Z of defendants' motion for Summary Judgement Should be Struck from the record, as being unsworn and unauthenticated.

Rule 56(e) States, in part, that "if a paper or part of a paper is referred to in a affidavit, a sworn or certified copy must be attached to or Served with the affidavit." It has been long held that documents submitted in support of a motion for Summary judgement must Satisfy the requirements of Rule 56(e); Otherwise, they must be disregarded. See Dole v Elliot Travel & Tours, Inc., 942 F.2d 962,968-69 (6th Cir.1991); First Nat. Bank CO. of Clinton, III. v Insurance CO. of North America, 606 F.2d 760 (C.A.7 1979)

The mentioned exhibits in this case are neither Sworn to nor certified and should be disregarded.

## CONCLUSION

In accordance with the aforementioned facts and case law, Plaintiff request that defendants' motion for Summary judgment be denied.

Respectfully Submitted

/S/ Robert D. Hornasby

Robert D. Hornasby

22

Certificate of Service

I certify that a true and correct copy of the foregoing has been furnished by U.S. Mail to: Defendant's Counsel, Lance E. Neff at the Office of the Attorney General, PL01, the Capitol, Tallahassee, FL 32399-1059, and Barry Ginger at Broad and Cassel, 200 Grand Blvd, Suite 205A, Destin, Florida 32550 on this 8th day of November 2010.

Robert D. Hornaday
Robert D. Hornaday

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT D. HOPKINS GRAY, inmate # 201003023
        Plaintiff,

vs.                                    Case No: 3:09-cv-281| LAC | EMT

OFFICER BURN, et al.,
        Defendants /

    Exhibits 10 Plaintiff's Response In Opposition
10 Defendants Motion for Summary Judgment

A) Plaintiff's informal grievance filed on October 5, 2008,
against Defendant Burt.
B) Defendant Burt Admissions.
C) Florida Administrative Code, Chapter 33·103.015.
D) Malcom Hodges written Deposition.
E) Plaintiff's fourth Amended Civil Rights Complaint.
F) Benson Frazier written Deposition.
G) Plaintiff's Declaration.
H) Plaintiff and Johns Anderson's first Set of written Disc-
every.
I) October 15, 2007, Daily record of Special inquiry.
J) Disposition of video tape / Summary of tape review &
Documentary or physical evidence disposition.
K) Disciplinary report wrote by Defendant Covan, the disci-
plinary issue finding and action, and privilege Suspension
worksheet.
L) Defendant Covan's Second Set of interrogatories.
M) Defendant Covan's first Set of interrogatories.
N) Plaintiff's informal grievance filed on october 12, 2008
against Defendant Burt.

1

O) Defendant Crielow Admission.

P) October 16, 2008, Daily record of Special housing.

Q) Plaintiff's informal grievance filed on October 15, 2008, against Defendant Burd.

R) Disciplinary report wrote by Defendant Engstrom, the disciplinary team findings, and close management report.

S) John Sanderson second witness statements.

T) Florida Administrative Code, Chapter 33-601.800.

U) Defendant Engstrom Second set of interrogatories.

V) Declaration of Edwin's Davis Jr.

W) Defendant Burd Second set of interrogatories.

X) Plaintiff's informal grievance filed on October 17, 2008, against Defendant Burd.

Y) October 21, 2008, Daily record of special housing.

Z) Ramziddin Harris written Deposition.

A2) Declaration of Kenneth Mills.

B2) Declaration of Gregory Nelson on January 17, 2010.

C2) Declaration of Keith Ryan.

D2) Plaintiff's witness statement signed October 21, 2008.

E2) Declaration of Hal Lewis.

F2) First Disciplinary report wrote by Defendant's Grace, and disciplinary teams findings.

G2) John Sanderson third witness statement / Plaintiff's witness statement of October 23, 2010.

H2) Second Disciplinary report wrote by Defendant Grace and disciplinary teams findings.

I2) Florida Administrative Code, Chapter 33-602.203

J2) Declaration of James Murray.

K2) Chemical agents accountability log.

L2) Declaration of Gregory Nelson, on August 19, 2010.

M2) Declaration of Marvin X. Hadley

N2) Declaration of Sant Juan Walker

2

C2) Declaration of Dosia J. Stewart.
P2) Disciplinary report wrote by Defendant Rayson and the disciplinary team findings.
Q2) Plaintiff's request for Admission to defendant dated September 6, 2010.
R2) Donnie Adkins Written Deposition.

3

# EXHIBIT

# A

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

**'NMATE REQUEST**

Mail Number: _____
Team Number: _____
Institution: _____

08-5936

(Instructions on Back)

| TO:<br>(Check One) | ☐ Warden<br>☐ Asst. Warden | ☐ Classification<br>☐ Security | ☐ Medical<br>☐ Dental | ☑ Other<br>Informal Grievance |  |
|---|---|---|---|---|---|

| | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| **FROM:** | Robert Harrington | J15805 | D3112 | | 10-5-08 |

**REQUEST**

This grievance is due to the harassment I'm receiving from officer
Burt and other officers on the three to eleven shift, where I'm told
who I'm not allowed to sit next to and who I'm not allowed to talk to.
I am unable to live as a normal CMS inmate, without the fear of
getting a write up for interacting with other inmates, that officer
Burt might not approve of, because of their gang relation. I am
not a gang member; however, four out of five inmates in this
wing are gang related, but I should not be forced to isolate
myself from anyone. As a result to the harassment I simply
ask that if the officers feel I'm involved in any kind of wrong
doing - Move me to another dorm or stop the harassment.

Thank You.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Grievance

DO NOT WRITE BELOW THIS LINE

RECEIVED

**RESPONSE**

DATE RECEIVED OCT 0 6 2008

Your grievance has been received and evaluated. AT no tim ASST. SUPERINTENDENT OPERATIONS
did I make any statements to you related to gang affiliations or S.A.R.C.
harass you in any way. Grievance denied.

- Ofc. Burt

[The following pertains to informal grievances only:

Based on the above information, your grievance is _Denied_ . (Returned/Denied, or Approved): If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): | Date: 10/9/08 |
|---|---|

Distribution:   White   -Returned to Inmate      Pink   -Retained by official responding, or if the response is to an
                Canary  -Returned to Inmate              informal grievance then forward to be placed in inmate's file.

DC6-236 (Revised 8-00)

# EXHIBIT

# B

UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PROVIDED TO
SANTA ROSA C.I.

JUL 1 1 2010

FOR MAILING
INMATE INITIALS

ROBERT D. HORNACHY, inmate# J15805,
Plaintiff,

vs.                                        Case No: 3:09 cv 281-LC|EMT
OFFICER BURT, et al,
                    Defendants/

PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS
TO DEFENDANT BURT
    Pursuant to Fed. R. Civ. P. 36, Robert D. Hornagay,
Plaintiff, requests, Defendant Burt to admit the following:

    1. On October 5, 2008, Plaintiff filed a inmate grievan-
ce against Defendant Burt, which was reviewed and
denied by Defendant Burt on October 9, 2008.
    2. Defendant Burt was on duty in "D" dormitory at
Santa Rosa C.I. on the evening of October 10, 2008,
between the hours of 3:00pm and 11:00 pm.
    3. On October 16 and 17, 2008, you was interviewed
by Defendant Gielow about grievances filed against
you by the Plaintiff on October 12 and 15, 2008.
    4. Defendant Burt was on duty in "D" dormitory
at Santa Rosa C.I. on the evening of October
17, 2008, between the hours of 3:00pm and 11:00 pm.
    5. On October 17, 2008, while working in "D" dormitory,
Defendant Burt did have access to Plaintiff's
incoming personal mail.
    6. On October 17, 2008, Plaintiff filed a inmate
grievance against Defendant Burt, which was

1

reviewed and denied by Defendant Burt on
october 21, 2008.

    7. During the months of July, August, and
September of 2009, Defendant Burt worked in
"C" dormitory on the 11pm - 7am Shift, approximately
five days a week.

    8. Throughout the months of July, August, and
September of 2009, Defendant Burt on several
different occasions worked on the Same wing
the Plaintiff was housed in.

    9. At the time, Defendant Burt reviewed and
denied the grievances mentioned in Plaintiff's
complaint, there was an established prison policy
that prohibited a grievance alleging reprisal by staff
to be refferred to a staff person, who is the subject
of the grievance.

7-8-10
Date

/s/ Robert D. hornaday
Robert D. hornaday
Santa Rosa C.I.
5850 E. Milton RD
Milton, Fla 32583

2

# EXHIBIT

# C

*A warden was in accord with paragraph 33-103.014(1)(f), F.A.C., when he returned a grievance to an inmate without action where the inmate failed to attach an informal grievance and its response pertaining to the issue to be resolved. St. Fleur v. Brights, 2007 U.S. Dist. LEXIS 40257 (M.D. Fla. June 4, 2007).*

### 33-103.015 Inmate Grievances – Miscellaneous Provisions.

(1) Inmates shall be allowed to seek assistance from other inmates or staff members in completing the grievance forms as long as the assistance requested does not interfere with the security and order of the institution.

(2) Form DC6-236, Inmate Request, and Form DC1-303, Request for Administrative Remedy or Appeal, shall be available as a minimum from the institutional library, classification department, classification staff, and the housing officer of any living unit.

(3) The warden, assistant warden or deputy warden (deputy warden applicable to private facilities only) is authorized to designate other staff to receive, review, and investigate any grievance of an institutional nature. The warden is authorized to designate the assistant warden or deputy warden (deputy warden applicable to private facilities only) to grant and implement relief as approved by the warden, except as to grievances involving discipline, grievances alleging violation of the Americans with Disabilities Act, grievances challenging placement in close management and subsequent reviews, grievances of an emergency nature, grievances of reprisal or grievances of a sensitive nature that are filed directly with the warden. For grievances filed directly with the warden, the decision to approve, return, or deny the grievance shall be made by the warden; the assistant warden or deputy warden shall only be authorized to sign as acting warden in the warden's absence, and must indicate "Acting Warden" beside his or her signature.

(4) All informal and formal grievances, except those administrative appeals filed directly with the Office of the Secretary, must be filed at the institution or facility to which the inmate is presently assigned. "Presently assigned" means the institution or facility in which the inmate is housed at the time he files either the informal or formal grievance. When either the informal or formal grievance complaint concerns an informal or formal grievance that occurred at another location, it shall remain the responsibility of the staff at the inmate's present location to handle the informal or formal grievance. The final resolution of an informal or formal grievance is the responsibility of the warden at the institution to which the inmate is presently assigned. Direct contact with outside staff may be necessary in resolving the informal or formal grievance.

(5) The response to an informal grievance and a formal grievance shall include the following statement, or one similar in content and intent if the grievance is denied: You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required, and forwarding your complaint to the warden, assistant warden, deputy warden or the Bureau of Inmate Grievance Appeals.

(6) At no time will an inmate who is alleging that he was physically abused as described in Section 944.35(3), F.S., or alleging reprisal by staff, as defined in subsection 33-103.002(16), F.A.C., be directed to submit his or her grievance to the staff person who is the subject of the complaint, nor will the grievance be referred to a staff person who is the subject of the complaint.

(7) Writing paper and writing utensils shall be provided to those inmates who have insufficient funds in their accounts at the time the materials are requested if such are needed to prepare the grievance or grievance appeal. These supplies shall be available from the institution library, classification department classification staff, and the housing officer of any living unit or confinement unit.

(8) Copying services for documents to be included as attachments to a grievance or grievance appeal shall be handled according to Rule 33-501.302, F.A.C., except that copying services shall not be handled to make copies of Form DC6-236 or Form DC1-303, attachments that are a continuation of the request portion of Form DC6-236, or attachments that are a continuation of Part A of Form DC1-303.

(9) If an inmate files more than one grievance or appeal dealing with the same or very similar issues, the institution or central office has the option of consolidating these grievances for purposes of providing a response to the inmate.

(10) A copy of these rules shall be available for access by inmates at a minimum in the inmate library and from the housing officer of any confinement unit.

(11) Provisions shall be made to ensure that grievances submitted by confinement inmates are collected on a daily basis; and that those grievances which require mailing are processed in accordance with subsection 33-103.006(8), F.A.C.

(12) Staff shall respond to inquiries made by the Bureau of Inmate Grievance Appeals by the close of business on the seventh day after the request.

*Specific Authority 944.09 FS. Law Implemented 944.09 FS. History–New 10-12-89, Amended 1-29-92, 9-3-92, 12-22-92, 7-11-93, 5-3-94, 4-10-95, 9-23-96, 8-10-97, 12-7-97, 5-10-98, 2-17-99, Formerly 33-29.015, Amended 8-1-00, 10-11-00, 2-7-01, 5-27-02, 1-2-03, 2-9-05, 9-4-05, 10-28-07.*

### 33-103.016 Follow Through on Approved Grievances.

(1) Formal Grievance – Institution or Facility Level. All formal grievances which are approved at the institution or facility level shall be handled as follows:

(a) The employee approving the grievance shall complete Section I of form DC1-306, Grievance Approval Action Form. Form DC1-306 is incorporated by reference in Rule 33-103.019, F.A.C.

(b) The approving employee shall then send form DC1-306 and a copy of the approved formal grievance to the grievance coordinator in the event they are not one and the same.

(c) The grievance coordinator shall complete Sections II, III, and IV of form DC1-306. The grievance coordinator shall then provide form DC1-306 and a copy of the approved grievance to the staff member(s) assigned responsibility for implementing the approved action. The grievance coordinator shall monitor this process.

(d) The assigned staff member(s) shall complete Section V of form DC1-306 stating what steps were taken to implement the approved action. This shall not be done until after the steps have been taken. The assigned staff member(s) shall have 30 calendar days from the date the grievance was approved within which to implement the approved action. In the event that actual implementation cannot be completed within the 30-day period due to circumstances beyond the control of department staff, the assigned staff member(s) shall indicate this and the reasons therefor in Section V within the 30-day period. The form shall be held by the assigned staff member until the corrective action has been taken.

# EXHIBIT

# D

CONTROL
LEGAL OFFICE

SEP -9 2010

SEP 0 6 2010

FOR MAILING
INMATE INITIALS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF FLORIDA

PENSACOLA DIVISION

ROBERT D. HORNAGAY, inmate #J7585,

Plaintiff,

v.                              Case No: 3:09cv281/LAC/EMT

OFFICER BURT, et al.,

Defendants /

DEPOSITIONS BY WRITTEN QUESTION

To Malcom Hodges DC# W31216

Come now, Plaintiff, Robert D. Hornagay, pro se, and pursuant to Rule 31 of the federal Rules of civil procedure, Plaintiff requests that Mr. Malcom Hodges answer the following questions:

1. Throughout the timeframe of September and October of 2008, do you recall being housed at Santa Rosa C.I., in "D" dormitory, cell# D-3111?

2. While you were housed in cell#D-3111, do you remember a inmate housed in cell# B-3115, named Robert D. Hornagay also known as New York?

3. Throughout the mentioned timeframe, do you recall ever seeing officer Burt at mr hornagay's cell door threatening to conspire with other correctional officers to write false disciplinary reports and get mr hornagay sprayed with chemical agents, in order to retaliate because of grievances mr. hornagay wrote?

1

4. While in "D"- dormitory, do you recall ever hearing lieutenant Crelow at Mr. Hornsby's cell door threatening to have Mr. Hornsby sprayed with chemical agents, if Mr. Hornsby did not write a witness statement saying he lied on all the grievances he filed on officer Burt?

5. While in "D"- dormitory, do you recall Mr. Hornsby being sprayed with chemical agents?

6. Prior to Mr. Hornsby being sprayed with chemical agents, was he ever yelling on the wing, kicking his cell door, or creating any kind of disturbance before or during the application of chemical agents?

7. Prior to Mr. Hornsby being sprayed with chemical agents, do you recall ever hearing Sergeant Raybon and Lieutenant OBEA at Mr. Hornsby's cell door talking about grievances Mr. Hornsby wrote? If so explain what you heard.

8. Prior to Mr. Hornsby being sprayed with chemical agents, do you recall ever hearing Sergeant Raybon telling Mr. Hornsby that he [Mr. Hornsby] got lieutenant Crelow pissed off with all those grievances he filed and now he has to spray the place up with chemical agents?

9. Being that you were almost directly across the hall from Mr. Hornsby, do you recall seeing chemical agents on the floor, walls, and bed area before Mr. Hornsby was placed back in his cell?

10. After Mr. Hornsby was escorted to the shower, do you recall ever hearing Sergeant Raybon and/or Lieutenant OBEA directing the inmate cleanup crew to leave some of the chemical agent stained clothes in Mr. Hornsby's cell or to only clean certain areas of the cell?

2

11. Do you recall the circulation fans on the wing turned off, prior to Mr. Hornagay getting sprayed? If so were the fans ever turned back on that night?

12. After Mr. Hornagay was sprayed and placed back in his cell, do you recall hearing sounds throughout the night coming from his cell as if he was fighting to breathe? If so please describe the sounds you heard.

13. Days after Mr. Hornagay was sprayed with chemical agents, do you recall seeing any chemical agent stains and/or burn marks as results of chemical agents on different parts of Mr. Hornagay's body?

14. Before Mr. Hornagay was sprayed with chemical agents, did you ever notice any burn marks in his face or on his body anywhere?

15. After Mr. Hornagay was placed on a management meal, did you notice a loss of about twenty to twenty five pounds in his weight?

9-26-10                         Robert D. Hornagay
Date                            Robert D. Hornagay
                               DC# J13805
                               Santa Rosa C.1
                               5850 E. Milton RD
                               Milton, Fla 32583

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been furnished by U.S. Mail to: Alexandria Walters, Asst. General Counsel, 2601 Blair Stone RD, Tallahassee, Fla 32399-2500, and Lance E. Neff, Office of the Attorney General, the capitol, PL-01, Tallahassee, Fla 32399-1050 on this 26 day of September 2010.

                               Robert D. Hornagay

3

## CERTIFICATE OF NOTARY PUBLIC

**STATE OF FLORIDA** )
**in and for** )
Union **COUNTY)**

Before me the undersigned authority, this day personally appeared Malcom Hodges _____, who first being duly sworn says that he is a witness in the above-styled cause, the he has read the foregoing affidavit, and has personal knowledge of the facts and matters therein set forth and alleged and hat each and all of these facts and matters are true and correct.

Personally known _____; or

Produced a Florida Department of Corrections Inmate Identification # W 31 2 16

Malcom Hodge w31211
Inmate Signature

Sworn and Subscribed to before me this 13 day of Sept , 20 10 .

_____
Notary Public or other person authorized
to administer and oath (print, type, or
stamp commissioned name of notary public)

Linda Clance
My Commission Expires

**Seal:**
NOTARY PUBLIC - STATE OF FLORIDA
Linda L. Clance
Commission # DD641738
Expires: FEB. 19, 2011
BONDED THRU ATLANTIC BONDING CO., INC.

3

Malcom Hodges
DC #W31216

2.) Yes

3.) Yes

4.) Yes

5.) Yes, ▬ ▬

6.) No

7.) Yes, They were saying that he wrote grievances so he had to ~~we~~ wear a gasing. They said that if he took it like a man it would be over in 3 rounds. They also said to stop writing grievances in a threat that he would be gased again

8.) Yes this is explained in ~~question~~ answer (7)

9.) Yes, They have fun putting inmates back into chemical agent contaminated cells. I worked for Seargeant Raybon as a house man and they wd. Tell us to Not worry about cleaning up the cells some times saying as I remember "That mother fockers going right back in that shit" and out of fear "Us" orderlies did as told.

10.) I do not recall him (Raybon) saying this but I do know that the cell was not cleaned

11.) Yes. They (staff) say that its procedures. They turn off exhaust fan so that the gas has a greater effect and ~~to~~ so the inmates cannot breath.

12.) ▬ ▬ ● ● ▬ ▬▬▬. ▬ ▬▬▬
yes. My roommate Even made fun of him
They were coughs, Grunts, Sqoeks, Spiting sounds, Struggling to clear the th
sneezing, and swearing.

13.) No

14.) No

15.) I dont pay attention to men weight.

Malcom Hodges   6-13-10

# EXHIBIT

# E

# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA        DIVISION

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

ROBERT DEFORRIS KAVANAGH

Inmate # J13805

(Enter full name of Plaintiff)

*Fourth Amended Complaint*

vs.

CASE NO: 3:09 c v 281-LAC/EMT

(To be assigned by Clerk)

OFFICER "John Doe" BURT,

OFFICER M. COVAN,

OFFICER J.D. ENGSTROM,

OFFICER C. GRACE,

LIEUTENANT W.L. CHELOW.

(Enter name and title of each Defendant.

If additional space is required, use the

blank area below and directly to the right.)

SERGEANT G. BAYBON

LIEUTENANT P. ORBA



### ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

I.    **PLAINTIFF:**

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:     Robert D. Hornaday

Inmate Number         113805

Prison or Jail:          Prison

Mailing address:      Santa Rosa C.I.

5850 E. Milton RD

Milton, Fla 32583

II.   **DEFENDANT(S):**

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for <u>every</u> Defendant:

(1)   Defendant's name:     "John Doe" Burt

Official position:       Correctional officer

Employed at:           Santa Rosa C.I.

Mailing address:      5850 E. Milton RD

Milton, Fla 32583

(2)   Defendant's name:     M. Covan

Official position:       Correctional officer

Employed at:           Santa Rosa C.I.

Mailing address:      5850 E. Milton RD

Milton, Fla 32583

(3)   Defendant's name:     J.D. ENGSTROM

Official position:       Correctional officer

Employed at:           Santa Rosa C.I.

Mailing address:      5850 E. Milton RD

Milton, Fla 32583

<u>**ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS**</u>

Defendant(s), Continued:

4) Defendant's name: C. GRACE
   Official position: Correctional officer
   Employed at: Santa Rosa C.I.
   Mailing address: 5850 E. Milson RD
   Milson, FLA 32583

5) Defendant's name: W.L. GIELOW
   Official position: Lieutenant
   Employed at: Santa Rosa C.I.
   Mailing address: 5850 E. Milson RD
   Milson, FLA 32583

6) Defendant's name: G. RAYBON
   Official position: Sergeant
   Employed at: Santa Rosa C.I.
   Mailing address: 5850 E. Milson RD
   Milton, FLA 32583

7) Defendant's name: P. ORSA
   Official position: Lieutenant
   Employed at: Santa Rosa C.I.
   Mailing address: 5850 E. Milson RD
   Milson, FLA 32583

(2-A)

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

## IV. PREVIOUS LAWSUITS

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A.   Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
     Yes(   )                    No( ✓ )

1.   Parties to previous action:
     (a)   Plaintiff(s): _____

     (b)   Defendant(s): _____

2.   Name of judge: _____      Case #: _____

3.   County and judicial circuit: _____

4.   Approximate filing date: _____

5.   If not still pending, date of dismissal: _____

6.   Reason for dismissal: _____

7.   Facts and claims of case: _____

     _____

**(Attach additional pages as necessary to list state court cases.)**

B.   Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

     Yes(   )                    No( ✓ )

1.   Parties to previous action:
     a.   Plaintiff(s): _____

     b.   Defendant(s): _____

2.   District and judicial division: _____

3.   Name of judge: _____      Case #: _____

4.   Approximate filing date: _____

5.   If not still pending, date of dismissal: _____

6.   Reason for dismissal: _____

3

7.  Facts and claims of case: _____

_____

**(Attach additional pages as necessary to list other federal court cases.)**

C.  Have you initiated other actions (*besides those listed above in Questions (A) and
(B))* in **either state or federal court** that relate to the fact or manner of your
incarceration (including habeas corpus petitions) or the conditions of your
confinement (including civil rights complaints about any aspect of prison life,
whether it be general circumstances or a particular episode, and whether it involved
excessive force or some other wrong)?

Yes( ✓ )                    No(  )

If YES, describe each action in the space provided below. If more than one action, describe
all additional cases on a separate piece of paper, using the same format as below.

1.  Parties to previous action:
    a.  Plaintiff(s): Robert D. Hornaday
    b.  Defendant(s): Walter D. McNeil et. al.
2.  District and judicial division: Middle District/Jacksonville Division
3.  Name of judge: James R. Klindt     Case #: 3:08-cv-60-J-32JRK
4.  Approximate filing date: June 2, 2008
5.  If not still pending, date of dismissal: Still pending
6.  Reason for dismissal: N/A
7.  Facts and claims of case: federal Habeas Corpus challenging
    State Court Criminal Conviction and Sentence.

**(Attach additional pages as necessary to list cases.)**

D.  Have you ever had any actions in **federal court** dismissed as frivolous, malicious,
failing to state a claim, or prior to service? If so, identify each and every case so
dismissed:

Yes(  )                    No(  )

1.  Parties to previous action:
    a.  Plaintiff(s): _____
    b.  Defendant(s): _____
2.  District and judicial division: _____
3.  Name of judge: _____  Case Docket # _____
4.  Approximate filing date: _____  Dismissal date: _____
5.  Reason for dismissal: _____

4

6.   Facts and claims of case: _____

_____

**(Attach additional pages as necessary to list cases.)**

## V.   STATEMENT OF FACTS:

State briefly the FACTS of this case.  Describe how each Defendant was involved and what each person did or did not do which gives rise to your claim.  In describing what happened, state the names of persons involved, dates, and places.  Do not make any legal arguments or cite to any cases or statutes.  You must set forth separate factual allegations in separately numbered paragraphs.  You may make copies of this page if necessary to supply all the facts.  Barring extraordinary circumstances, no more than five (5) additional pages should be attached.  (If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)

1) On October 5, 2008, Plaintiff filed a inmate grievance against Defendant Burt.

2) On October 9, 2008, Plaintiff's grievance was reviewed and denied by Defendant Burt.

3) On October 10, 2008, at approximately 3:30 pm, Defendant Burt approached Plaintiff's cell and stated "Payback is a Motherfucker. My gang is stronger than yours; I'm down with the good ole boys and we will always win."

4) As to the claim in paragraph 3, this statement was followed by a series of threats to conspire with other Correctional officers to write false disciplinary reports, have Plaintiff sprayed with chemical agents, and have Plaintiff upgraded to the most restrictive level of Close Management.

5) As to the claim in paragraph 4, after Defendant Burt's threats, Defendant Cavin falsely claimed that Plaintiff threatened him, and Defendant Cavin wrote Plaintiff a false disciplinary report in retaliation for Plaintiff filing grievances.

6) As to the claim in paragraph 5, the disciplinary report resulted in Plaintiff having his telephone, visitation, and exercise privileges suspended for fifteen days. Plaintiff also had to serve thirty days in confinement, and the disciplinary report was considered when upgrading Plaintiff to the most restrictive level of Close-

5

Management, along with getting Plaintiff placed on heighten security status for six months.

7) On October 12 and 15, 2008, Plaintiff filed additional grievances against Defendant Burt.

8) As to the claim in paragraph 7, on October 16 and 17, 2008, Defendant Crelow reviewed and denied Plaintiff's grievances.

9) On October 17, 2008, after Defendant Crelow denied Plaintiff's grievances, Defendant Burt intercepted and destroyed Plaintiff's mail and stated "it was good to receive mail from Gladys Stokes, Plaintiff's Mother, to bad it went in the trash".

10) As to the claim in paragraph 9, later on that day, Defendant Engstrom falsely claimed that the Plaintiff threatened him, and Defendant Engstrom filed a false disciplinary report against Plaintiff in retaliation for filing grievances.

11) As to the claim in paragraph 10, this disciplinary report resulted in Plaintiff serving thirty additional days in confinement and was considered when upgrading Plaintiff to the most restrictive level of close management along with getting Plaintiff placed on heighten security status for six months.

12) On October 17, 2008, Plaintiff filed another grievance against Defendant Burt.

13) Upon information and belief, Defendant Burt reviewed and denied Plaintiff's grievance on October 21, 2008.

14) On October 21, 2008, at approximately 10:00 am, Plaintiff appeared at a disciplinary hearing and described to Defendant Crelow, the lieutenant of the housing area, the events that took place over the previous two weeks, and Plaintiff requested a transfer to another dorm.

15) As to the claim in paragraph 14, at approximately 10:25 am, Defendant Crelow went to Plaintiff's cell door and directed Plaintiff to stop filing grievances.

6

Statement of facts continued:

16) Defendant Grelow further directed Plaintiff to write a statement stating that the grievances filed against Defendant Burk were based upon lies.

17) Plaintiff failed to write the statement, so Defendant Grelow verbally ordered Defendant Raybon to spray Plaintiff with chemical agents.

18) Later on that day, at approximately 9:30 pm, Defendant Grace approached Plaintiff's cell and stated "So your the crying little bitch that wants to write everything up? we have something for that kind of shit around here."

19) As to the claims in paragraph 18, Defendant Grace then claimed that the Plaintiff attempted to spit on him, and Defendant Grace filed a false disciplinary report against Plaintiff.

20) An hour later, Defendant Grace claimed that the Plaintiff spit on him, and Defendant Grace filed another false disciplinary report.

21) As to the claims in paragraphs 19 and 20, the disciplinary reports resulted in Plaintiff serving one hundred and twenty days in confinement, was considered when up grading the Plaintiff to the most restrictive level of close management; Plaintiff was forced to wear a face mask for approximately six months, and the Plaintiff was malicious and sadistically placed and kept on a management meal diet for seven days, without justification.

22) As a result of the management meal, Plaintiff suffered significant weight loss, starvation do to said punitive diet being uneatable, unappetizing, and repulsive; sleep deprivation for seven days, psychological and physiology deterioration, emotional pain, and mental anguish.

23) As to the claims in paragraph 21 and 22, the Defendants with total disregard for the prison policy, kept the

(6A)

Statement of facts, Continued:

Plaintiff on a management meal diet for twenty one meals, without any other alleged misconduct incidents that would require continued placement on management meal diets.

24) The next morning, on October 22, 2008, at approximately 12:20am, Defendant Raybon and Defendant Orsa approached Plaintiff Cell, and Defendant Raybon stated "hornady you done went and pissed the lieutenant off with them grievances, now I got to spray up the place, I'll be back in a few so get ready."

25) As to the claim in paragraph 24, at approximately 1:45am, Defendant Raybon, acting on the verbal order of Defendant Cielow, claimed that the Plaintiff was creating a disturbance on the cell block and sprayed the Plaintiff with chemical agents.

26) At no time prior to or during the application of chemical agents was Plaintiff an immediate threat to himself or others; he was not creating a disturbance or posed a genuine or realistic threat.

27) At all material times, Plaintiff was secured behind a cell door, prior to and during the application of chemical agents.

28) Defendant's use of force against Plaintiff was not in a good faith effort to maintain or restore discipline but was utterly unnecessary, malicious, and sadistic.

29) Defendant's application of chemical agents, ~~the Plaintiff~~ was intended to inflict unnecessary and wanton infliction of pain on the Plaintiff.

30) After the application of chemical agents, the Plaintiff was allowed to shower and was seen by Medical Staff. The Plaintiff was then placed back in the same cell that was inefficiently decontaminated.

31) The Defendants had full knowledge that the Plaintiffs cell was inefficiently decontaminated and still placed

(6B)

Statement of facts, continued:

the Plaintiff back in the same cell with the intent to cause more harm.

32) As to the claim in paragraph 31, the chemical agents would transfer to the Plaintiff's skin when ever he touched, rubbed, or sat on anything in his cell.

33) Prior to the application of chemical agents, the Defendants burned off the circulation fans on the wing. The strong vapors from the chemical agents lingered in the Plaintiff's cell.

34) The exposure of chemical agents made the Plaintiff suffer from burning skin and lungs, congested breathing and tearing eyes; nasal discharge and dizziness, sensation of respiratory distress. The Plaintiff experienced dramatic effects of choking and went through a intense state of helplessness and fear of dying.

35) The unlawful application of chemical agents caused Plaintiff excruciating physical pain and lingered onto his body for approximately five days.

36) As to the claims in paragraphs 34 and 35, Due to the Defendants' repeated retaliatory acts and willful malicious intent to cause continued unnecessary infliction of pain on the Plaintiff, without penological justification, the Plaintiff did not seek further medical attention for his serious medical need, because he deeply feared that his complaints would only result in more harm at the hands of the Defendants and/or other Correctional Officers.

37) Defendant Orsa had full knowledge that such application was to retaliate against the Plaintiff for filing grievances and was totally without penological justification.

38) Defendant Orsa, the shift lieutenant, directly participated in the application of chemical agents.

39) As a proximate result of the Defendants' actions, the Plaintiff has suffered physical injury and will continue to to suffer extreme mental anguish and emotional distress,

(6C)

Statement of facts, Continued:

depression and anxiety. Plaintiff now has difficulty sleeping for fear of being attacked with chemical agents without provocation.

40) Defendant Rayboon filed a false disciplinary report against the Plaintiff to "cover up" and justify his use of chemical agents and to retaliate against the Plaintiff for filing grievances.

41) As to the claim in paragraph 40, the disciplinary report resulted in Plaintiff serving thirty days in confinement and was considered when upgrading Plaintiff to the most restrictive level of close management.

42) On October 24, 2008, Plaintiff was escorted to the shower by Defendants Covan and Engstrom, when Defendant Covan stated "hor naggy you seem like a good kid, but I had no choice but to write you a case, if not everyone will start writing grievances on all the shit that goes on around here; we have to discourage that shit some kind of way." Defendant Engstrom then stated "all you have to do is stop filing grievances and you won't have to worry about us writing you no more crazy DR's."

43) Upon information and belief, Defendants Rayboon and Crielow both had a duty to make daily visits with the Petitioner to determine if he should be removed from the management meal, based on any other alleged misconduct incidents that would require continued placement on management diet.

44) The actions of the named Defendants have chilled the Plaintiff's right to file grievances.

(60)

## VI. STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

1) Defendant Bush violated Plaintiff's first amendment rights to the U.S. Constitution, when retaliating against the Plaintiff by intercepting and destroying Plaintiff's personal mail.

2) Defendants Cowan, Engstrom, Grace, and Baymon violated Plaintiff's first amendment rights, when filing false disciplinary reports against the Plaintiff in order to retaliate against him for filing grievances.

3) Defendant Baymon violated Plaintiff's eighth and first amendment rights, when spraying Plaintiff with chemical agents in order to

## VII. RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes.

WHEREFORE, Plaintiff respectfully prays that this Court:

A) Declare that the acts and omissions described herein violated Plaintiff's rights under the constitution and laws of the United States;

B) Order Defendants to pay nominal, punitive, and compensatory

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

| | |
|---|---|
| 6-27-10 | Robert B. Youngay |
| (Date) | (Signature of Plaintiff) |

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one):
☐ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on: the 27th day of June , 20 10 .

Robert B. Youngay
(Signature of Plaintiff)

Revised 03/07

7

Statement of Claims, Continued:

retaliate against Plaintiff for filing grievances, which was unnecessary and the wanton infliction of pain was totally without penological justification and was done maliciously and sadistically.

4) Defendant Grelow violated Plaintiff's eighth and first amendment rights, when giving the order to spray Plaintiff with chemical agents inorder to retaliate against Plaintiff for filing grievances, which was unnecessary and the wanton infliction of pain was totally without penological justification.

5) Defendant Orsa violated Plaintiff's first and eight amendment rights, when directly participating in what he knew was unconstitutional conduct of Defendants Grelow and Raybon.

6) Defendants Grelow and Raybon violated Plaintiff's eighth amendment rights when maliciously and sadistically keeping the Plaintiff on management meal without penological justification.

7) Defendants Orsa and Raybon violated Plaintiff's eighth amendment rights, when intentionally placing the Plaintiff back in the same cell that was inefficiently decontaminated, in order to prolong the harmful effects of the spray on Plaintiff and thereby to inflict further unnecessary and wanton pain and suffering on the Plaintiff.

8) Each Defendant has violated Plaintiff's first amendment rights, when conspiring to chill the Plaintiff's first amendment rights, through actions that do not advance any legitimate penological goals.

Relief Requested, continued:

damages;

C) Order Defendants to pay all legal cost and fees, including Attorney fees in the event Counsel is appointed for Plaintiff.

D) Grant other just and equitable relief that this Honorable Court deems necessary.

(7A)

Relief Requested, Continued:

E) Plaintiff demands a trial by jury.

6-27-10                                    /s/ Robert D. Youngsgay

Date

(7B)

# EXHIBIT

# F

AUG 6 7

FOR MAILING

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT D. HORNAGAY, inmate #J13805,
       Plaintiff,

VS.                              Case No : 3. 09 cv 281/LAC/EMT

OFFICER BURT, et al.,
       Defendants /

## DEPOSITIONS BY WRITTEN QUESTION

TO Frazier Benson DC# 292744

Come now, Plaintiff, Robert D. hornagay, pro se, and
pursuant to Rule 31 of the federal Rules of Civil pro-
cedure, Plaintiff requests that Mr. frazier Benson
answer the following questions:

1. Throughout the timeframe of September and
October 21,2008, do you recall being housed at Santa
Rosa C.1., in "D"- dormitory, cell# D-3116?

2. While you were housed in cell# D-3116, do you remember
a inmate housed in cell# D-3115 named Robert D. horna-
gay also known as New York?

3. Throughout the mentioned timeframe, do you recall
ever hearing officer Burt threatening to destroy Mr.
hornagay's personal incoming mail or threatening to
conspire with other officers against Mr.hornagay,
because of inmate grievances Mr. hornagay wrote?
If so please describe the threats you heard.

1

4. Have you ever heard officer Engstrom also known as officer "E" make any comments, statements, or refer to inmate grievances Mr. Hornagay wrote against officer Burt? If so please describe the comments or statements.

5. Do you recall officer Engstrom writing Mr. Hornagay a disciplinary report for spoken threats? If so please describe the alleged incident as you seen it.

6. Have you ever heard officer Covan make any comments, statements, or refer to inmate grievances Mr. Hornagay wrote against officer Burt? If so please describe the comments or statements.

7. Throughout the time you was housed next door to Mr. Hornagay did you ever hear Mr. Hornagay threaten officer Engstrom or officer Covan?

8. If Mr. Hornagay had threatened officer Engstrom or officer Covan would you have been able to hear the spoken threats?

9. Throughout the alleged incidents, where officer Engstrom and officer Covan claim that Mr. Hornagay threatened them, were you alert and in a position to hear if Mr. Hornagay did threaten these officers?

10. Throughout the time you was housed next door to Mr. Hornagay, did you detect a plot against Mr. Hornagay from the officers, because of Mr. Hornagays use of the inmate grievance system? If so please explain the circumstances of this plot.

8-31-10
Date

By Robert D. Hornagay
Robert D. Hornagay
DC# J13305
Santa Rosa C.I.
5850 E. Milton RD
Milton, Fla 32583

2

Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been furnished by U.S. Mail to: Alexandria Walters, Asst. General Counsel, 2601 Blair Stone RD, Tallahassee, Fla 32399-2500, and Lance E. Neff, Office of the Attorney General, the Capitol, PL-01, Tallahassee, Florida 32399-1050 on this 31 day of August 2010.

/s/ Robert D. Hourigay

3

RECEIVED
CLERK OFFICE

SEP 16 2010

## CERTIFICATE OF NOTARY PUBLIC

**STATE OF FLORIDA** )
**in and for** )
Lafayette **COUNTY)**

Before me the undersigned authority, this day personally appeared /M. FRAZIER,
Benson D. DC# B292744, who first being duly sworn says that he is a witness in the above-

styled cause, the he has read the foregoing affidavit, and has personal knowledge of the facts and

matters therein set forth and alleged and hat each and all of these facts and matters are true and

correct.

Personally known _____ N/A _____ ; or

Produced a Florida Department of Corrections Inmate Identification # B-292744

Benson Frazier
**Inmate Signature**

Sworn and Subscribed to before me this /0 day of SEPT. , 20 10.

_____
Notary Public or other person authorized
to administer and oath (print, type, or
stamp commissioned name of notary public)

12-01-12.
**My Commission Expires**

**Seal:**
NOTARY PUBLIC-STATE OF FLORIDA
Katherine M. Lawson
Commission # DD841886
Expires: DEC. 01, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

3

1. YES, I DO RECALL BEING HOUSED AT SANTA ROSA.

2. YES, I DO RECALL "NEW YORK" ROBERT KORNAGAY.

3. YES, I DO RECALL AN OFFICER "BURT" THREATENING NOT ONLY MR. KORNAGAY'S PROPERTY BUT ALSO MY OWN PROPERTY. BUT I'D BE TELLING A LIE IF I SAY I CAN REMEMBER THE EXACT WORDS.

4. OFFICER ENGSTROM "(E)" IS KNOWN TO MAKE THREATS VEILED OR UNVEILED TO ALL INMATES ON THESE INSTANCES. INCLUDING MR. KORNAGAY.

5. YES, I DO RECALL OFFICER ENGSTROM WRITING MR. KORNAGAY A.D.R. FOR SPOKEN OR WRITTEN THREATS BECAUSE MR. KORNAGAY DID NOT RESPOND TO THIS OFFICER WHEN TOLD HE WOULD WRITE IT.

6. YES, I DID LOUD AND CLEAR. WE WERE HOUSED IN D-DORM AND IT WAS AT NIGHT BEFORE LIGHTS OUT. OFFICER COWAN USED TO MAKE A LOT OF RACIAL REMARKS ALSO TO INMATES.

7. NO, I'VE NEVER HEARD MR. KORNAGAY MAKE ANY THREATS TOWARD THESE OFFICERS, BUT, I HAVE HEARD THESE OFFICERS REPEATEDLY THREATEN INMATES WITH D.R.s WHICH WERE FOR NOTHING OR FABRICATED REASONS.

8. I SLEPT NEXT DOOR TO HIM & WE SPOKE DAILY TO EACH OTHER. YES I COULD HEAR EVERYTHING. THE OFFICERS IN D-DORM HAD IT OUT FOR A LOT OF INMATES INCLUDING KORNAGAY.

9. YES, I WAS IN POSITION AND ALERT TO HEAR/NOTICE IF ANYONE SAID ANYTHING.

10. THERE ARE ALWAYS PLOTS THROUGH OFFICERS TO PLOT TO ELIMINATE AN INMATE YOU USES THE GRIEVANCE PROCESS AGAINST AN OFFICER, WARDEN, ETC.) CURRENTLY (3 SINCE SANTA ROSA ALSO). I'M GOING THROUGH THE SAME THING AT MAYO'S SINCE WRITING THESE ANSWERS, IT MAY WELL WORSEN ONCE IT'S LEARNED I'M DOING THIS.

BENSON FRAZIER 292741
MAYO C.I.
8784 WEST U.S. HIGHWAY :
MAYO FLORIDA 32066

9-10-2010

# EXHIBIT

# G

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT D. YISNACH, inmate # 2010031C033
            Plaintiff,

V.                          Case No. 3:09 cv 281-LC/EMT
OFFICER BURT, et al.,
        Defendants/

Declaration under Penalty of Perjury of
            Plaintiff

    1, Robert D. Yisnach, being competant to make
this declaration and having personal knowledge
of the matters stated therein, declares pursu-
ant to 28 U.S.C. §1746.

1: On October 5, 2008, 1 filed a informal grievance on
officer Burt, because he would continuously
harass me by telling me what inmates 1 can and cannot
interact with. officer Burt decision on who 1'm allowed
1'm allowed to interact with would be inforced by
other officers.
2: Prior to me writing this initial grievance against
officer Burt, with the exception of one minor disc-
plinary report for lying to staff about hiding cigarette
butts, 1 have been free from anything of disciph-
nary reports and have maintained a above satisfactory
security rating for approximately two years; 1 had
advanced from close management two status to
close management three status, with only
two and a half months to serve before going

1

in front of the Close Management hearing team, and Standing a chance to be released back to open population.

3. Prior to me filing my initial grievance on officer Burt, I have been housed in "D" - dormitory for approximatly Seven months, where officer Burt, Covan, Engstrom, Sgt Raybon, and Lt Crichlow worked five days a week, and I have never received any type of write ups from these officers, that is until, officer Burt discovered that I filed a grievance on him.

4. The disciplinary reports I received from the defendants in the month of October 2008, was all false; I did not have any reason to threaten, assault, or attempt to assault any of these officers or to create a disturbance on the wing. The DRs and unsatisfactory marks I received was all false and a direct result of the grievances I filed.

5. Officer Burt, Engstrom, Sgt Raybon, and Lt Crichlow have all made statements to me about their involvement with the "Good ole boys System. The Good ole boys is a well known prison phrase for officers who hide/cover up the mis-deeds of one another and conspire against inmates.

6. After I was sprayed with chemical agents I was allowed to shower and was seen by medical staff; however, Medical staff was ordered not to remove my face mask; therefore, Medical staff was unable to attend my scalp. Being that Chemical agents are hard to be removed from hair with water alone, I suffered burns to my scalp.

2

7: When I was placed back in my cell there was Chemical Agents on the walls, floor, Sink and/or both beds. My blankets and bed sheets were covered in agents. I made requests to Sgt Payton and Lt Orso that I be moved to another cell because my cell was not cleaned and I can't breath. They both Stood to my cell door with a mask covering their face, so they could not breath the lingering agents. And they made statements and jokes about how much of a fool I was because all I had to do was write the witness statement like Lt Crelow asked me to. I continued to beg for them to let me out of the cell, which only resulted in Lt Orso telling me to Shut up or he will bring the tape recorder back again and make another "funny home video," then they turned all the lights out on the wing. As they was walking away they made a joke out of my condition which made the other inmates on the wing laugh at me.

8: With the lights turned out I could not see anything, and the chemical agents would transfer to my Skin when ever I touched rubbed, or sat on anything in my cell. Sgt Payton did not exchange my chemical agent soaked blanket and sheets into hours after I been Sprayed, but he never once made a attempt to have my cell cleaned.

9: The very next day I noticed burn marks on my head and on my back that came from being put back in a cell that was not cleaned. My Skin is Sensitive to the chemical agents that was used on me.

3

10. After the defendants actions on october 21-22, 2008, I have been suffering from mental anguish and emotional distress, depression and anxiety. I now have dreams of me being sprayed and beat by correctional officers for no reason.

11. I continued to file grievances throughout the acts of retaliation in efforts in place to exhaust my administrative remedies in s to appeal the guilty findings on all the DR's under litigation.

12. On July 11, 2010, I sent a request for admissions for defendant Burk to the defendant's Counsel, but as of this date I have never received a response. I have marked these admissions as exhibit B of my motion.

13. On July 25, 2010 I sent a request for admissions for defendant Burk to the defendant's counsel, but as of this date I have never received a response. I have marked these admissions as exhibit 0 of my motion.

14. On September 6, 2010, I sent the defendants Counsel a request for Admissions asking that the defendants admit to the genuineness of certain documents, but as of this date I have never received a response. I have marked these admissions as exhibit 22 of my motion.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct. Execution on october 21, 2010.

/s/ Robert D. Hemingway
Robert D. Hemingway

4

# EXHIBIT

# H

| | **Witness Statement** | |
|---|---|---|
| **State of Florida** | Log # _082669_ | **Department of Corrections** |

**I.  Identifying Inmate Information**

DC # _J13805_          Inmate Name _Karnegay, Robert_

Violation Code and Short Title _1-3 Spoken Threats_

Use of Force # _____

Date Report Written _10/11/08_

**II.  Witness**

☐  Staff Member:  Name and Position _____

☐  Other Individual:  Name _____

☒  Inmate:   DC # _K J13805_          Name _Karnegay, Robert_

**III.  Voluntary Refusal**

*The witness voluntarily refused to provide a written statement to the Investigating Officer and the following signature(s) attests to that fact:*

Witness Signature _____          Date _____

Signature of Investigating Officer _____          Date _____

**IV.  Statement**

1 have wrote multiple grivances informing the department about the harassment I'm receiving from officer Bued along with officers on the three to eleven shift. In my grivances I have been asking on in a disciplinary report, getting gased, or even cause physical harm to me; however, the department has failed to take my claims seriously; therefore, I have become a victim of retaliation. At no time was me and inmate Sanderson yelling at each other, which is why we are still roommates, and I never even spoke to officer Covan that night.

Witness Signature _Robert Karnegay_          Date _10/14/08_

Signature of Investigating Officer _[signature]_          Date _10-14-08_

DC6-112C (Revised 8/06)                    Original: Inmate File            Copy: Central Office

**Witness Statement**

| State of Florida | Log # _of 2669_ | Department of Corrections |
| --- | --- | --- |

**I.  Identifying Inmate Information**

DC # ~~J24620~~ J13805    Inmate Name _Kornagay Robert_

Violation Code and Short Title _1-3 Spoken Threats_

Use of Force # _____

Date Report Written _10/11/04_

**II.  Witness**

☐  Staff Member:  Name and Position _____

☐  Other Individual:  Name _____

☒  Inmate:  DC # _J24620_    Name _Sanderson, John_

**III.  Voluntary Refusal**

*The witness voluntarily refused to provide a written statement to the Investigating Officer and the following signature(s) attests to that fact:*

Witness Signature _____    Date _____

Signature of Investigating Officer _____    Date _____

**IV.  Statement**

On 10-10-08 at approximately 3:30p.m Officer Burt came to the cell door D3115 and threatened inmate Kornagay because of an informal grievance filed against him, by inmate Kornagay, where officer Burt informed inmate Kornagay that he will repay him for the grievance that was wrote against him, by any means. At no time was inmate Kornagay yelling or threatening the officer. This is a result of inmate Kornagay writing a grievance. Inmate Kornagay and I were never arguing with each other.

Witness Signature _John Sanderson_    Date _10-14-08_

Signature of Investigating Officer _____    Date _10-14-08_

DC6-112C (Revised 8/06)        Original: Inmate File        Copy: Central Office

# EXHIBIT

# I

DRSH000005



STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS
DAILY RECORD OF SPECIAL HOUSING

Page 1 of 2

DRSH0000006

Classification / Institutional Classification Team (ICT) / State Classification Office (SCO) Review

| Date Reviewed | Action | Remarks – Disposition | Signature |
|---|---|---|---|

DC6-229 (Revised 4/27/00)

Incorporated by Reference in Rule 33-902.220, F.A.C.

Page 2 of 2

# EXHIBIT

# J

**State of Florida**
**Department of Corrections**
**Disposition of Videotape or Audiotape Evidence**

Log # 08 2668

Inmate Name: Kedway, Robert   DC#: J 13886   Facility: 119

Violation Code and Short Title: 1-8 Spoken Threats

This form is NOT for distribution to inmates. Due to security concerns this form will not be accessible to inmates, but will be maintained with other documentary evidence for the disciplinary report.

Inmate identification of videotape or audiotape:
Based on Inmate Statement

Inmate description of what tape will show (video) or verbally reveal (audio):
Based on inmate statement

**Investigator's statement/summary:**

I.

Based upon   X   review of the   X   videotape /   audiotape or   X   review of the camera placement and equipment operation, the   X   videotape /   audiotape does not provide evidence to support the inmate's written statement for the following reasons (check one and provide details below):

☐   Tape quality not clear enough to show incident or hear the conversation recorded

☐   Activity out of range of camera

☐   Camera not filming at time of incident

☐   Camera records video only

☐   Other

II.   Summary of tape review
I observed on 10/10/08 officer Conn stop at cell D-3115 while conducting a security check. He was there from 21/33.00 through 21:33.52. Camera has no audio.

III.   ☐ Tape was not reviewed.

_____   Officer
Signature of Investigating Officer   Title

DC6-2028 (3-05)

Documentary or Physical Evidence Disposition

| State of Florida | Log # _____ o82269 | Department of Corrections |

DC#: J138 0S    Inmate Name: _Kornacey, Robert_    Facility: _118_

Violation Code and Short Title: _1-3 Spoken Threats_

Date Report Written: _10/11/08_    Date of Hearing: _10-21-08_

**I.**    **Notice to Inmate:** The following shall be read to the charged inmate by the Investigating Officer:

The charged inmate shall identify any documentary or physical evidence that he wants considered. In the event that you have evidence that you want considered, it must be listed below. Failure to complete and sign Section II of this form will result in a waiver of the opportunity to have documentary or physical evidence presented at hearing. If the evidence is a videotape, the investigator will determine whether the tape described will provide evidence to support the inmate's statement.

**II.**    **Inmate Evidence:**   I do not have any evidence ☐    I do have evidence, listed below ☑

| Identification of evidence | Reason Evidence Requested | Disposition |
|---|---|---|
| 1. Videotape | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |

For videotape/audiotape evidence only:

Inmate Identification of videotape/audiotape:

Inmate Description of what tape will show:
(Inmate's version in his own handwriting)

———— that at 9:30 officer Coven walked right pass my cell, Which
would Support that there was not enough time for the
alleged conversation to take place with me and the officer.

Signature of Inmate X _Robert bourgna_

Summary of disposition of videotape/audiotape:

Based upon review of the identified tape or the capabilities of the particular taping equipment, the tape requested

_____ provides evidence to support the inmate's statement

_____ does not provide evidence to support the inmate's statement.

Signature and Title of Investigating Officer _____

**III.**    **Investigating Officer Evidence:** Evidence determined relevant during the investigation and not requested by charged inmate.

| Identification of evidence | Reason Evidence Requested | Disposition |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

DC6-151 (3-05)      Original: Inmate File      Pink: Central Office

6. _____

IV. **Evidence Requested at Hearing:** Evidence requested by inmate, Team, or Hearing Officer in addition to evidence already identified in Section II or III above.

| Identification of evidence | Reason Evidence Requested | Disposition |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |

Continued Comments (indicate Section # and Evidence #): _____

_____

_____

| Team Member Signature | Team Member Signature | Team Chairman/Hearing Officer Signature |
|---|---|---|
| | W GIELOW | T. Reyes |
| Printed/Typed Name | Printed/Typed Name | Printed/Typed Name |

# EXHIBIT

# K

FLORIDA DEPARTMENT OF CORRECTIONS                    10/13/2008

ISSO150 (01)                 CHARGING DISCIPLINARY REPORT                          PAGE:      1
                                LOG # 119-082669

```
--------------------------------------------------------------------------------
 DC#: J13805   INMATE NAME: KORNAGAY, ROBERT D.              INFRACTION
 VIOLATION CODE: 0013   TITLE: SPOKEN THREATS               DATE: 10/10/08
 FACILITY CODE: 119     NAME:  SANTA ROSA C.I.              TIME: 21:30
--------------------------------------------------------------------------------
```

I.   STATEMENT OF FACTS
     INMATE KORNAGAY, ROBERT DC#J13805 IS BEING CHARGED WITH A
     VIOLATION OF FAC CHAPTER 33-601.314 RULES OF PROHIBITED
     CONDUCT (1-3) SPOKEN OR WRITTEN THREATS. ON 10/10/08 I WAS
     ASSIGNED AS A D-DORMITORY HOUSING OFFICER. AT APPROXIMATELY
     9:30PM, I WAS CONDUCTING A SECURITY CHECK IN WING THREE WHEN
     I OVERHEARD YELLING COMING FROM D3115, WHERE INMATE
     KORNAGAY, ROBERT DC#J13805 IS HOUSED WITH INMATE SANDERSON,
     JOHN DC#J24620. I OBSERVED INMATE KORNAGAY STANDING UP IN
     THE CELL YELLING AT INMATE SANDERSON WHO WAS LYING ON THE
     TOP BUNK. I ORDERED INMATE KORNAGAY TO STOP YELLING AND HE
     REPLIED, "SHUT THE FUCK UP! Y'ALL ALWAYS BE FUCKING WITH ME.
     I'M GONNA KICK YOUR PUNK ASS WHEN I GET THE CHANCE". I
     AGAIN ORDERED INMATE KORNAGAY TO STOP YELLING AND INMATE
     KORNAGAY REPLIED, "FUCK YOURSELF" AND SAT ON HIS BED AND
     REFUSED TO REPLY TO MY ATTEMPTS TO COUNSEL WITH HIM. THE
     SHIFT SUPERVISOR WAS NOTIFIED AND AUTHORIZED THIS REPORT.
     INMATE KORNAGAY WILL REMAIN IN HIS CURRENT STATUS PENDING
     DISCIPLINARY TEAM ACTION. THIS REPORT WRITTEN THE NEXT DAY
     TO PREVENT OVERTIME.


     REPORT WRITTEN: 10/11/08, AT 18:00   OFFICER: CM040 - COVAN, M.
```
--------------------------------------------------------------------------------
```
II.  INMATE NOTIFICATION OF CHARGES: DATE DELIVERED: _10/14/08_ AT _8:40_

         NO HEARING SHALL COMMENCE PRIOR TO 24 HOURS OF DELIVERY OF CHARGES
         EXCEPT WHEN THE INMATE'S RELEASE DATE DOES NOT ALLOW TIME FOR SUCH
         NOTICE OR THE INMATE WAIVES THE 24 HOUR PERIOD AS AUTHORIZED IN RULE
         33-601, FLORIDA ADMINISTRATIVE CODE.

             DELIVERED BY : _____ - _____
```
--------------------------------------------------------------------------------
```

  NOTICE TO INMATE:
  AS AN INMATE BEING CHARGED WITH A VIOLATION OF THE RULES OF PROHIBITED
  CONDUCT, YOU ARE ADVISED THE FOLLOWING:
```
--------------------------------------------------------------------------------
```

  INVESTIGATION:
  AN IMPARTIAL INVESTIGATION WILL BE CONDUCTED ON THIS DISCIPLINARY REPORT.
  DURING THE INVESTIGATION OF THE DISCIPLINARY REPORT, YOU WILL BE ADVISED
  OF THE CHARGES AGAINST YOU AND YOU MAY REQUEST STAFF ASSISTANCE. DURING
  THE INVESTIGATION YOU SHOULD MAKE KNOWN ANY WITNESSES TO THE INVESTIGATING
  OFFICER. THE TESTIMONY OF WITNESSES SHALL BE PRESENTED BY WRITTEN STATEMENTS.
  SEE RULE 33-601.307(3) FOR COMPLETE INFORMATION REGARDING WITNESSES. YOU WILL

FLORIDA DEPARTMENT OF CORRECTIONS                    10/13/2008

ISSO150 (01)                CHARGING DISCIPLINARY REPORT                    PAGE:      2
                              LOG # 119-082669
--------------------------------------------------------------------------------
DC#: J13805   INMATE NAME: KORNAGAY, ROBERT D.               INFRACTION
VIOLATION CODE: 0013   TITLE: SPOKEN THREATS                 DATE: 10/10/08
FACILITY CODE: 119    NAME:  SANTA ROSA C.I.                 TIME: 21:30
--------------------------------------------------------------------------------
HAVE THE OPPORTUNITY TO MAKE A STATEMENT IN WRITING REGARDING THE CHARGE AND
TO PROVIDE INFORMATION RELATING TO THE INVESTIGATION.
--------------------------------------------------------------------------------


DELIVERY OF CHARGES:
A COPY OF THE CHARGES WILL BE PROVIDED TO YOU AT LEAST 24 HOURS PRIOR
TO THE CONVENING OF THE DISCIPLINARY HEARING UNLESS YOU WAIVE THE WAITING
PERIOD. THE HEARING MAY BEGIN ANY TIME AFTER THE 24 HOUR PERIOD UNLESS
YOU SIGN THE WAIVER.
--------------------------------------------------------------------------------


DISCIPLINARY HEARING:
THE DECISION WILL BE MADE IN ADVANCE WHETHER THE HEARING WILL BE CONDUCTED
BY THE DISCIPLINARY TEAM OR THE HEARING OFFICER. YOU MAY REQUEST A HEARING
BY THE FULL DISCIPLINARY TEAM RATHER THAN THE HEARING OFFICER. YOU WILL
APPEAR IN PERSON BEFORE THE DISCIPLINARY TEAM/HEARING OFFICER UNLESS YOU
WAIVE THIS APPEARANCE BY SIGNING A WAIVER FORM. YOU WILL BE ADVISED OF
THE CHARGES PLACED AGAINST YOU AND THE RANGE OF PENALTY IF FOUND GUILTY.
YOU MAY REQUEST STAFF ASSISTANCE. THE CHAIRPERSON/HEARING OFFICER WILL READ
THE STATEMENT AND ASK YOU FOR YOUR PLEA. A GUILTY PLEA REQUIRES NO FURTHER
STATEMENT; HOWEVER, YOU MAY MAKE A STATEMENT FOR THE TEAM/HEARING OFFICER
TO CONSIDER. A NO CONTEST PLEA WILL BE TREATED AS A GUILTY PLEA. A REFUSAL
TO ENTER A PLEA WILL BE TREATED AS A NOT GUILTY PLEA. IF YOU ENTER A NOT
GUILTY PLEA, YOU WILL BE ALLOWED TO MAKE A STATEMENT ON YOUR OWN BEHALF,
PRESENT EVIDENCE AND REQUEST STAFF OR INMATE WITNESSES AS DEEMED APPROPRIATE
BY THE TEAM/HEARING OFFICER. AFTER THE TEAM/HEARING OFFICER HAS MADE A
DECISION, YOU WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE DECISION AND
THE EVIDENCE RELIED UPON IN MAKING THAT DECISION. IF YOU ARE FOUND GUILTY, YOU
WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE RECOMMENDED PENALTY.
--------------------------------------------------------------------------------

APPEAL:
IF YOU ARE FOUND GUILTY, YOU MAY APPEAL THIS DECISION BY FILING A
FORMAL GRIEVANCE WITH THE WARDEN OF YOUR FACILITY WITHIN 15 DAYS OF
THE RECEIPT OF WRITTEN NOTICE OF THE TEAM/HEARING OFFICERS DECISION.
FOR INFORMATION REGARDING THE RULES ON DISCIPLINE, REFER TO: 33-601, F. A. C.

```
                    FLORIDA DEPARTMENT OF CORRECTIONS        10/22/08
ISSO158 (14)             DISCIPLINARY REPORT                 PAGE   1
                         HEARING INFORMATION
                         LOG # 119-082669
------------------------------------------------------------------------
  DC#: J13805    INMATE NAME: KORNAGAY, ROBERT D.      D3115L INFRACTION
  VIOLATION CODE:  0013    TITLE: SPOKEN THREATS       DATE: 10/10/08
  FACILITY CODE:  119    NAME:  SANTA ROSA C.I.        TIME: 21:30
------------------------------------------------------------------------
           TEAM   FINDINGS AND ACTION   DATE: 10/21/08, AT: 08:50
        INMATE OFFERED STAFF ASSISTANCE: DECLINED
        INMATE PLEA: NOT GUILTY   FINDINGS: GUILTY
        INMATE PRESENT: YES
     POSTPONEMENT:
     BASIS FOR DECISION:
        BASED IN PART ON THE WRITTEN STATEMENT OF OFC. COVAN AND
        CONFIRMED IN THE INVESTIGATION THAT ON 10/10/08 AT APPROX.
        9:30 P.M., I/M KORNAGAY, ROBERT DC# J13805 COMMITTED SPOKEN
        THREATS WHEN HE STATED,"SHUT THE FUCK UP! Y'ALL ALWAYS BE
        FUCKING WITH ME. I/M GONNA KICK YOUR PUNK ASS WHEN I GET THE
        CHANCE." I/M KORNAGAY REQUESTED THAT THE CAMERA BE
        REVIEWED. BASED UPON REVIEW OF THE VIDEOTAPE OR REVIEW OF
        THE CAMERA PLACEMENT AND EQUIPMENT OPERATION, THE VIDEOTAPE
        DOES NOT PROVIDE EVIDENCE TO SUPPORT THE INMATE'S WRITTEN
        STATEMENT. ALL WITNESS STATEMENTS AND EVIDENCE WERE READ AND
        CONSIDERED BY THE DISCIPLINARY HEARING TEAM. A COPY OF THE
        FINDINGS WAS PROVIDED TO I/M KORNAGAY LATER IN THE DAY AND
        HE WAS ADVISED THAT HE HAS FIFTEEN DAYS TO APPEAL THE TEAMS
        DECISION.

  ACTIONS TAKEN:
   DISCIPLINARY CONFINEMENT:   30; PROBATION DAYS SET:   0 CONSECUTIVE
   PRIVILEGE SUSP-OTHER        15; PROBATION DAYS SET:   0           ;

   RESTITUTION:       $.00; INDIV.REVIEW/COUNSEL?: N; CONFISCATE CONTRABAND?: N

  TEAM CHAIRMAN:    RTM16 - REYES,T.M.
  TEAM MEMBERS:     GWL00 - GIELOW,W.L.                -
------------------------------------------------------------------------
------------------------------------------------------------------------
```



State of Florida
Department of Corrections

# Close Management Privilege Suspension Request

(Only for use if a Disciplinary Report was written and the hearing is pending. Privilege suspensions will only be in effect between the time the Disciplinary Report is written and the hearing is held.)

Inmate Name:   Kornagay Robert      DC#:   J13805    Bed #:  D3115   CM Level:   3

The Institutional Classification Team will suspend an inmate's privileges if security and safety concerns would preclude an inmate from receiving certain privileges.

**SECTION I - HOUSING SUPERVISOR** (Brief description of the rule infraction which is the basis for the pending disciplinary action.) On 10/10/08, Inmate Kornagay stated, "I'm gonna kick your punk ass when I get the chance." Inmate Kornagay received a disciplinary report for 1-3 spoken threats.

___ Lt Ealum                          10/11/08
Housing Supervisor                    Date

**SECTION II – RECOMMENDATIONS** (Check privileges recommended for suspension)

☒  Phone          ☒  Visitation        ☒  Dayroom
☒  Out-of-Cell Educational Programs

☒  **EXERCISE – Requires that the pending Disciplinary Report is for one of the following specific major rule violations: 1-3, 1-5, 1-7, 1-8, 1-9, 1-10, 1-11, 1-12, 1-13, 1-14, 1-15, 1-16, 1-17, 1-18, 1-19, 1-20, 1-21, 1-22, 2-1, 2-2, 2-3, 2-4, 3-1, 3-2, 4-1.**

**SECTION II – INSTITUTIONAL CLASSIFICATION TEAM** (Check privileges approved for suspension)

☒  Phone          ☒  Visitation        ☒  Dayroom
☒  Out-of-Cell Educational Programs

☒  **EXERCISE – Requires that the pending Disciplinary Report is for one of the following specific major rule violations: 1-3, 1-5, 1-7, 1-8, 1-9, 1-10, 1-11, 1-12, 1-13, 1-14, 1-15, 1-16, 1-17, 1-18, 1-19, 1-20, 1-21, 1-22, 2-1, 2-2, 2-3, 2-4, 3-1, 3-2, 4-1.**

Chairperson                Member (Security)           Member (Classification)

Exercise restriction beginning date: 10/10/08          ending date: 10/24/08

cc:
Inmate File/Housing Supervisor

DC6-163 (Revised 2/27/08)

# EXHIBIT

# L

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**ROBERT DEFORIS KORNAGAY,**

    **Plaintiff,**

v.                    **Case No.: 3:09cv281-LC/EMT**

**OFFICER BURT, et al.,**

    **Defendants.**

_____/

## DEFENDANT COVAN'S ANSWERS TO
## PLAINTIFF'S SECOND SET OF INTERROGATORIES

1.  Did you comply with the rules set forth in F.A.C. 33-602.210 and 33-601.303, before writing Plaintiff a disciplinary report.

**Objection: This question is vague as it does not state a date or refer to a particular disciplinary report. Defendant cannot answer a question where he does not know what the Plaintiff is asking. A defendant is not required to interpret a poorly worded question.**

2.  After you witness the alleged conflict between the Plaintiff and his cellmate, Sanderson, John, did you make any attempts to move one of them to another cell, in order to prevent future harm or conflicts.

**Answer: Yes, in accordance with prison rules and regulations.**

3.  Prior to Plaintiff's alleged conduct on Oct. 10, 2008, have you ever had to write the Plaintiff up for any type of aggressive, violent, disrespectful or threatening conduct, if so please give dates and details of conduct.

**Answer: Not that I recall, but the events in question occurred two years ago.**

**Matthew Covan**
Affiant

Sworn to and subscribed before me
this ___09___ day of ___Septemb___ 2010.

_Wanda D Joyner_
(Signature of Notary Public, State
of Florida)

NOTARY PUBLIC-STATE OF FLORIDA
Wanda D. **Joyner**
Commission # DD908105
Expires: JULY 15, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

Print, type or stamp commissioned
name of notary public

Personally known _____ or
produced identification ___✓___ (type of identification ___State ID___ )

**For objections:**

Lance Eric Neff
Assistant Attorney General
Florida Bar Number 26626
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300 - Telephone
(850) 488-4872 - Facsimile
Email: Lance.Neff@myfloridalegal.com

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to: Robert Kornagay, DC# J13805, ~~Santa Rosa C.I., 5850 East Milton Road, Milton, Florida, 32583-7914~~ on this 23ʳᵈ day of September, 2010.  J 50 Pretrial Den¹ Center, 500 E. Ad St., Jacksonville 32202

_____
LANCE ERIC NEFF

# EXHIBIT

# M

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**ROBERT DEFORIS KORNAGAY,**

 **Plaintiff,**

v.       **Case No.: 3:09cv281-LC/EMT**

**OFFICER BURT, et al.,**

 **Defendants.**

_____/

### DEFENDANT COVAN'S ANSWERS TO
### PLAINTIFF'S FIRST SET OF INTERROGATORIES

1. Please identify all positions and title, with corresponding dates of employment, that you have held as an employee at Santa Rosa C. I. and throughout F.D.O.C. Describe your responsibilities for each position and title.

 **I was a CO1 at Santa Rosa and worked close management.   I accomplished whatever needed to be accomplished regarding inmate custody and control.  I started at Santa Rosa CI approximately September 2007.  I've been at Century CI since November 2008.  At Century CI, I am a CO1 and work confinement, DC and AC.**

2. Please describe in as much detail as possible the complete circumstances surrounding the disciplinary report you wrote the Plaintiff on Oct. 10, 2008.

 **On October 10, 2008, at approximately 9:30 p.m., I was conducting a security check in wing three when I overheard yelling coming from D3115, where you were housed with inmate Sanderson, John DC#J24620.  I observed you standing up in the cell yelling at inmate Sanderson who was lying on the top bunk.  I ordered you to stop yelling and you replied, "Shut the fuck up! Y'all always be fucking with me.  I'm gonna kick your punk ass when I get the**

chance." I again ordered you to stop yelling and you replied, "Fuck yourself" and sat on your bed and refused to reply to my attempts to counsel with you.

I wrote the October 10, 2008 disciplinary report solely because you violated prison regulations when you stated, "I'm gonna kick your punk ass when I get the chance." In no way was the disciplinary report written as retaliation against you. The disciplinary report was written solely because you violated prison rules.

3.  Please describe in as much detail as possible in what situations were you reprimanded, disciplined, or investigated for any action or omission while employed by F.D.O.C.

I was not reprimanded for any event related to this lawsuit. I've never been reprimanded for anything while employed with the FDOC.

4.  Please describe in as much detail as possible any prior information or knowledge you possessed concerning Plaintiff's grievances against Defendant Burt.

I had no knowledge of the grievances until this lawsuit was filed.

5.  Please describe in as much detail as possible any and all training you received while employed by F.D.O.C. in dealing, controlling, and counseling with inmates in order to motivate them to comply with departmental rules or procedures.

The training received by officers is not to be released to or known by inmates due to security risks. However, see F.A.C. 33-602.210 and 33-601.303.

6.  Please describe in as much detail as possible any and all counseling you did with Plaintiff on Oct. 10, 2008, prior to writing a disciplinary report. The details shall be specific as to what you actually said to the Plaintiff and Plaintiff's response to your counseling.

I do not remember what specifically I said to you, if anything.

7.  Please describe in as much detail as possible any conversation, comment, or discussion you had with Plaintiff after the alleged incident on Oct. 10, 2008. Including but not limited to the date of Oct. 24, 2008.

I do not remember having any such conversation, making any comment, or having any discussion with you.

8. Please state the name, affiliation, title, last known address, and last known telephone number of each person who has knowledge of any of the facts stated in your response to interrogatory #2, 6, and 7.

**Lt. D Ealum, Warden Ellis, ~~Officer~~ Gielow, Officer Reyes were involved in the DR in some way. All are at SARCI.**

9. Please describe in as much detail as possible who gave you authorization to write a disciplinary report on Plaintiff. The details shall be specific as to what reason did you give the person whom you sought authorization from to write Plaintiff a disciplinary report.

**Lt. D. Ealum approved the DR on 10-11-08 at 8PM. Please see the answer to number two for details.**

10. Please identify and attach each document, as the term is defined in Fed. R. Civ. P. 32(1)(A), that evidence, mentions, or refers to any of the facts stated in your response to interrogatories #2, 6, and 9.

**DR, DR worksheet, Investigative Report, Witness Statements, Witness Disposition, Documentary and Physical Evidence Disposition, Hearing Worksheet.**
**Otherwise object: Interrogatories are not the appropriate discovery tool to acquire documents.**

11. Please identify and attach a copy of any and all documents showing who was on duty in D-dormitory from 3 – 11 p.m. the night of Oct. 10, 2008.

**Daily Security Roster.**
**Otherwise object: Interrogatories are not the appropriate discovery tool to acquire documents.**

12. Please describe in as much detail as possible any conversation, comment, or any other form of communication you had with any person(s) concerning Plaintiff on Oct. 9 or 10, 2008. This includes inmates, security, civilians, or any of the named Defendants.

**I do not remember any such conversations.**

13.  Please describe in as much detail as possible any and all disciplinary action taken against the Plaintiff due to your disciplinary report.

**I had no control over whether you were found guilty or not guilty after I wrote you the DR. After you were found guilty by the hearing team of the October 10, 2008 disciplinary report I wrote you, you were placed in disciplinary confinement for thirty days and had your privileges suspended for fifteen days. Lt. Ealum recommended the ICT upgrade your CM status. However, CM status is not disciplinary in nature but is a management control decision made by the ICT.**

14.  Please identify each person who has made to you sworn or unsworn statements or provided information for affidavits or statements that relate to the allegations made in Plaintiff's complaint and state the information provided.

**None. I have provided my own information for affidavits. Anything stated to my attorney is privileged.**

15.  Please identify each person known to you and not otherwise identified in your answers to these interrogatories who has provided any information, or assistance of whatever nature or description, relating to any of your answers to these interrogatories.

**My attorney, Lance Neff, assisted me.**

16.  Please describe in as much detail as possible any and all other type of disruptive behavior of the Plaintiff on Oct. 10, 2008 or prior to Oct. 10, 2008, that you personally witness. The details shall be specific as to aggressive, violent, disrespectful conduct or threatening conduct.

**On October 10, 2008, at approximately 9:30 p.m., I was conducting a security check in wing three when I overheard yelling coming from D3115, where you were housed with inmate Sanderson, John DC#J24620. I observed you standing up in the cell yelling at inmate Sanderson who was lying on the top bunk. I ordered you to stop yelling and you replied, "Shut the fuck up! Y'all always be fucking with me. I'm gonna kick your punk ass when I get the chance." I again ordered you to stop yelling and you replied, "Fuck yourself" and sat on his bed and refused to reply to my attempts to counsel with him.**

**Matthew Covan**
Affiant

Sworn to and subscribed before me
this _04_ day of _August_ 2010.

(Signature of Notary Public – State
of Florida)

Wanda D. Joyner
Commission # DD908105
Expires: JULY 15, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

Print, type or stamp commissioned
name of notary public

Personally known _____ or
produced identification _✓_ (type of identification _Interrogatory_

**For objections:**

Lance Eric Neff
Assistant Attorney General
Florida Bar Number 26626
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300 - Telephone
(850) 488-4872 - Facsimile
Email: Lance.Neff@myfloridalegal.com

EXHIBIT N

**INMATE REQUEST**

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

(Instructions on Back)

Mail Number: _____
Team Number: _____
Institution: _____

08-6124

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☑ Dental ☑ Other |

| | Inmate Name | I.C Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| FROM: | Robert D Kornagay | J13805 | D3115 | | 10/12/08 |

**REQUEST** Informal Grievance

This grievance is due to the threats I have received from officers Burt, due to a informal grievance I filed on him about his continued harassment. Officer Burt came to my cell door on 10/10/08 and stated "Kornagay since you want to write grievances on me, I guess I have to put you on my hit list, pay back is a mother fucker." Due to officer Burt threats and continued harassment I am unable to live as a normal CM3 ☐ inmate; I'm in a constant state of uneasiness when ever officer Burt is on the wing. I'm in fear of officer Burt retaliating against me because of my last grievance filed against him, along with this one. I fear he will lie to get me sprayed or write me up, mess with me legal work or even physically hurt me or get one of his fellow officers to do it. So I ask for a second time that the Dept help me, and move me to another dorm. I'm in fear! Thank you.

All requests will be handled in one of the following ways: ☑) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

C. Sielow

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**

RECEIVED

DATE RECEIVED: OCT 14 2008

ASST. SUPERINTENDENT OPERATIONS
un... ...S.A.R.C.I.

You grievance has been recived, reviewed al ... ...
I intervied officer Burt al he states " all inmates Kornagay
statements are false, I never made any statents I knits Kornage
regardis any grievance "pay back," or any good ole boys. All communication
from me to inmate Kornegay has been professional i nature
al necessary in the cause of my duties" Therefore you
grievance has been denied

| The following pertains to informal grievances only: | | Denied | |
| Based on the above information, your grievance is | | . (Returned, Denied, or Approved). If your informal grievance is denied, |
| you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.] | | | |
| Official (Signature): W Sielow | | Date: | 10-16-08 |

EXHIBIT O

UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA    DIVISION

JUL 2 5 2010

FOR MAILING

INMATE INITIALS

ROBERT D. HORNACAY, inmate #J13805,
                    Plaintiff,

vs.                           CASE NO: 3:09 CV 281-LC/EMT

OFFICER BURT, et al,
          Defendants/

PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS
TO DEFENDANT Grelow

        Pursuant to Fed. R. Civ. P. 36, Robert D. Hornagay,
Plaintiff, requests Defendant Grelow admit that each
of the following facts are true, within (30) days after
service of this document:

    1. On October 17, 2008, defendant Grelow interviewed
Defendant Burt about a grievance the Plaintiff filed
against Defendant Burt on October 15, 2008.
    2. On October 16, 2008, defendant Grelow interviewed
Defendant Burt about a grievance the Plaintiff filed
against Defendant Burt on October 12, 2008.
    3. Defendant Grelow had full knowledge that through-
out Plaintiff's placement on management meal, the
Plaintiff had not been involved in any other alleged
misconduct that would require continued placement
on management meal diet.
    4. On January 17, 2010, at approximately 1:30, [PM] Defendant
Grelow was called on wing 2 of C dormitory, where
he sprayed a unknown inmate with chemical agents.

1

5. Throughout Plaintiff's placement on management meal, Defendant Crelow did not make daily visits with the Plaintiff to determine if he should be removed from the management meal.

7-25-10
Date

/s/ Robert D. Hornaggy
Robert D. Hornaggy
DC# J15805
Santa Rosa C-1
5850 E. Milton RD
Milton, FLA 32583

2

EXHIBIT P

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS
DAILY RECORD OF SPECIAL HOUSING

Inmate Name: Komagey, Robert
DCR#: 373705
Institution: SANTA ROSA C.I.
Dorm & Cell #: DELTA 1311 5

Special Housing Category: AC ☐ DC ☐ CM ☒ MM ☐ CSU ☐ TCU ☐ CMH ☐
This is sheet number 34 of inmate's current period of special housing.
Initial Placement Date 3-10-07  Applicable Level 3
Status DF  DC Time Begins 10-2-08  Ends 12-5-07  Team 6

Security Alerts/Property/Privilege Restrictions:
DO I-3 Spider Threat

| Day | Date | Propwal approval | Attitude | Time | Remarks (check here if additional remarks included on back of DC5-6299) | Meals offered/refused | Showers offered/refused | Laundry offered/refused | Recreation offered/refused | Linens/clothing | Cleaning supplies/other | Sick call | Date | Time | Condition | Action and Remarks MH-WEEKLY ROUNDS | Initials |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | MEDICAL/MENTAL HEALTH DEPARTMENT | |
| MON | | S | N | | AM CHECK ID | ☐ | | | | | | | | | | | |
| TUES | | S | N | | AM CHECK ID | ☐ | | | ✓ | | | | | | | | |
| WED | | S | N | | AM CHECK ID | ☐ | | | ✓ | | | | 11/13/07 | 0530 | DY | | LVP |
| THURS 18 | | S | N | | AM CHECK ID | ☐ | | | ✓ | | | | | | | | |
| FRI | | S | N | | AM CHECK ID | | | | ✓ | | | | | | | | |
| SAT | | S | N | | AM CHECK ID | | | | | | | | | | | | |
| 18 | | S | N | | AM CHECK ID | ☒ | | | | | | | | | | | |

DC6-229 (Revised 4/27/08)

Incorporated by Reference in Rule 33-602.220, F.A.C.

Page 1 of 2

Incorporated by Reference in Rule 33-602.220, F.A.C.

DRSH000008

DC6-229 (Revised 4/27/06)

Page 2 of 2

| Classification / Institutional Classification Team (ICT) / State Classification Office (SCO) Review | | | |
|---|---|---|---|
| Date Reviewed | Action | Remarks – Disposition | Signature |
| | | | |

EXHIBIT Q

**INMATE REQUEST**

(Instructions on Back)

E4

Team Number:

Institution:

OB-6192

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☑ Other |
|---|---|---|---|---|

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Robert D Kornagay | J13805 | D3115 | | 10/15/08 |

REQUEST **Informal Grievance**

On 10/15/08, at approximately 3:25 pm, Officer Burt came to my cell door and stated "Kornagay did you receve that disciplinary report from officer Covin? I told you pay-back is a motherfucker; I'm down with a gang also, but my gang is called the Good Ole boys, and we stuck together, unlike your gang, I just hope your able to handle them Chemical agents thats coming your way real soon. This is my third grievance about the harassment and threats I have received from officer Burt. So far I have received a disciplinary report, where his co-worker, officer Covin, lied on me, After conspiring with officer Burt in a attempt to get me up graded from CMS to CM1. I state in this grievance as I stated in my last two, I have become a victom of reprisal because I used the grievance system against officer Burt. I'm living in constant fear that his next act of reprisal will be with Chemical agents as he informed me. Please help!

All requests will be handled in one of the following ways: 1) Written Information or informal grievances will be responded to in writing.

Bigelow

**DO NOT WRITE BELOW THIS LINE**

RECEIVED

OCT 16 2008

Asst SUPERINTENDENT OPERATIONS
S.A.R.C.I.

**RESPONSE**

DATE RECEIVED

Your grievance has been received, reviewed, & evaluated. I interviewed officer Burt he states "all Inmate Kornagay's statements are false, I never made any statements to Inmate Kornagay regarding any grievances, payback, or any "Good ole boys." All communication from me to Inmate Kornagay has been professional in nature and necessary in the course of my duties." Therefore you grievance has been denied.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is, **denied** . (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): W Bigelow | Date: 10-17-08 |
|---|---|

# EXHIBIT

R

```
                    FLORIDA DEPARTMENT OF CORRECTIONS         10/19/2008
   ISSO130 (01)         CHARGING DISCIPLINARY REPORT                          PAGE:      1
                            LOG # 119-082723
-------------------------------------------------------------------------------
   DC#: J13805   INMATE NAME: KORNAGAY, ROBERT D.        INFRACTION
   VIOLATION CODE:  0013   TITLE: SPOKEN THREATS         DATE: 10/17/08
   FACILITY CODE:  119     NAME:  SANTA ROSA C.I.        TIME: 19:40
-------------------------------------------------------------------------------
```

I.   STATEMENT OF FACTS
     INMATE KORNAGAY, ROBERT DC#J13805 IS BEING CHARGED WITH A
     VIOLATION OF FAC CHAPTER 33-601.314 RULES OF PROHOBITED
     CONDUCT 1-3 SPOKEN, WRITTEN, OR GESTURED THREATS.  ON
     10/17/08 I WAS ASSIGNED AS A D-DORMITORY HOUSING OFFICER.
     AT APPROXIMATELY 7:40PM, I WAS RESPONDING TO A DISTURBANCE
     IN WING 3 WHEN I WAS DIRECTED TO CELL D3115 WHERE INMATE
     KORNAGAY, ROBERT DC#J13805, WHO IS HOUSED IN D3115L, WAS
     BEATING ON HIS DESK IN HIS CELL SINGING, "FUCK THE POLICE."
     I ORDERED INMATE KORNAGAY TO STOP SINGING AND HE STATED TO
     ME  "THE ONLY WAY I'M GONNA STOP SINGING IS IF I GET OUT OF
     THIS CELL TO BEAT YOUR COUNTRY ASS!"  I AGAIN ORDERED INMATE
     KORNAGAY TO STOP HIS DISRUPTIVE BEHAVIOR AND HE STATED,
     "YOUR LUCKY I'M FEELING GOOD, I'M GONNA STOP FOR NOW."  THE
     SHIFT SUPERVISOR WAS NOTIFIED AND AUTHORIZED THIS REPORT.
     INMATE KORNAGAY WILL REMAIN IN HIS CURRENT STATUS PENDING
     DISCIPLIANRY TEAM CACTION.


   REPORT WRITTEN: 10/17/08, AT 20:00   OFFICER: EJD01 - ENGSTROM,J.D.
-------------------------------------------------------------------------------

II.  INMATE NOTIFICATION OF CHARGES: DATE DELIVERED: _10/20/08_ AT _11:55AM_

          NO HEARING SHALL COMMENCE PRIOR TO 24 HOURS OF DELIVERY OF CHARGES
          EXCEPT WHEN THE INMATE'S RELEASE DATE DOES NOT ALLOW TIME FOR SUCH
          NOTICE OR THE INMATE WAIVES THE 24 HOUR PERIOD AS AUTHORIZED IN RULE
          33-601, FLORIDA ADMINISTRATIVE CODE.

             DELIVERED BY : SANOO -
-------------------------------------------------------------------------------

   NOTICE TO INMATE:
   AS AN INMATE BEING CHARGED WITH A VIOLATION OF THE RULES OF PROHIBITED
   CONDUCT, YOU ARE ADVISED THE FOLLOWING:
-------------------------------------------------------------------------------

   INVESTIGATION:
   AN IMPARTIAL INVESTIGATION WILL BE CONDUCTED ON THIS DISCIPLINARY REPORT.
   DURING THE INVESTIGATION OF THE DISCIPLINARY REPORT, YOU WILL BE ADVISED
   OF THE CHARGES AGAINST YOU AND YOU MAY REQUEST STAFF ASSISTANCE. DURING
   THE INVESTIGATION YOU SHOULD MAKE KNOWN ANY WITNESSES TO THE INVESTIGATING
   OFFICER. THE TESTIMONY OF WITNESSES SHALL BE PRESENTED BY WRITTEN STATEMENTS.
   SEE RULE 33-601.307(3) FOR COMPLETE INFORMATION REGARDING WITNESSES. YOU WILL
   HAVE THE OPPORTUNITY TO MAKE A STATEMENT IN WRITING REGARDING THE CHARGE AND
   TO PROVIDE INFORMATION RELATING TO THE INVESTIGATION.
-------------------------------------------------------------------------------

```
                    FLORIDA DEPARTMENT OF CORRECTIONS          10/19/2008
ISS0150 (01)            CHARGING DISCIPLINARY REPORT                        PAGE:      2
                           LOG # 119-082723
--------------------------------------------------------------------------------
  DC#: J13805   INMATE NAME: KORNAGAY, ROBERT D.            INFRACTION
  VIOLATION CODE:  0013   TITLE: SPOKEN THREATS             DATE: 10/17/08
  FACILITY CODE:  119    NAME:  SANTA ROSA C.I.             TIME: 19:40
--------------------------------------------------------------------------------
```

DELIVERY OF CHARGES:
A COPY OF THE CHARGES WILL BE PROVIDED TO YOU AT LEAST 24 HOURS PRIOR
TO THE CONVENING OF THE DISCIPLINARY HEARING UNLESS YOU WAIVE THE WAITING
PERIOD. THE HEARING MAY BEGIN ANY TIME AFTER THE 24 HOUR PERIOD UNLESS
YOU SIGN THE WAIVER.

--------------------------------------------------------------------------------

DISCIPLINARY HEARING:
THE DECISION WILL BE MADE IN ADVANCE WHETHER THE HEARING WILL BE CONDUCTED
BY THE DISCIPLINARY TEAM OR THE HEARING OFFICER. YOU MAY REQUEST A HEARING
BY THE FULL DISCIPLINARY TEAM RATHER THAN THE HEARING OFFICER. YOU WILL
APPEAR IN PERSON BEFORE THE DISCIPLINARY TEAM/HEARING OFFICER UNLESS YOU
WAIVE THIS APPEARANCE BY SIGNING A WAIVER FORM. YOU WILL BE ADVISED OF
THE CHARGES PLACED AGAINST YOU AND THE RANGE OF PENALTY IF FOUND GUILTY.
YOU MAY REQUEST STAFF ASSISTANCE. THE CHAIRPERSON/HEARING OFFICER WILL READ
THE STATEMENT AND ASK YOU FOR YOUR PLEA. A GUILTY PLEA REQUIRES NO FURTHER
STATEMENT; HOWEVER, YOU MAY MAKE A STATEMENT FOR THE TEAM/HEARING OFFICER
TO CONSIDER. A NO CONTEST PLEA WILL BE TREATED AS A GUILTY PLEA. A REFUSAL
TO ENTER A PLEA WILL BE TREATED AS A NOT GUILTY PLEA. IF YOU ENTER A NOT
GUILTY PLEA, YOU WILL BE ALLOWED TO MAKE A STATEMENT ON YOUR OWN BEHALF,
PRESENT EVIDENCE AND REQUEST STAFF OR INMATE WITNESSES AS DEEMED APPROPRIATE
BY THE TEAM/HEARING OFFICER. AFTER THE TEAM/HEARING OFFICER HAS MADE A
DECISION, YOU WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE DECISION AND
THE EVIDENCE RELIED UPON IN MAKING THAT DECISION. IF YOU ARE FOUND GUILTY, YOU
WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE RECOMMENDED PENALTY.

--------------------------------------------------------------------------------

APPEAL:
IF YOU ARE FOUND GUILTY, YOU MAY APPEAL THIS DECISION BY FILING A
FORMAL GRIEVANCE WITH THE WARDEN OF YOUR FACILITY WITHIN 15 DAYS OF
THE RECEIPT OF WRITTEN NOTICE OF THE TEAM/HEARING OFFICERS DECISION.
FOR INFORMATION REGARDING THE RULES ON DISCIPLINE, REFER TO: 33-601, F. A. C.

```
                      FLORIDA DEPARTMENT OF CORRECTIONS           10/23/08
ISSO158 (14)              DISCIPLINARY REPORT                    PAGE  1
                         HEARING INFORMATION
                         LOG # 119-082723
-------------------------------------------------------------------------------
DC#: J13805   INMATE NAME: KORNAGAY, ROBERT D.          D3115L INFRACTION
VIOLATION CODE:  0013   TITLE: SPOKEN THREATS           DATE: 10/17/08
FACILITY CODE:  119     NAME:  SANTA ROSA C.I.          TIME: 19:40
-------------------------------------------------------------------------------
         TEAM    FINDINGS AND ACTION   DATE: 10/23/08, AT: 08:05
         INMATE OFFERED STAFF ASSISTANCE: DECLINED
         INMATE PLEA: NOT GUILTY   FINDINGS: GUILTY
         INMATE PRESENT: YES
    POSTPONEMENT:
    BASIS FOR DECISION:
         BASED IN PART ON THE WRITTEN STATEMENT OF OFC. ENGSTROM AND
         CONFIRMED IN THE INVESTIGATION THAT ON 10/17/08 AT APPROX.
         7:40 P.M., I/M KORNAGAY, ROBERT DC# J13805 COMMITTED SPOKEN
         THREATS WHEN HE STATED, "THE ONLY WAY I'M GONNA STOP SINGING
         IS IF I GET OUT OF THIS CELL TO BEAT YOUR COUNTRY ASS!" I/M
         KORNAGAY REQUESTED THAT THE VIDEOTAPE BE REVIEWED. BASED
         UPON REVIEW OF THE VIDEOTAPE OR REVIEW OF THE CAMERA
         PLACEMENT AND EQUIPMENT OPERATION, THE VIDEOTAPE DOES NOT
         PROVIDE EVIDENCE TO SUPPORT THE INMATE'S WRITTEN STATEMENT.
         ALL WITNESS STATEMENTS AND EVDIENCE WERE READ AND CONSIDERED
         BY THE DISCIPLIANRY HEARING TEAM. A COPY OF THE FINDINGS WAS
         PROVIDED TO I/M KORNAYGAY LATER IN THE DAY AND HE WAS
         ADVISED THAT HE HAS FIFTEEN DAYS TO APPEAL THE TEAMS
         DECISION.

  ACTIONS TAKEN:
   DISCIPLINARY CONFINEMENT:  30; PROBATION DAYS SET:   0 CONSECUTIVE

   RESTITUTION:      $.00; INDIV.REVIEW/COUNSEL?: N; CONFISCATE CONTRABAND?: N

   TEAM CHAIRMAN:   RTM16 - REYES,T.M.
   TEAM MEMBERS:    GWL00 - GIELOW,W.L.          -
-------------------------------------------------------------------------------
-------------------------------------------------------------------------------
```

ISO0250
ISS 25

FLORIDA DEPARTMENT OF CORRECTIONS
REPORT OF CLOSE MANAGEMENT, DC6-233C
** ICT HEARING **

11/10/2008
PAGE: 1

```
DC#       : J13805            NAME   : KORNAGAY, ROBERT D.       EXT.STA  : ACTIVE       TRD             : 99/98/9999
B/M                           CUR.LOC: SANTA ROSA C.I.           CUSTODY  : CLOSE        TEAM            : 02
PROCESS TYPE: REVIEW          WK.ASG.: CONFINEMENT-DISCIPLINARY  BED      : B1122S       INTERNAL STATUS : DC - FULL TIME
TOT #DR    : 17               #DR PER: 6                         #CAT I DR: 2            LAST CAT I DR   : 0115  10/21/2008
```

***  SECTION I - REVIEW OF INMATE'S ASSIGNMENT TO CLOSE MANAGEMENT STATUS

PLACEMENT INFORMATION PRIOR TO THIS REVIEW:
DATE OF INITIAL ASSIGNMENT: 02/13/2008   AN ACT OR ACTS IN THE COMMUNITY, DURING OTHER PERIODS OF CONFINEMENT, OR ANY CIRCUMSTANCES
INITIAL REFERRAL REASON:                 ASSOCIATED WITH THE CURRENT PERIOD OF INCARCERATION SUCH THAT SAFETY, SECURITY, AND PUBLIC
                                         SAFETY CONCERNS SUGGEST FURTHER REVIEW PRIOR TO PLACEMENT IN OPEN POPULATION.

DATE OF CURRENT CM LEVEL:  08/06/2008
CURRENT CM LEVEL:          3
STAFF ASSAULT CONV:        NO

DATE OF REVIEW:    11/05/2008      TIME:   08:00      FACILITY:   SANTA ROSA C.I.

REVIEWED BY:       REYES,T.M.

***  CLO RECOMMENDATION: REC. FOR CM I
***  BASIS:
     AN INMATE WHO IS CURRENTLY IN CMIII AND SHOWS AN INABILITY TO ADJUST AS EVIDENCED BY SUBSEQUENT MAJOR RULE VIOLATION(S)
     (1).

*  RECOMMENDATION COMMENTS:
   I/M KORNAGAY WAS APPROVED TO CM 2 ON 02/13/08 DUE TO AN INVESTIGATION INTO GANG ACTIVITIES WHICH REVEALED THAT I/M KORNAGAY
   WAS ATTEMPTING TO ACQUIRE WEAPONS IN ORDER TO STAGE A DISTURBANCE TO MAKE A NAME FOR THE "9-TREY BLOODS". I/M KORNAGAY
   WAS APPROVED TO CM 3 ON 08/06/08 AND AGAIN ON 08/29/08 DUE TO CORRECTIONS BEING MADE IN THE ICT HEARING COMMENTS. THIS
   IS AN ABBREVIATED REVIEW DUE TO I/M KORNAGAY RECEIVING SIX DISCIPLINARY REPORTS FOR LYING TO STAFF, (2) SPOKEN THREATS,
   PARTICIPATING IN A DISTURBANCE, ASSAULT/ATT/CO AND BATTERY/ATT/CO. DUE TO I/M KORNAGAY RECEIVING FIVE (5) MAJOR RULE VIOLATION
   DISCIPLINARY REPORTS TO INCLUDE ASSAULTS ON STAFF, SAFETY AND SECURITY CONCERNS EXIST, AND IT IS RECOMMENDED THAT I/M
   KORNAGAY BE UPGRADED TO CM 1 STATUS. I/M KORNAGAY HAS NO CONVICTIONS FOR BATTERY ON LEO NOTED. NOTE: I/M KORNAGAY HAS
   BEEN PREVIOUSLY ASSIGNED TO CM FROM 08/26/03 TO 08/02/05 AND FROM 12/07/05 TO 09/11/07.

***  SECTION II.  NOTICE OF CLOSE MANAGEMENT REVIEW

YOU ARE HEREBY NOTIFIED THAT YOU SHALL RECEIVE A REVIEW BY THE INSTITUTIONAL CLASSIFICATION TEAM NO EARLIER THAN 48 HOURS
FROM THE TIME THIS NOTICE IS DELIVERED. YOU ARE PERMITTED TO SUBMIT INFORMATION TO THE TEAM VERBALLY OR IN WRITING
REGARDING THE STATUS OF YOUR ASSIGNMENT TO CLOSE MANAGEMENT.

NOTICE DELIVERED BY: REYES,T.M.                   DATE: 11/05/2008      FACILITY:   SANTA ROSA C.I.      TIME:  12:16

***  SECTION III.  INSTITUTIONAL CLASSIFICATION TEAM HEARING

DATE:                11/10/2008      TIME:    14:21      FACILITY:   THOMPSON CHAD E      SANTA ROSA C.I.

CHAIRPERSON:         HAAS, JENNIFER A.
MEMBERS:             COURTNEY, CYNTHIA
I/M WAIVED 48 HOUR NOTICE:     NO
STAFF ASSISTANCE:              NONE
WHO:
INMATE PRESENT:                YES
EXTENSION GRANTED:             NO

```
ISS0250                        FLORIDA DEPARTMENT OF CORRECTIONS                     11/10/2008
ISS 25                  REPORT OF CLOSE MANAGEMENT, DC6-233C                         PAGE:  2
                               ** ICT HEARING **

DC#      : J13805          NAME   : KORNAGAY, ROBERT D.         EXT.STA  : ACTIVE        TRD            : 99/98/9999
B/M                       CUR.LOC: SANTA ROSA C.I.             CUSTODY  : CLOSE         TEAM           : 02
PROCESS TYPE: REVIEW      WK.ASG.: CONFINEMENT-DISCIPLINARY     BED      : B1122S        INTERNAL STATUS: DC - FULL TIME
TOT #DR : 17              #DR PER :      6                      #CAT I DR:   2           LAST CAT I DR  : 0115   10/21/2008
```

THE FOLLOWING ASSESSMENTS WERE REVIEWED AND CONSIDERED:
DC4-729 BEHAVIORAL RISK ASSESS           06/09/2008
DC4-528 M.H. ASSESSMENT                  09/26/2008

DISCIPLINARY CONFINEMENT:                                DC < 60 DAYS
INMATE PROVIDED COPY OF THE REVISED OFFER OF JUDGEMENT:  NO
INMATE PROVIDED COPY OF ICT RECOMMENDATION:             YES

*ICT RECOMMENDATION:  REC. FOR CM I
*BASIS FOR RECOMMENDATION:
 ICT RECOMMENDS I/M KORNAGAY'S CONTINUED OBSERVATION IN CM BASED ON DOCUMENTED INCIDENTS DURING THE REVIEW PERIOD. ON 10/10/08
 AND 10/17/08 I/M KORNAGAY THREATENED TO HARM STAFF MEMBERS, ON 10/21/08 I/M KORNAGAY ATTEMPTED TO SPIT ON STAFF AND THEN
 ON THE SAME DATE HE DID SPIT ON OFFICER GRACE. ON 10/22/08 HE WAS OBSERVED YELLING ON THE WING AND KICKING ON HIS CELL
 DOOR, REFUSING ORDERS TO CEASE HIS DISRUPTIVE BEHAVIOR UNTIL CHEMICAL AGENTS WERE ADMINISTERED. I/M KORNAGAY'S THREATS
 OF VIOLENCE, AGGRESSIVE AND ASSAULTIVE ACTIONS WARRANT OBSERVATION IN A MORE RESTRICTIVE LEVEL OF CM 1. I/M KORNAGAY REFUSED
 TO PARTICIPATE IN THE CM REVIEW THEREFORE A CELL FRONT INTERVIEW WAS CONDUCTED.

# EXHIBIT




| | **Witness Statement** | |
|---|---|---|
| **State of Florida** | Log # ___082723___ | **Department of Corrections** |

**I.   Identifying Inmate Information**

DC # 313805   Inmate Name KORNAGAY, ROBERT

Violation Code and Short Title

Use of Force # _____

Date Report Written _____

**II.   Witness**

☐   Staff Member: Name and Position_____

☐   Other Individual: Name_____

☑   Inmate:   DC # J24620   Name SANDERSON, JOHN

**III.   Voluntary Refusal**

The witness voluntarily refused to provide a written statement to the Investigating
Officer and the following signature(s) attests to that fact:

Witness Signature _____   Date_____

Signature of Investigating Officer_____   Date_____

**IV.   Statement**

On 10-17-08 officer Engstrom never stopped at
our door (D-3115) to counsel with inmate Kornagay about anything.
Since I've been in this room with inmate Kornagay
officer Engstrom hasnt even spoken to either one of us.
This accusation that officer Engstram is implying is
completely false. Officer Burt made it clear to inmate Kornagay
that he would pay him **back** for the grievances that
inmate Kornagay wrote on officer Burt. This Disciplinary
Report that inmate Kornagay received is a result of officer
Burts in-direct retaliation through another officer. This is
the second Disciplinary Report that inmate Kornagay has received
from an officer on the Three to Eleven Shift!

Witness Signature Jon Sanderson   Date 10-20-08

Signature of Investigating Officer Q.T. Slaughtery   Date 10-20-08

DC6-112C (Revised 8/06)          Original: Inmate File          Copy: Central Office

# EXHIBIT



**33-601.303 Reporting Distiplinary Infractions.**

(1) When any employee or person supervising inmates witnesses an act or has reason to believe that an act has been committed by an inmate which is in violation of the rules or procedures of the Department and that employee determines that the infraction can be properly disposed of without a formal disciplinary report, the employee shall take the necessary action to resolve the matter. The employee may decide to reprimand the inmate verbally or in writing through use of Form DC6-117, Corrective Consultation of Inmate.

(a) A verbal reprimand is any employee's verbal counseling to the inmate designed to motivate the inmate to comply with, or to clarify the rules of prohibited conduct, departmental rules or procedures or institutional regulations. Verbal reprimands will be documented on the inmate's contact card, Form DC6-256. Form DC6-256 is incorporated by reference in paragraph 33-601.313(1)(c), F.A.C.

(b) If the employee decides to reprimand the inmate in writing, the employee shall issue the inmate a Corrective Consultation, Form DC6-117. Form DC6-117 is incorporated in Rule 33-601.313, F.A.C. A copy of the corrective consultation will be provided to the inmate within twenty-four hours of the writing of the corrective consultation and a copy will be placed in the inmate's institutional file.

(2) If the employee cannot resolve the matter through a verbal reprimand or corrective consultation, the employee shall consult with and obtain approval from his or her supervisor regarding preparation of a formal disciplinary report, unless the employee is at the department head level or correctional officer lieutenant level or above.

(3) When it appears that laws of the state have been violated, the Office of the Inspector General shall be notified, who will in turn contact the State Attorney when deemed appropriate. If the State Attorney decides to prosecute, his office shall be consulted as to the suitability of disciplinary action being taken by the institution prior to the prosecution being concluded.

(a) If the State Attorney has no objections, formal disciplinary action shall proceed.

(b) If the State Attorney objects to disciplinary action prior to prosecution, the file shall be flagged so that the investigation and disciplinary process can be completed once the criminal prosecution has been resolved.

(c) Failure to notify the state attorney prior to taking disciplinary action is not grounds for dismissal of the disciplinary report.

(4) The commission of acts that should normally result in consideration for formal disciplinary action shall not be subject to such action when these acts are directly associated with an inmate's intentional self injurious behavior.

*Rulemaking Authority 944.09 FS. Law Implemented 944.09, 945.04 FS. History–New 3-12-84, Formerly 33-22.04, Amended 12-30-86, 10-1-95, Formerly 33-22.004, Amended 5-21-00, 2-11-01, 9-22-09.*

Kornagay.2nd.Request for Production000091

# EXHIBIT





IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT DEFORIS KORNAGAY,

    Plaintiff,

v.               Case No.: 3:09cv281-LC/EMT

OFFICER BURT, et al.,

    Defendants.
_____/

## DEFENDANT ENGSTROM'S ANSWERS TO
## PLAINTIFF'S SECOND SET OF INTERROGATORIES

1. Please describe in as much detail as possible any and all disciplinary action the Plaintiff was subject to due to his alleged "numerous threats of physical harm" against you. The details shall be specific as to the alleged incidents raised in your answer to question six of the first set of interrogatories.

**Answer: There were no disciplinary actions regarding these other incidents. I verbally counseled you to cease your bad actions during these other incidents.**

2. Please give a general description of all alleged threats of physical harm by Plaintiff, prior to and after October 17, 2008.

**Answer: I can only recall the disciplinary report given to you for spoken threats and the incident where you called me up to your cell to pass gas on me. I do not recall the specifics of any other incident as these acts occurred over two years ago.**

3. Please identify each person who witness and have information about the circumstances surrounding the disciplinary report you wrote the Plaintiff on Oct. 17, 2008.

**Answer: Please see the documents pertaining to that disciplinary report.**

4.  Please explain in as much detail as possible your interpretation of Rule 33-601.303(1)(a)(b) & (2) of F.A.C.

**Answer: I do not interpret rules. I follow them to the best of my ability and in accordance to the language of the rule.**

5.  Please explain in as much detail as possible your reason for writing the Plaintiff a disciplinary report after the alleged misconduct was allegedly resolved through a verbal reprimand from you.

**Objection: This question is vague as it does not state a date or refer to a particular disciplinary report. Defendant cannot answer a question where he does not know what the Plaintiff is asking. A defendant is not required to interpret a poorly worded question.**

6.  Please explain in as much detail as possible the difference between Plaintiff's alleged threat to you on Oct. 17, 2008, and Plaintiff's alleged threats mentioned in your answer to question six of the first set of interrogatories.

**Answer: The October 17, 2008 threat was the last in a line of problems from you and I decided you needed to be written a disciplinary report.**

7.  Please explain in as much detail as possible your reasons for not writing the Plaintiff a disciplinary report for any and/or all the alleged incidents raised in your answer to question six of the first set of interrogatories, where you allege that the Plaintiff on numerous occasions threatened you with physical harm.

**Answer: Counseling is generally required first and I decided to counsel you instead of writing you a disciplinary report.**

8.   Please describe in as much detail as possible any and all facts, exhibits, witnesses, and other evidence that you plan to use in opposition to the Plaintiff's complaint.

**Objection: Attorney client privilege; Attorney work product privilege.**

9.   Please identify your responsibilities as a correctional officer, during the month of Oct. 2008.

**Answer: Care, custody, and control of inmates and to ensure my fellow officers are safe, the inmates are safe, and to ensure the safety of the general public.**

10.   Please describe in as much detail as possible any investigations or interviews conducted as a result of grievances filed by the Plaintiff against you, in regards to allegations of you retaliating against him because of the grievances he filed against Defendant Burt. Including but not limited to the date of or around Oct. 28, 2008.

**Answer: None.**

11.   Please identify each document, as the term is defined in Fed. R. Civ. P. 34(1)(a), that evidence, mentions, or refers to any of the facts stated in your response to interrogatories # 1, 2, 3, 7, and 10.

**Answer: Spoken Threat disciplinary report documents.**

**JOEL ENGSTROM**
Affiant

Sworn to and subscribed before me
this  $\underline{8}$  day of September, 2010.

(Signature of Notary Public, State
of Florida)

NOTARY PUBLIC-STATE OF FLORIDA
Janet R. Brunson
Commission #DD847978
Expires: DEC. 29, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

Print, type or stamp commissioned
name of notary public

Personally known ___X___ or
produced identification _____ (type of identification _____)

**For objections:**

Lance Eric Neff
Assistant Attorney General
Florida Bar Number 26626
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300 - Telephone
(850) 488-4872 - Facsimile
Email: Lance.Neff@myfloridalegal.com

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing has been furnished
by U.S. Mail to: Robert Kornagay, DC# J13805, ~~Santa Rosa C.I., 5850 East Milton~~
~~Road, Milton, Florida, 32583-7914~~ on this 23ʳᵈ day of September, 2010.

JSO Pretrial
Deentention Center
500 E. Adams.
Jacksonville FL 3

LANCE ERIC NEFF

# EXHIBIT




IN THE UNITED STATES DISTRICT COURT

OF FLORIDA, PENSACOLA DIVISION

Robert Kornagay,
       Plaintiff

.VS.                                    Case No:

COI Burt, etal.,
      Defendants

DECLARATION OF Edward Davis, Jr.* A-505993

I, Edward Davis, Jr.* A-505993, hereby swear that the following statements are true & based on matters that I personally witnessed & heard.

While housed in cell 1203, next door to Robert Kornagay* J13805 who was housed in cell 1202 since around July of 2009. On several different occasions since COI. Burt has started working on the graveyard shift in our dorm, I have over heard COI. Burt make statements to Kornagay such as: "If I hear about you filing anymore grievances, me & my boys are gonna ring that bell of your," or "I'll hear him say, "I'm thinking about going back on the 3 to 11 shift so I can trash somemore of your mail."

I declare under the penalty of perjury that that foregoing Declaration is true & correct executed at Santa Rosa C.I. Main Unit; 5850 East Milton Road, Milton, Florida 32583

On 9/18/09

Declarant: Edward Davis Jr. * A-505993

# EXHIBIT



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT DEFORIS KORNAGAY,

     **Plaintiff,**

v.                     **Case No.: 3:09cv281-LC/EMT**

OFFICER BURT, et al.,

     **Defendants.**

_____/

## DEFENDANT BURT'S ANSWERS TO
## PLAINTIFF'S SECOND SET OF INTERROGATORIES

1. Prior to Oct. 5, 2008, did you have any kind of disagreement, argument, or confrontation with the Plaintiff?

**ANSWER: I do not recall one.**

2. Prior to Oct. 10, 2008, have you ever had to write the Plaintiff up for any type of aggressive, violent, disrespectful, or threatening conduct? If so please give dates and details of conduct.

**ANSWER: Not that I recall.**

3. Based on your knowledge, please explain what caused the Plaintiff to start writing grievances on you.

**ANSWER: I do not know and cannot read your mind.**

4. Please identify by name and DC# the inmates housed in cells D-3112, D-3110, D-3118, D-3119, D-3120, D-3213, D-3215, and D-3216 on Oct. 10, 17 and 21, 2008.

**ANSWER: I do not remember.  I do not have access to that information if it is kept by the department.**

5.  Please describe in as much detail as possible any investigation or interviews conducted as a result of grievances filed by the Plaintiff against you.

**ANSWER: I was instructed by my supervisors to respond to some of your grievances.**

6.  Were you working in "D"-dormitory on the following dates: Oct. 10, 17, and 21, 2008.

**ANSWER: I was assigned to D-dormitory during the time frame in question, but I may not have been working in D-dormitory if my supervisor needed me elsewhere.**

Joshua Burt
Affiant

Sworn to and subscribed before me
this _14_ day of _September_2010.

(Signature of Notary Public, State
of Florida)

Janet R Brunson

Print, type or stamp commissioned
name of notary public

NOTARY PUBLIC-STATE OF FLORIDA
Janet R. Brunson
Commission #DD847978
Expires: DEC. 29, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

Personally known _X_ or
produced identification ____ (type of identification _____)

**For objections:**

Lance Eric Neff
Assistant Attorney General
Florida Bar Number 26626
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300 - Telephone
(850) 488-4872 - Facsimile
Email: Lance.Neff@myfloridalegal.com

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing has been furnished ~~350 Pret~~
by U.S. Mail to: Robert Kornagay, DC# J13805, ~~Santa Rosa C.I., 5850 East Milton~~ Detention C
~~Road, Milton, Florida, 32583-7914~~ on this **30th** day of September, 2010.     500 E. Adams
Jacksonville FL 32

LANCE ERIC NEFF

# EXHIBIT



**INMATE REQUEST**

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

(Instructions on Back)

Mail Number: _____
Team Number: _____
Institution: _____

OB-6291

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☐ Medical ☐ Dental | ☑ Other |
|---|---|---|---|---|

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Robert Hornagay | J13805 | D3115 | | 10/17/08 |

**REQUEST** Informal Grievance

This grievance is due to officer Burt's conduct on 10/17/08, where he walked past my cell and stated "It was good to receive mail from Gladys Stokes, to bad it went in the trash". Gladys Stokes is my mother, and officer Burt's statement clearly indicate that he intercepted my mail, which is a unlawful federal offense. I have wrote multiple grievances on this officer; however, the Dept has neglected their duty to protect me from such retaliation and unlawful acts from this unprofessional officer, who has came at me with sexual harassment, racial slurs, threats, and now he is intercepting my mail, but when he's asked about these violations he does what is expected of him - he denies it, and the Dept accepts what he said as being true, and just allow me to be victimized by this officer. I ask for the last time please remove me from this dorm.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Crislow

**DO NOT WRITE BELOW THIS LINE**

RECEIVED

**RESPONSE**

DATE RECEIVED OCT 2 0 2008

ASST. SUPERINTENDENT OPERATIONS
S.A.R.C.I.

Your grievance has been reviewed and evaluated. I never made any statements regarding your mail, never or I never mishandled your mail or made any racial, sexual, or threatening statements to you. I haven't harassed you in any way. Grievance denied.

—Lt. Burt

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _denied_. _____ (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.

| Official (Signature): | Date: 10/21/04 |
|---|---|

Distribution:   White   -Returned to Inmate      Pink   -Retained by official responding, or if the response is to an
                Canary  -Returned to Inmate               informal grievance then forward to be placed in inmate's file.

DC6-236 (Revised 8-00)

# EXHIBIT



DRSH000009

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS
DAILY RECORD OF SPECIAL HOUSING

Inmate Name: Kortney, Robert
DC#: JT1845
Institution: SANTA ROSA C.I.
Dorm & Cell #: 3115 L    Dist: Reg

Special Housing Category: AC ☐ DC☒ CM ☒ MM ☐ CSU ☐ TCU ☐ CMH ☐
This is sheet number 3.5 of inmate's current period of special housing.
Initial Placement Date 3-19-08    Applicable Level 3    Team 8
Status DF    DC Time Begins 3-3-08    Ends 3-3-08

(May be entered with check ✓ mark unless otherwise indicated)

Security Alerts/Property/Privilege Restrictions:
DR 1-3 Spoken Threats
TM 1-18 Disrespect Both C.O.
DR L-15 Sanitary Son C.O.

**SECURITY DEPARTMENT**

OCTOBER 08'

| Day | Date | Assault Approves | Affiliate | Time | Remarks (check box if additional remarks included on back or DC9-2299) | Weight (enter actual) | Cell Search | Laundry/Linen | Haircut/Shave | Shower | Shave | Cell Delivery Number of Meal | Dayroom Activities (# hours) | Work Assignment (# hours) | Phone Call | Visit | Initials | Date | Time | Condition | Action and Remarks | Initials |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sun | | S | S | 1:33 9:41 | AM CHECKED Showers, Supplies | 8/6 | ✓ | ✓ | | | ✓ | | | | | | | 3/10/08 | 0830 | oh | MID-WEEKLY ROUNDS pat sen of skin com | 4G |
| 19 | | | | | ☐ | | | | | | | | | | | | | 10/13/08 | 0146 | ok | | Sa |
| Mon | | S | S | R.A. 7:10 | AM CHECKED 7:05 Rec | | | | | ☒ | | | | | | 3G | | | | | | |
| 20 | | | | | ☐ | | | | | | | | | | | | | | | | | |
| Tue | | S | S | R.A. 7:11 | AM CHECKED 7:02 Rec | | | ✓ | ☒ | | | | | | | 3G | | | | | | |
| 21 | | | | Water Hour 61/01 pat escort Documented threat | | | | | | | | | | | | | | | | | | |
| Wed | | S | S | | AM CHECKED | | | ✓ | ☒ | | | | | | | | | | | | | |
| 22 | | S | S | 7:40 3:40 | slept | | ✓ | | ☒ | | | | | | | 7G | | | | | | |
| Thur | | S | S | 1:5 A | AM CHECKED | | ✓ | | | | | | | | | 8G | | | | | | |
| 23 | | | | | ☐ | | | | | | | | | | | | | | | | | |
| Fri | | S | S | 1:24 1/1/14 3:30 | AM CHECKED Shower | | ✓ | ✓ | | | | | | | 3G | | | | | | | |
| 24 | | S | S | | AM CHECKED Shower | | | ✓ | | | | | | | 7G | | | | | | | |
| Sat | | S | S | 1:49 10:49 | AM CHECKED to C.U. Slee | | ✓ | ☒ | | | | | | | 4G | | | | | | | |
| 25 | | S | S | | ☐ | | | | | | | | | | | 8G | | | | | | | |

**MEDICAL/MENTAL HEALTH DEPARTMENT**

| Date | Time | Condition | Program Provided/Remarks | Initials |
|---|---|---|---|---|

**PROGRAMS**

DC6-229 (Revised 4/27/08)    Incorporated by Reference in Rule 33-602.220, F.A.C.

Page 1 of 2

DRSH000010

## Classification / Institutional Classification Team (ICT) / State Classification Office (SCO) Review

| Date Reviewed | Action | Remarks - Disposition | Signature |
|---|---|---|---|
| 10-31-07 | DR Hearing | 1.3 Spoken Threats | |
| 10.23.08 | DR Hearing | 1.3 Spoken Threats | Rejected  10 Galen |
| | | | Rejected  10 Galen |

**INSTRUCTIONS:**
Complete this form in one original only on every inmate placed in special housing...

**REMARKS: Full and complete remarks are required in the following statements:**

**Medical:**

**Mental Health:**

**Classification/SCO**

**Programs**

## ADDITIONAL REMARKS:

| Code | Time | Remarks | Date | Time | Remarks | Date | Time | *Remarks* |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

DC6-229 (Revised 4/27/06)

Incorporated by Reference in Rule 33-602.220, F.A.C.

# EXHIBIT

## B

RECEIVED
... OFFICE

AUG 30 2010

UNITED STATES DISTRICT COURT FOR
The NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

AUG 26 2010

FOR MAILING
INMATE INITIALS

BOBERT D. HORNAGAY, inmate # J13805,
        Plaintiff,
vs.                        Case No: 3:09 cv 281/LAC/EMT
OFFICER Bust, et al.,
        Defendant. /

SEP 28 2010

DEPOSITIONS BY WRITTEN QUESTIONS
To Ramziddin Harris DC # L19663

    Come now, Plaintiff, Robert D. Hornagay, pro se, and
pursuant to Rule 31 of the Federal Rules of Civil
procedure, Plaintiff requests that Mr. Ramziddin Harris
answer the following questions:

    1. Throughout the months of September, October, and
November of 2008, do you recall being housed at Santa
Rosa C.I., in "D"-dormitory, cell # D-3213.

    2. While you were housed in cell # D-3213, do you recall
a inmate housed in cell # D-3115 named Robert D. Hornagay
also known as New York or Messiah.

    3. Throughout the mentioned timeframe, do you recall
making a phone call to the Plaintiff's Mother about the
health and safety of her son, Robert Hornagay, if so please
describe the circumstances surrounding that telephone call.

1

4. While in "D" dormitory, do you recall ever hearing officer Burt threating the Plaintiff in anyway, because of inmate grievances the Plaintiff wrote, if so describe the threats you heard.

5. While in "D" dormitory, do you recall the Plaintiff getting sprayed with chemical agents? If so please describe in as much detail as possible exactly what was the Plaintiff doing that caused him to get sprayed.

6. Please describe any conversation you may have heard Sergeant Rayborn and Lieutenant ORSA having with the Plaintiff prior to spraying him with chemical agents.

7. Throughout the mentioned timeframe, was you ever assigned as a inmate barber in "D"-dormitory.

8. Do you recall giving the Plaintiff a haircut and shave a few days after he was sprayed with chemical agents? If so did you witness any chemical agent stains and/or burn marks as a result of chemical agents in the Plaintiff's face, head, or any other part of his body.

9. If you recall giving the Plaintiff a haircut and shave afew days after he was sprayed, did you detect chemical agents still lingering on Plaintiff's body? If so what effects did you personally experience as a result of inhaling the chemical agents, if any.

10. Have you ever heard officer Engstrom also known as officer "E" make any comments, statements, or refer to inmate grievances the Plaintiff wrote against officer Burt? If so please describe the comments or statements.

11. Prior to the Plaintiff getting sprayed with chemical agents, did you ever notice any burn marks in his face head, or any other parts of his body.

12. A day or so before the Plantiff was sprayed with chemical agents, do you recall ever hearing lietenant Crelow trying to force the Plantiff into writing a witness statement saying the grievances he filed against Burt was false? If so please explain what you heard.

13. Have you ever heard officer Covin make any comments, statements, or refer to inmate grievances the Plantiff wrote against officer Burt? If so please describe the comments or statements you heard.

14. Do you know the true identity of the inmate that was housed in cell #D-3215, who go by the nickname Too Short, if so what's his name and Dc#.

Date: 8/26/10                          /s/ Robert D Hourgaye
                                       Robert D. Hourgay
                                       Dc# JJ5805
                                       Santa Rosa C. I.
                                       5850 E. Milton RD
                                       Milton, Fla 32853


Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been furnished by U.S. mail to: Alexandria Walters, Asst. General Counsel, 2601 Blair Stone RD, Tallahassee, Florida 32399-2500, and Lance E.Neff, Office of the Attorney General, The Capitol, PL-01, Tallahassee, Florida 32399-1050 on this 26 day of August 2010.

8-26-10                                Robert D Hourgay
Date

3

## CERTIFICATE OF NOTARY PUBLIC

**STATE OF FLORIDA**   )
**in and for**        )
_____ **COUNTY)**

Before me the undersigned authority, this day personally appeared _Ramziddin_

_Harris_____, who first being duly sworn says that he is a witness in the above-

styled cause, the he has read the foregoing affidavit, and has personal knowledge of the facts and

matters therein set forth and alleged and hat each and all of these facts and matters are true and

correct.

Personally known _____ ; or

Produced a Florida Department of Corrections Inmate Identification # _L19663_____

_R. Davis_
Inmate Signature

Sworn and Subscribed to before me this _22_ day of _September_ , 20 _10_ .

_LaTonia M Borders_

Notary Public or other person authorized
to administer and oath (print, type, or
stamp commissioned name of notary public)

**Seal:**

_Sep 08 2012_
My Commission Expires

NOTARY PUBLIC-STATE OF FLORIDA
LaTonia M. Borders
Commission # DD811483
Expires:    SEP. 08, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

3

① Yes



② Yes

③ Yes, I recall calling her to let her know that her son was being gassed

④ I can't really recall any threats, its been so long

⑤ He got sprayed, but I don't think he did anything because it was normal for them to gas people for anything

⑥ I can't really recall the conversation, but before they spray you they make it seem as if your being disrupt in front of the camera which is 95% of the time untrue

⑦ Yes

⑧ Well, he's of light complexion so the spray can easily burn him. I actually don't recall seeing the burn marks but I do recall him complaining about it.

(4) I cant recall, but I was in more of a hurry. signed as a result of my roommate. So I know first hand that its a few days before the spray is completly off. of the body.

(10) No ___

(11) Like I said I recall him complaining about it

(12) Yes I do, I vividly recall the Lt. trying to force him to write the statement. He said if he proceeds with his grievances he'll get gassed

(13) There ain't no telling. But I just can't remember everything.

(14) No

# EXHIBIT

# A2

Declaration Under the Penalty of Perjury of
Kenneth Y. Mills DC# A-T21976

Kenneth Y. Mills, being compentant to make this
declaration and having Personal Knowledge of the
matters Stated therein, declares Pursuant to 28 USC
§1746:

On January 17, 2010, at approximately 1:30 pm;
There was a conflict on wing 2 of G dorm, at
Santa Rosa C.I.; Lt. Gielow was called on the wing
to handle the situation, between the Officer and the
unknown inmate. I was housed in cell G-2208
Low and inmate Robert Kornagay was housed Right
under me in cell G-2108 Low; Being that the
wing was completely quite I could hear
Lt. Gielow; stop at inmate Kornagay's cell door as
he made his Rounds on the wing. I heard
Lt. Gielow state "Inmate Kornagay! I heard your
name in the AIR the other day, So you still haven't
learned about that Grievance box. I Hope I don't
have to send them Good old boys at you again.
I hate to see a so called grown man cry twice
in my life time." Lt. Gielow then walked away
laughing out loud.

Pursuant to 28 U.S.C. §1746, I declare under
the penalty of perjury that the foregoing is true
and correct. Executed on January 19, 2010.

X _Kenneth Y. Mills_ DC# T21976
Signature

# EXHIBIT

# B2

Declaration Under The Penalty Of Perjury

Gregory Nelson X64274; being compentant to make this declaration and having personal knowledge of the matters stated herein, Declares Pursuant to 28 U.S.C 1746

ON 1-17-10 more or less at 1:32 of the above date here at Santa Rosa C.I. ; I observed a conflict while being housed in G dormitory - 2109. An verbal conflict occured with an officer and unknown Inmate; there after LT Gielow was radioed to handle the situation. Being that I was housed in 2109 low tear next to Inmate Kornagay I was in auditory range so I picked up Lt Gielow stop at Inmate Kornagey's cell front as he did a walk through LT Gielow stated "Inmate kornagay your name is ringing bells in the air all through administration, so you still have not learned about using the grievance box and procedure. I sure hope I aint got to send my Good old Boys at you again. I'll hate to see a wanna be so called grown man cry twice in a life time" LT Gielow then departed smiling as he finished his rounds.

Pursuant to 28 U.S.C 1746, I declare under the Penalty Of Perjury that the foregoing statement is true and correct. Executed on 1-17-10

Gregory Nelson X64724

Signature:

# EXHIBIT

# C2

Declaration under the penalty of perjury of
Name: Keith Pryor   Dc# w19376

   Keith Pryor, being competent to make this
declaration in having personal knowledge of the matters
stated here in, declares pursuant to 28 u.s.c. 1746:

   On 1-20-10 I was placed on the management meal
in D-dormitory of Santa Rosa C.I Annex. I was on it
for 7 days 1-20-10 - 1-28-10. It has a nasty taste
and they only give you one drink a day with it. I couldn't
eat the loaf because everytime I eat it, it makes me
gag. I told the officers I couldn't eat the management
meal because of that, but they told me they hope I
choke on it and I was forced to eat it or I would
starve. I lost 15 pounds being on the management meal
in the dept. of corrections. I've been placed on the
management meal twice since being in dept. of corrections.
for different reasons.
   Pursuant to 28 u.s.c 1746, I declare under the penalty
of perjury that the foregoing is a true and correct statement,
executed on Sept 4, 2010

            [s] Keith Pry
            DC# w19376

# EXHIBIT

# D2

| | Witness Statement | |
|---|---|---|
| **State of Florida** | Log # _____ | **Department of Corrections** |

**II. Witness**

■ Staff Member: Name and Position _____

■ Other Individual: Name _____

■ Inmate: DC # _____ Name _____

**III. Voluntary Refusal**

*The witness voluntarily refused to provide a written statement to the Investigating Officer and the following signature(s) attests to that fact:*

Witness Signature _____ Date _____

Signature of Investigating Officer _____ Date _____

**IV. Statement**

Lt Onelow is moving me to another dorm; therefore, I'm no longer in fear or having problems with officer Burd. Pity

Witness Signature *Robert B. Kornagay* Date 10-21-08

Signature of Investigating Officer _____ Date _____

DC6-112D (Revised 9/03)     Original: Inmate File     Copy: Central Office

Kornagay.Discovery.First Request000115

# EXHIBIT

# E2

IN THE UNITED STATES DISTRICT
COURT OF FLORIDA PENSACOLA DIVISION

ROBERT D. KORNAGAY,
          Plaintiff,

vs.

JOHN DOE BURT, et al.,
          Defendants

DECLARATION

I, Hal Lewis, hereby declares that the following statements of facts are based on matters that I personally witnessed and heard:

On June 8, 2009, at approximately 8:00 am, I was housed in the same cell with Robert Kornagay, when Officer Grace came to my cell door to escort me to a dental callout, and he directly stated to Mr. Kornagay "I see you're working your way back to the top, I just hope you got your pen under control, because if I hear about any grievances I'll say you tried to stab me next time."
"On my way to dental Officer Grace stated "You are in the cell with one crying bitch, everytime I hear his name it has something to do with him filing his damn grievances, a few months ago, over in D-Dorm, I had to teach him a lesson about that same shit, he will learn oneway or another."
I declare under penalty of perjury that the foregoing is true and correct. Executed at Santa Rosa C.I. 5850 E. Milton Rd. Milton, Fl. 32583 on 10/3/09

/s/ Hal Lewis
Declarant

# EXHIBIT

# F2

D3115

```
                 FLORIDA DEPARTMENT OF CORRECTIONS          10/23/2008
  ISSO150 (01)       CHARGING DISCIPLINARY REPORT                      PAGE:    1
                         LOG # 119-082755
-------------------------------------------------------------------------------
  DC#: J13805   INMATE NAME: KORNAGAY, ROBERT D.        INFRACTION
  VIOLATION CODE:  0119   TITLE: ASSAULT/ATT/CO         DATE: 10/21/08
  FACILITY CODE:  119    NAME:  SANTA ROSA C.I.         TIME: 21:30
-------------------------------------------------------------------------------
```

I.   STATEMENT OF FACTS
     INMATE KORNAGAY, ROBERT DC# J13805, IS BEING CHARGED WITH
     VIOLATION OF FAC CH 33-601.314, RULES OF PROHIBITED CONDUCT,
     1-19 ASSAULT OR ATTEMPTED ASSAULT ON A CORRECTIONAL
     OFFICER. ON 10/21/08 I WAS ASSIGNED AS A D-DORM HOUSING
     OFFICER. AT APPROX. 9:30 PM I WAS CONDUCTING A SECURITY
     CHECK IN WING 3 WHEN I OVERHEARD LOUD YELLING COMING FROM
     D3115, WHERE INMATE KORNAGAY IS HOUSED. AS I APPROACHED THE
     CELL I OBSERVED INMATE KORNAGAY YELLING INTO THE CELL VENT.
     I ORDERED INMATE KORNAGAY TO CEASE HIS DISORDERLY BEHAVIOR
     AND HE REPLIED, "JUST SHUT THE FUCK UP. YOU DON'T WANT TO
     FUCK WITH ME." INMATE KORNAGAY THEN BEGAN YELLING INTO THE
     VENT AGAIN. I AGAIN ORDERED INMATE KORNAGAY TO STOP YELLING
     AND HE REPLIED "YOU WANT SOME OF THIS" HERE!" INMATE
     KORNAGAY THEN SPAT AT THE CELL WINDOW JUST BELOW THE VENT
     HOLES IN AN ATTEMPT TO SPIT ON ME, WITHOUT SUCCESS. I THEN
     CONTACTED THE DORM SUPERVISOR. INMATE KORNAGAY WIPED THE
     SPIT OFF THE CELL WINDOW WHEN I CALLED FOR THE DORM SERGEANT
     AND HE THEN CEASED HIS BEHAVIOR WHEN SERGEANT STEWART
     ARRIVED. THE OIC WAS NOTIFIED AND AUTHORIZED THIS REPORT.
     INMATE KORNAGAY WILL REMAIN IN HIS CURRENT STATUS PENDING
     DISCIPLINARY ·TEAM ACTION.


  REPORT WRITTEN: 10/21/08, AT 21:40   OFFICER: GC040 - GRACE, CHRISTOPHER
-------------------------------------------------------------------------------

II.  INMATE NOTIFICATION OF CHARGES: DATE DELIVERED: _11_/_23_/_08_, AT _8_:_20_

          NO HEARING SHALL COMMENCE PRIOR TO 24 HOURS OF DELIVERY OF CHARGES
          EXCEPT WHEN THE INMATE'S RELEASE DATE DOES NOT ALLOW TIME FOR SUCH
          NOTICE OR THE INMATE WAIVES THE 24 HOUR PERIOD AS AUTHORIZED IN RULE
          33-601, FLORIDA ADMINISTRATIVE CODE.

                DELIVERED BY : _SL_ - _Schultz_
-------------------------------------------------------------------------------

  NOTICE TO INMATE:
  AS AN INMATE BEING CHARGED WITH A VIOLATION OF THE RULES OF PROHIBITED
  CONDUCT, YOU ARE ADVISED THE FOLLOWING:
-------------------------------------------------------------------------------

  INVESTIGATION:
  AN IMPARTIAL INVESTIGATION WILL BE CONDUCTED ON THIS DISCIPLINARY REPORT.
  DURING THE INVESTIGATION OF THE DISCIPLINARY REPORT, YOU WILL BE ADVISED

```
                    FLORIDA DEPARTMENT OF CORRECTIONS            10/23/2008
ISSO150 (01)           CHARGING DISCIPLINARY REPORT                           PAGE:    2
                          LOG # 119-082755
```
--------------------------------------------------------------------------------
```
 DC#: J13805   INMATE NAME: KORNAGAY, ROBERT D.              INFRACTION
 VIOLATION CODE:  0119   TITLE: ASSAULT/ATT/CO               DATE: 10/21/08
 FACILITY CODE:  119    NAME:  SANTA ROSA C.I.               TIME: 21:30
```
--------------------------------------------------------------------------------
OF THE CHARGES AGAINST YOU AND YOU MAY REQUEST STAFF ASSISTANCE. DURING
THE INVESTIGATION YOU SHOULD MAKE KNOWN ANY WITNESSES TO THE INVESTIGATING
OFFICER. THE TESTIMONY OF WITNESSES SHALL BE PRESENTED BY WRITTEN STATEMENTS.
SEE RULE 33-601.307(3) FOR COMPLETE INFORMATION REGARDING WITNESSES. YOU WILL
HAVE THE OPPORTUNITY TO MAKE A STATEMENT IN WRITING REGARDING THE CHARGE AND
TO PROVIDE INFORMATION RELATING TO THE INVESTIGATION.

--------------------------------------------------------------------------------

DELIVERY OF CHARGES:
A COPY OF THE CHARGES WILL BE PROVIDED TO YOU AT LEAST 24 HOURS PRIOR
TO THE CONVENING OF THE DISCIPLINARY HEARING UNLESS YOU WAIVE THE WAITING
PERIOD. THE HEARING MAY BEGIN ANY TIME AFTER THE 24 HOUR PERIOD UNLESS
YOU SIGN THE WAIVER.

--------------------------------------------------------------------------------

DISCIPLINARY HEARING:
THE DECISION WILL BE MADE IN ADVANCE WHETHER THE HEARING WILL BE CONDUCTED
BY THE DISCIPLINARY TEAM OR THE HEARING OFFICER. YOU MAY REQUEST A HEARING
BY THE FULL DISCIPLINARY TEAM RATHER THAN THE HEARING OFFICER. YOU WILL
APPEAR IN PERSON BEFORE THE DISCIPLINARY TEAM/HEARING OFFICER UNLESS YOU
WAIVE THIS APPEARANCE BY SIGNING A WAIVER FORM. YOU WILL BE ADVISED OF
THE CHARGES PLACED AGAINST YOU AND THE RANGE OF PENALTY IF FOUND GUILTY.
YOU MAY REQUEST STAFF ASSISTANCE. THE CHAIRPERSON/HEARING OFFICER WILL READ
THE STATEMENT AND ASK YOU FOR YOUR PLEA. A GUILTY PLEA REQUIRES NO FURTHER
STATEMENT; HOWEVER, YOU MAY MAKE A STATEMENT FOR THE TEAM/HEARING OFFICER
TO CONSIDER. A NO CONTEST PLEA WILL BE TREATED AS A GUILTY PLEA. A REFUSAL
TO ENTER A PLEA WILL BE TREATED AS A NOT GUILTY PLEA. IF YOU ENTER A NOT
GUILTY PLEA, YOU WILL BE ALLOWED TO MAKE A STATEMENT ON YOUR OWN BEHALF,
PRESENT EVIDENCE AND REQUEST STAFF OR INMATE WITNESSES AS DEEMED APPROPRIATE
BY THE TEAM/HEARING OFFICER. AFTER THE TEAM/HEARING OFFICER HAS MADE A
DECISION, YOU WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE DECISION AND
THE EVIDENCE RELIED UPON IN MAKING THAT DECISION. IF YOU ARE FOUND GUILTY, YOU
WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE RECOMMENDED PENALTY.

--------------------------------------------------------------------------------

APPEAL:
IF YOU ARE FOUND GUILTY, YOU MAY APPEAL THIS DECISION BY FILING A
FORMAL GRIEVANCE WITH THE WARDEN OF YOUR FACILITY WITHIN 15 DAYS OF
THE RECEIPT OF WRITTEN NOTICE OF THE TEAM/HEARING OFFICERS DECISION.
FOR INFORMATION REGARDING THE RULES ON DISCIPLINE, REFER TO: 33-601, F. A. C.

```
                    FLORIDA DEPARTMENT OF CORRECTIONS            10/28/08
ISSO158 (14)             DISCIPLINARY REPORT                    PAGE  1
                         HEARING INFORMATION
                         LOG # 119-082755
--------------------------------------------------------------------------------
DC#: J13805   INMATE NAME: KORNAGAY, ROBERT D.         B1215L INFRACTION
VIOLATION CODE:  0119   TITLE: ASSAULT/ATT/CO          DATE: 10/21/08
FACILITY CODE:  119    NAME:  SANTA ROSA C.I.          TIME: 21:30
--------------------------------------------------------------------------------
        TEAM    FINDINGS AND ACTION   DATE: 10/29/08, AT: 08:06
      INMATE OFFERED STAFF ASSISTANCE: DECLINED
      INMATE PLEA: NOT GUILTY   FINDINGS: GUILTY
      INMATE PRESENT: YES
   POSTPONEMENT:
   BASIS FOR DECISION:
      BASED IN PART ON THE WRITTEN STATEMENT OF OFC. GRACE AND
      CONFIRMED IN THE INVESTIGATION THAT ON 10/21/08 AT APPROX.
      9:30 P.M., I/M KORNAGAY, ROBERT DC# J13805 COMMITTED
      ASSAULT/ATT/COWHEN HE SPAT AT THE CELL WINDOW JUST BELOW THE
      VENT HOLES IN AN ATTEMPT TO SPIT ON ME. ALL WITNESS
      STATEMENTS AND EVIDENCE WERE READ AND CONSIDERED BY THE
      DISCIPLINARY HEARING TEAM. A COPY OF THE FINDINGS WAS
      PROVIDED TO I/M KORNAGAY LATER IN THE DAY AND HE WAS ADVISED
      THAT HE HAS FIFTEEN DAYS TO APPEAL THE TEAMS DECISION.

   ACTIONS TAKEN:
   DISCIPLINARY CONFINEMENT:   60; PROBATION DAYS SET:   0 CONSECUTIVE

   RESTITUTION:      $.00; INDIV.REVIEW/COUNSEL?: N; CONFISCATE CONTRABAND?: N

   TEAM CHAIRMAN:   RTM16 - REYES,T.M.
   TEAM MEMBERS:    GWL00 - GIELOW,W.L.              -
--------------------------------------------------------------------------------
--------------------------------------------------------------------------------
```

# EXHIBIT

# G2

**State of Florida**

**Witness Statement**

Log # _8275_

**Department of Corrections**

**I.   Identifying Inmate Information**

DC # _J13805_          Inmate Name _Kornegay, Robert_

Violation Code and Short Title _7-15 Battery or Attempted Battery on a Correctional Officer_

Use of Force #

Date Report Written _11-22-08_

**II.   Witness**

☐   Staff Member: Name and Position _____

☐   Other Individual: Name _____

☒   Inmate:      DC # _J24620_      Name _Sudcem, John_

**III.   Voluntary Refusal**

*The witness voluntarily refused to provide a written statement to the Investigating Officer and the following signature(s) attests to that fact:*

Witness Signature _____   Date _____

Signature of Investigating Officer _____   Date _____

**IV.   Statement**

I was in inmates JS Kornegay's room and I never seen him assault no officer! How can that be possible? Inmate Kornegay and I were playing cards.

JS.

Witness Signature _~~John Sudcem~~_          Date _10-23-08_

Signature of Investigating Officer _____ Sgt_          Date _10-23-08_

DC6-112C (Revised 8/06)          Original: Inmate File          Copy: Central Office

| State of Florida | **Witness Statement** Log # 02754 | Department of Corrections |
|---|---|---|

**I.   Identifying Inmate Information**

DC # J13805    Inmate Name   Kornegay, Robert

Violation Code and Short Title   1-15 Battery or Attempted Battery.

Use of Force #

Date Report Written   10/21/08

**II.   Witness**

☐   Staff Member:  Name and Position _____

☐   Other Individual:  Name _____

☑   Inmate:   DC # J13805   Name Kornegay, Robert

**III.   Voluntary Refusal**

The witness voluntarily refused to provide a written statement to the Investigating
Officer and the following signature(s) attests to that fact:

Witness Signature _____   Date _____

Signature of Investigating Officer _____   Date _____

**IV.   Statement**

I did not spit on this officer this is all a result of one
using the grievance process against officer Crace co wrcher
Officer Burt

Witness Signature  Robert D Kornegay   Date _____

Signature of Investigating Officer _____   Date 10-23-08

DC6-112C (Revised 8/06)                Original: Inmate File                Copy: Central Office

# EXHIBIT

# H2

```
                    FLORIDA DEPARTMENT OF CORRECTIONS          10/23/2008
ISSO150 (01)           CHARGING DISCIPLINARY REPORT                      PAGE:      1
                            LOG # 119-082756
--------------------------------------------------------------------------------
  DC#: J13805   INMATE NAME: KORNAGAY, ROBERT D.            INFRACTION
  VIOLATION CODE:  0115   TITLE: BATTERY/ATT/CO             DATE: 10/21/08
  FACILITY CODE:  119    NAME:  SANTA ROSA C.I.             TIME: 22:30
--------------------------------------------------------------------------------
```

I.  STATEMENT OF FACTS
    INMATE KORNAGAY, ROBERT DC# J13805, IS BEING CHARGED WITH
    VIOLATION OF FAC CH 33-601.314, RULES OF PROHIBITED CONDUCT,
    1-15 BATTERY OR ATTEMPTED BATTERY ON A CORRECTIONAL
    OFFICER. ON 10/21/08 I WAS ASSIGNED AS A D-DORM HOUSING
    OFFICER, AT APPROX. 10:30 PM I WAS CONDUCTING A SECURITY
    CHECK IN WING 3. WHEN I PASSED D3115, WHERE INMATE KORNAGAY
    IS HOUSED ALONE, INMATE KORNAGAY SPIT AN UNKNOWN LIQUID AT
    ME, THROUGH A SECURITY PEN, THAT WAS STUCK THROUGH ONE OF
    THE VENT HOLES, STRIKING ME IN THE CHEST. I THEN CALLED
    SERGEANT STEWART TO THE WING. INMATE KORNAGAY CEASED HIS
    DISRUPTIVE BEHAVIOR WHEN SERGEANT STEWART ARRIVED. THE OIC
    WAS NOTIFIED AND AUTHORIZED THIS REPORT. INMATE KORNAGAY
    WILL REMAIN IN HIS CURRENT STATUS PENDING DISCIPLINARY TEAM
    ACTION.


  REPORT WRITTEN: 10/21/08, AT 22:50   OFFICER: GC040 - GRACE, CHRISTOPHER
--------------------------------------------------------------------------------

II.  INMATE NOTIFICATION OF CHARGES: DATE DELIVERED: _10/23/18_, AT _8_: _20pm_

      NO HEARING SHALL COMMENCE PRIOR TO 24 HOURS OF DELIVERY OF CHARGES
      EXCEPT WHEN THE INMATE'S RELEASE DATE DOES NOT ALLOW TIME FOR SUCH
      NOTICE OR THE INMATE WAIVES THE 24 HOUR PERIOD AS AUTHORIZED IN RULE
      33-601, FLORIDA ADMINISTRATIVE CODE.

            DELIVERED BY : _Sgt_ - _Schrock_
--------------------------------------------------------------------------------

  NOTICE TO INMATE:
  AS AN INMATE BEING CHARGED WITH A VIOLATION OF THE RULES OF PROHIBITED
  CONDUCT, YOU ARE ADVISED THE FOLLOWING:
--------------------------------------------------------------------------------

  INVESTIGATION:
  AN IMPARTIAL INVESTIGATION WILL BE CONDUCTED ON THIS DISCIPLINARY REPORT.
  DURING THE INVESTIGATION OF THE DISCIPLINARY REPORT, YOU WILL BE ADVISED
  OF THE CHARGES AGAINST YOU AND YOU MAY REQUEST STAFF ASSISTANCE. DURING
  THE INVESTIGATION YOU SHOULD MAKE KNOWN ANY WITNESSES TO THE INVESTIGATING
  OFFICER. THE TESTIMONY OF WITNESSES SHALL BE PRESENTED BY WRITTEN STATEMENTS.
  SEE RULE 33-601.307(3) FOR COMPLETE INFORMATION REGARDING WITNESSES. YOU WILL
  HAVE THE OPPORTUNITY TO MAKE A STATEMENT IN WRITING REGARDING THE CHARGE AND
  TO PROVIDE INFORMATION RELATING TO THE INVESTIGATION.
--------------------------------------------------------------------------------

```
                          FLORIDA DEPARTMENT OF CORRECTIONS        10/23/2008
    ISSO150 (01)          . CHARGING DISCIPLINARY REPORT                              PAGE:      2
                                LOG # 119-082756
-------------------------------------------------------------------------------
    DC#: J13805   INMATE NAME: KORNAGAY, ROBERT D.                  INFRACTION
    VIOLATION CODE:  0115   TITLE: BATTERY/ATT/CO                   DATE: 10/21/08
    FACILITY CODE:  119    NAME:  SANTA ROSA C.I.                   TIME: 22:30
-------------------------------------------------------------------------------
```

DELIVERY OF CHARGES:
A COPY OF THE CHARGES WILL BE PROVIDED TO YOU AT LEAST 24 HOURS PRIOR
TO THE CONVENING OF THE DISCIPLINARY HEARING UNLESS YOU WAIVE THE WAITING
PERIOD. THE HEARING MAY BEGIN ANY TIME AFTER THE 24 HOUR PERIOD UNLESS
YOU SIGN THE WAIVER.

-------------------------------------------------------------------------------

DISCIPLINARY HEARING:
THE DECISION WILL BE MADE IN ADVANCE WHETHER THE HEARING WILL BE CONDUCTED
BY THE DISCIPLINARY TEAM OR THE HEARING OFFICER. YOU MAY REQUEST A HEARING
BY THE FULL DISCIPLINARY TEAM RATHER THAN THE HEARING OFFICER. YOU WILL
APPEAR IN PERSON BEFORE THE DISCIPLINARY TEAM/HEARING OFFICER UNLESS YOU
WAIVE THIS APPEARANCE BY SIGNING A WAIVER FORM. YOU WILL BE ADVISED OF
THE CHARGES PLACED AGAINST YOU AND THE RANGE OF PENALTY IF FOUND GUILTY.
YOU MAY REQUEST STAFF ASSISTANCE. THE CHAIRPERSON/HEARING OFFICER WILL READ
THE STATEMENT AND ASK YOU FOR YOUR PLEA. A GUILTY PLEA REQUIRES NO FURTHER
STATEMENT; HOWEVER, YOU MAY MAKE A STATEMENT FOR THE TEAM/HEARING OFFICER
TO CONSIDER. A NO CONTEST PLEA WILL BE TREATED AS A GUILTY PLEA. A REFUSAL
TO ENTER A PLEA WILL BE TREATED AS A NOT GUILTY PLEA. IF YOU ENTER A NOT
.GUILTY PLEA, YOU WILL BE ALLOWED TO MAKE A STATEMENT ON YOUR OWN BEHALF,
PRESENT EVIDENCE AND REQUEST STAFF OR INMATE WITNESSES AS DEEMED APPROPRIATE
BY THE TEAM/HEARING OFFICER. AFTER THE TEAM/HEARING OFFICER HAS MADE A
.DECISION, YOU WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE DECISION AND
THE EVIDENCE RELIED UPON IN MAKING THAT DECISION. IF YOU ARE FOUND GUILTY, YOU
WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE RECOMMENDED PENALTY.

-------------------------------------------------------------------------------

APPEAL:
IF YOU ARE FOUND GUILTY, YOU MAY APPEAL THIS DECISION BY FILING A
FORMAL GRIEVANCE WITH THE WARDEN OF YOUR FACILITY WITHIN 15 DAYS OF
THE RECEIPT OF WRITTEN NOTICE OF THE TEAM/HEARING OFFICERS DECISION.
FOR INFORMATION REGARDING THE RULES ON DISCIPLINE, REFER TO: 33-601, F. A. C.

```
                        FLORIDA DEPARTMENT OF CORRECTIONS              10/28/08
ISSO158 (14)                 DISCIPLINARY REPORT                       PAGE   1
                             HEARING INFORMATION
                               LOG # 119-082756
--------------------------------------------------------------------------------
DC#: J13805   INMATE NAME: KORNAGAY, ROBERT D.        B1215L INFRACTION
VIOLATION CODE: 0115   TITLE: BATTERY/ATT/CO                DATE: 10/21/08
FACILITY CODE: 119     NAME: SANTA ROSA C.I.               TIME: 22:30
--------------------------------------------------------------------------------
          TEAM   FINDINGS AND ACTION   DATE: 10/28/08, AT: 08:00
      INMATE OFFERED STAFF ASSISTANCE: DECLINED
      INMATE PLEA: NOT GUILTY   FINDINGS: GUILTY
      INMATE PRESENT: YES
  POSTPONEMENT:
  BASIS FOR DECISION:
      BASED IN PART ON THE WRITTEN STATEMENT OF OFC. GRACE AND
      CONFIRMED IN THE INVESTIGATION THAT ON 10/21/08 AT APPROX.
      10:30 P.M., I/M KORNAGAY, ROBERT DC# J13805 COMMITTED
      BATTERY/ATT/CO WHEN I/M KORNAGAY SPIT AN UNKNOWN LIQUID AT
      THE OFFICER, THROUGH A SECURITY PEN, THAT WAS STUCK THROUGH
      ONE OF THE VENT HOLES, STRIKING THE OFFICER IN THE CHEST.
      ALL WITNESS STATEMENTS AND EVIDENCE WERE READ AND CONSIDERED
      BY THE DISCIPLINARY HEARING TEAM. A COPY OF THE FINDINGS WAS
      PROVIDED TO I/M KORNAGAY LATER IN THE DAY AND HE WAS ADVISED
      THAT HE HAS FIFTEEN DAYS TO APPEAL THE TEAMS DECISION.


  ACTIONS TAKEN:
   DISCIPLINARY CONFINEMENT:   60; PROBATION DAYS SET:   0 CONSECUTIVE

   RESTITUTION:      $.00; INDIV.REVIEW/COUNSEL?: N; CONFISCATE CONTRABAND?: N

   TEAM CHAIRMAN:   RTM16 - REYES,T.M.
   TEAM MEMBERS:    GWL00 - GIELOW,W.L.              -
--------------------------------------------------------------------------------
--------------------------------------------------------------------------------
```

# EXHIBIT

I2



**JAMES V. CROSBY, Jr.**
**SECRETARY**

| | |
|---|---|
| **PROCEDURE NUMBER:** | 602.007 |
| **PROCEDURE TITLE:** | SPECIAL MANAGEMENT MEAL |
| **ISSUE DATE:** | SEPTEMBER 8, 1999; PEN AND INK AUGUST 15, 2001; REVISED FEBRARY 28, 2002; PEN AND INK AUGUST 26, 2002 |
| **ANNUAL REVIEW:** | JULY 16, 2003 |
| **SUPERSEDES:** | PPD 2.02.10, SECTION IV, ITEM D. |
| **RESPONSIBLE AUTHORITY:** | OFFICE OF INSTITUTIONS |
| **RELEVANT DC FORMS:** | DC6-218 |

| | |
|---|---|
| **ACA/CAC STANDARDS:** | 4-4264 |
| **STATE/FEDERAL STATUTES:** | NONE |
| **FLORIDA ADMINISTRATIVE CODE:** | CHAPTER 33-602.223, F.A.C |

**PURPOSE:** To establish requirements for the utilization of the special management meal in confinement.

**DEFINITIONS:**

(1) **Confinement Areas**, where used herein, refers to administrative confinement, disciplinary confinement, and close management.

(2) **Master Menu Manual** refers to a technical manual of the Office of Institutions, Food Service Section. This manual contains menus and recipes for preparation and service of food to inmates, including the special management meal.

(3) **Special Management Meal** refers to a specially prepared meal designed to be utilized as a management tool in order to maintain a clean, safe and healthful environment in confinement areas. (4-4264)

(4) **Vegan** refers to a person who is a strict vegetarian and consumes no food products or byproducts that have any animal origin.

Komagay.Discovery.First Request000091

Procedure 602.007

### SPECIFIC PROCEDURES:

(1) The special management meal will be utilized at all institutions with the exception of those designated for youthful offenders.

    (a) The Office of Institutions, Food Service Section, will provide orientation in the preparation and service of the special management meal.

    (b) The administrator of the food service section will certify to the Deputy Assistant Secretary of Institutions, the warden, and the contractor food service director, the successful completion of special management meal preparation and service training.

    (c) Certification is required before the institution is authorized to utilize the special management meal.

    (d) The special management meal will then be authorized for utilization on a case-by-case basis as provided in this procedure at the respective institution.

(2) **APPLICATION OF SPECIAL MANAGEMENT MEAL:**

    (a) Inmates in any confinement status may be placed on the special management meal for creating a security problem by committing any of the following acts which are characterized as hazardous to the inmate, staff, or other inmates:

        1. throwing or misuse of food, beverage, food utensils, food tray, or spitting at staff, (4-4264)

        2. throwing of human waste,

        3. misuse or destruction of food trays or utensils, and/or (4-4264)

        4. committing other acts of violence that would place staff in jeopardy if a serving tray or utensils were provided. (4-4264)

    (b) When an employee observes individual inmate behavior that is believed to meet the criteria for application of the special management meal, s/he should execute the following:

        1. prepare Section I of the "Special Management Meal Report," DC6-218, and

        2. forward the prepared DC6-218 to the chief of security for review.

    (c) If the chief of security determines that behavior cannot be corrected through routine counseling or by established disciplinary procedures, the following will be accomplished:

        1. A discussion will take place at the inmate's confinement cell between the inmate and the shift supervisor. The reporting employee will be included in the discussion as appropriate and as determined by the shift supervisor.

        2. The shift supervisor will complete the discussion section of the DC6-218. The DC6-218 will, at this stage, document the reasons for recommending the special management meal and include a summary of the inmate's comments or objections.

        3. The chief of security will determine whether or not to continue the process of placing the inmate on the special management meal. If the determination is to continue, the DC6-218 will be processed to the chief health officer.

2

Kornagay.Discovery.First Request000092

Procedure 602.007

(d) When a determination is made to place an inmate on the special management meal, the chief health officer or other designated medical staff member will make a determination and indicate on the DC6-218 whether or not there is any medical reason that would prohibit placing the inmate on the special management meal. **(4-4264)**
   1. If there is a medical prohibition, consideration of an alternative special meal prescription will be made.
   2. No inmate will be placed on special management meal status without medical concurrence.

(e) Once the chief health officer or designee has documented on the DC6-218 that there is no medical reason to prohibit the special management meal and returned the DC6-218 to the chief of security, the chief of security will forward the DC6-218 to the warden.

(f) The warden or duty warden will approve or disapprove all recommendations for placement on the special management meal and document same on the DC6-218. **(4-4264)**

(g) Canteen privileges for confinement inmates placed on the special management meal will be suspended for the duration of special management meal status.

(h) The chief of security and a designated clinical health care person will visit each inmate on special management meal status on a daily basis, except in the case of riot or other institution emergency.
   1. The purpose of the daily visit is to follow the inmate's progress while on special management meal status and determine when the inmate should be removed from this status.
   2. In the absence of the chief of security, the shift supervisor will act as the chief of security's designee and will conduct the daily visit.

(i) An inmate may be removed from special management meal status at any time based on either of the following:
   1. the recommendation of the chief of security and the approval of the warden based on the consensus that, in the case of the individual inmate, the process is no longer necessary, and/or
   2. medical reasons as determined by the chief health officer or designee.

(j) An inmate may be placed on special management meal status for a maximum of seven (7) days before being returned to regular meals for a minimum of one (1) day. **(4-4264)**

(k) If an inmate engages in any further behavior that justifies additional special management meal status, this procedure may be repeated beginning with completion of a new DC6-218.

(3) **PREPARATION/SERVICE OF THE SPECIAL MANAGEMENT MEAL:**

(a) No inmate will be involved in the preparation and/or service of the special management meal.

3

Komagay.Discovery.First Request000093

Procedure 602.007

(b) The special management meal recipe prepares three (3) loaves, the combination of which will meet the Reference Dietary Intakes (DRI's) of the Food and Nutrition Board of the National Research Council. (4-4264)

(c) The recipe for the special management meal will be found in the master menu manual of the Office of Institutions, Food Service Section.

(d) The special management meal will be served three (3) meals per day at routine meal periods for inmates in confinement. One (1) loaf will be served at each scheduled meal.

(e) The special management meal will meet the religious and nutritional requirements of the master menu, including vegetarians or vegans.

(f) The special management meal will be prepared and served in a sanitary manner.

(g) Unless the chief health officer prescribes a substitute beverage for medical reasons, water will be the only beverage for the breakfast meals. Fortified tea will be served at the mid-day meals. The vitamin-fortified nutrient drink will be the only beverage served with the evening meals.

(h) If the loaves will not be used during the day of production or the day following production, they should be frozen.
   1. Loaves will not be kept frozen for more than thirty (30) days.
   2. Frozen loaves will be kept in a locked container in the freezer.
   3. The loaf will be reheated to 165°F prior to serving.

(i) The special management meal recipe must be followed exactly. No substitutions will be allowed.
   1. Any deviation from the recipe may change the nutritional value of the meals.
   2. Each recipe (3 loaves) will be prepared separately.
   3. The inmate will receive all three (3) loaves from the same batch on a daily basis. Therefore, the loaves require labeling.

(j) Each loaf is to be served on a disposable plate with no eating utensils and each beverage will be served in a disposable cup.

/s/
_____
James V. Crosby, Jr., Secretary

4

Kornagay.Discovery.First Request000094

# EXHIBIT

# J2

Murray James
Santa Rosa C.I.
5850 East Milton RD
Milton, Fla 32583

## Sworn Affidavit/
## Declaration

I, Murray James, swear that the following statement is true and based on events that I have personally heard and witnessed:

Prior to Robert Hornaday being approved to the third level of Close Management, we shared the same cell for approximately two and a half months.

On or around October 22, 2008, Sgt. Raybon opened my food flap inorder for me to receive my morning meal and directly state the following to me:

"I had to gas you old cellmate, hornaday, this morning, because he went and got Grielow's badside with all them damn grievances he like to write; you need to try and talk some since into that fool, because the more he write the more we spray"

I, Murray James, swear under the penalties of purjury that the foregoing statements are true and correct and I do not benefit in any way for writing this sworn affidavit.

Date 7/1/2009                    X Murray James

Sworn to and subscribed before me this 1 day of July, 2009 by Murray James. Produced a inmate identification card.

# EXHIBIT

# K2

mk-9 OC

Cobra Pep

#104

## STATE OF FLORIDA
## DEPARTMENT OF CORRECTIONS
### Chemical Agent Accountability Log

| TYPE OF CHEMICAL AGENT ISSUED & DISPENSER NUMBER | DATE | TIME OUT | WEIGHT OUT | TIME IN | WEIGHT IN | SIGNATURE OF SHIFT SUPERVISOR ISSUING AGENT | SIGNATURE OF SHIFT SUPERVISOR RETURNING AGENT | CHIEF OF SECURITY INITIALS |
|---|---|---|---|---|---|---|---|---|
| SR#104 1/12203 | 4-8-09 | 14½ | 644 | 119 | 538 | | | |
| SR2104 1152352 | 4-8-09 | 1:55 | 559 | 1:57 | 443 | | | |
| SR#104 19353 | 10-22-08 | 1:11 a | 493 | 1:25 a | 384 | | | |

This log shall be maintained in each area where chemical agents are stored and shall be utilized any time that chemical agents are issued from any secure storage location.

Kornagay.Discovery.First Request006029

# EXHIBIT

# L2

Declaration Under The Penalty Of Perjury

Being competant to make this declaration and having personal knowledge of the matters stated herein, Declares Pursuant to 28 U.S.C. 1746

I Gregory Nelson #x64214 have witnessed here at S.A.C.I In A-Dorm that chemical agents can affect others in the dorm physically wether their near or far. I personally witnessed the affect the agents cause; I was moved into a cell in A-Dorm A109 were another inmate was sprayed with agents, upon moving into the cell it wasn't decontaminated properly therefore causing respritory problems severe coughing also struggling to breathe as if I was being gased with agents. There after being in the cell for 24 hours my respitory was still disturbed also the lack of decontamination by me having to utilize the utilities the chemical agents caused skin irritation and my skin to peel profosely. Chemical agents are very strong and affect every one who's surrounding you it also lingers for several hours disturbing breathing patterns, eye irritation also astma attacks. Chemical agents lingers for wreens in cells causing bad affects.

Pursuant to 28 U.S.C. 1746 I Declare Under The Penalty Of Perjury that the foregoing statement is true and correct.

Executed,

Gregory Nelson #x64214

9/14/10

# EXHIBIT

# M2

IN THE UNITED STATES DISTRICT COURT
FOR PENSACOLA FLORIDA, CIVIL DIVISION.

ROBERT KORNALAY,
    PLAINTIFF,

VS.                              CASE No. 3:09CB281/LAC/EMT

OFFICER, BURT, et. al,
    RESPONDENT.

## WITNESS DECLARATION OF OATH

I, MARVIN X. HORSLEY, A.C.#106026, do herein
declare, or assertively make witness oath,
under the existing applicable laws
concerning the penalty of perjury, that
I have, on several occassions, been
personally sprayed with CS gas, the
chemical agent that disperses in a
wide concentration of chemical efflux,
as being opposed to the narrow stream
of OC gas. Adscititiously, the physical
damages being personally experianced
by me are as follow:

1) Intense eye distress.
    2) Intense skin irritation for up
to approximately four days.
    3) Intense upper respiratory
disruption for up to approximately an hour.
    4) Do to the neglected adequate
decontamination process of my assigned
singlecell arrangement, an experiance of
constant mild upper respiratory disruption
                [ Pg. 1 ]

of Various Kinds for up to a two week
duration.

In conclusion, I am here in qualified
to make the above declaration base upon
my personal experience at SANTA ROSA C.L.,
while being housed in E-DoRM, quad-2
thereof.

Respectfully Submitted,

Marvin X. Horsley ®

MARVIN X. HORSLEY, PRO-SE
DATED: 08/14/10                    No. 106026, F-DoRM
5850 EAST MILTON RD.
MILTON, FL. 32583.

[ Pg. 2 ]

EXHIBIT N2

UNITED STATES DISTRICT COURT FOR
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT D. KORNAGAY,
        PLAINTIFF,

VS.                              CASE No.: 3:09CV281/LAC/EVT

OFFICER BURT, et al.,
        DEFENDANTS. /

DECLARATION UNDER PENALTY OF PERJURY
OF SAINT JUAN WALKER M56046

    I, SAINT JUAN WALKER, BEING COMPETENT TO MAKE
THIS DECLARATION AND HAVING PERSONAL KNOWLEDGE
OF THE MATTERS STATED THEREIN, DECLARE
PURSUANT TO 28 U.S.C. 1746:
    1.) I HAVE BEEN A PRISONER IN THE FLA. DEPT.
OF CORRECTIONS FOR APPROXIMATELY 31 MONTHS.
    2) SINCE I HAVE BEEN IN PRISON, I HAVE BEEN
SPRAYED WITH THE CHEMICAL AGENT, OC, SABRE
RED, APPROXIMATELY 4 OR MORE TIMES, WHILE
EITHER LOCKED IN MY CELL OR IN A SHOWER
STALL.
    3.) AS A RESULT OF THE CHEMICAL AGENT, I
EXPERIENCED A HARD TIME BREATHING, AS IF
MY LUNGS WAS ON FIRE AND CLOSING UP ON ME,
MY EYES WAS BURNING AND WATERING, AND EVERY
PART OF MY BODY THAT WAS EXPOSED TO CHEMICAL
AGENTS WAS IN PAIN AND FELT AS IF I WAS
ON FIRE.)
    4.) EVEN AFTER A COOL WATER SHOWER,

I WAS STILL IN PAIN FOR APPROXIMATELY 4 TO
EVEN 6 DAYS AT TIMES, BECAUSE THE CHEMICAL
AGENT USED DID IN FACT LINGER ON TO MY
BODY.

5) AFTER BEING SPRAYED WITH CHEMICAL
AGENTS, I HAVE BEEN PLACED BACK IN THE SAME
CELL AFTER IT HAS BEEN DECONTAMINATED;
HOWEVER, BEING THAT THE CIRCULATION FANS ON
THE WING, WERE OFF THE VAPORS OF THE CHEMICAL
AGENTS LINGERED IN THE AIR AND MADE ME FEEL
AS IF I WAS BEING SPRAYED ALL OVER AGAIN.

6) I'AM COMPETENT TO TESTIFY TO THESE FACTS,
AND WILL BE ABLE TO TESTIFY THIS WRITTEN STATE-
MENT VERBALLY, IF I APPEARED IN COURT AS
A WITNESS AT A TRIAL REGARDING THIS MATTER
UNDER OATH. I'AM ALSO OVER THE AGE OF 21.
PURSUANT TO 28 U.S.C. 1746, I DECLARE UNDER
PENALTY OF PERJURY THAT THE FOREGOING
IS TRUE AND CORRECT. EXECUTED ON JULY 26, 2010.

# SAJ WLK
SAINT-JUAN WALKER
DC# M56046
SANTA ROSA C.I.
5850 EAST MILTON Rd.
MILTON, FL. 32583

EXHIBIT O2

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
FLORIDA, PENSACOLA DIVISION

Robert D. Kornagay
      Plaintiff,

                         Case No: 3:09 cv 281-LC/EMT

VS.

Officer Burt, et al.
        Defendants /

Declaration under Penalty of Perjury of
( Dosia Tremain Stewart E20527 )

I, Dosia T. Stewart, being competent to make this declaration and having personal knowledge of the matters stated therein, declares pursuant to 28 U.S.C. 1746:

1. I have been a State prisoner within the Florida Department of Corrections for 7 years.

2. For many different reasons, I have been sprayed with the chemical agents labeled: Oleoresin Capsicum, Sabra Red.

3. As a result to being sprayed with this agent, I I personally experienced dramatic effects of choking, difficulty breathing, and burning eyes and skin; it has also been times when the Chemical Agent caused me to Vomit.

( 1 of 2 )

I have personally experienced the Chemical Agent, Sabra Red OC. Vapors lingering in the air hours after I've been sprayed or others in the same wing been sprayed. Which on many occasions caused very bad chest pains.

5. I am competant to testify to such Facts, and would So testify if I appeared in court as a witness at a trial regarding this matter.

Pursuant to 28 U.S.C. 1746, I, Dosia T Stewart, declare under penalty of perjury that the Foregoing is True and correct. Executed on August 5, 2010.

/s/ Dosia T. Stewart

Dosia T. Stewart
DC# E20527

Santa Rosa Correctional Institution.
5850 East Milton Road
Milton, Florida 32583

( 2 of 2 )

EXHIBIT P2

```
                    FLORIDA DEPARTMENT OF CORRECTIONS          10/24/2008
    ISSO150 (01)           CHARGING DISCIPLINARY REPORT                      PAGE:     1
                               LOG # 119-082758
--------------------------------------------------------------------------------
    DC#: J13805    INMATE NAME: KORNAGAY, ROBERT D.            INFRACTION
    VIOLATION CODE:  0023    TITLE: PART.IN DISTURBANCE        DATE: 10/22/08
    FACILITY CODE:  119     NAME:  SANTA ROSA C.I.             TIME: 00:05
--------------------------------------------------------------------------------
```

I.   STATEMENT OF FACTS
     INMATE KORNAGAY, ROBERT DC# J13805, IS BEING CHARGED WITH
     VIOLATION OF FAC CH 33-601.314, RULES OF PROHIBITED CONDUCT,
     2-3 PARTICIPATING IN A MINOR DISTURBANCE. ON 10/22/08 I WAS
     ASSIGNED AS THE D-DORM CM HOUSING SUPERVISOR AT SANTA ROSA
     CORRECTIONAL INSITUTION MAIN UNIT. AT APPROX. 12:05 AM I
     OBSERVED INMATE KORNAGAY, HOUSED ALONE IN CELL D3115L,
     YELLING IN THE WING AND KICKING ON THE CELL DOOR. I
     COUNSELED WITH INMATE KORNAGAY CONCERNING HIS BEHAVIOR.
     INMATE KORNAGAY REFUSED TO COMPLY AND CONTINUED TO CAUSE A
     DISTURBANCE IN THE HOUSING UNIT. CHEMICAL AGENTS HAD TO BE
     UTILIZED TO QUELL THE DISTURBANCE THAT INMATE KORNAGAY WAS
     CREATING IN THE DORMITORY. INMATE KORNAGAY WILL REMAIN IN
     HIS CURRENT STATUS PENDING DISCIPLINARY TEAM ACTION. THE OIC
     WAS NOTIFIED AND AUTHORIZED THIS REPORT.


     REPORT WRITTEN: 10/22/08, AT 04:00   OFFICER: RG011 - RAYBON, G.
--------------------------------------------------------------------------------

II.  INMATE NOTIFICATION OF CHARGES: DATE DELIVERED: _10_/_24_/_08_, AT _8_: _06pm_

         NO HEARING SHALL COMMENCE PRIOR TO 24 HOURS OF DELIVERY OF CHARGES
         EXCEPT WHEN THE INMATE'S RELEASE DATE DOES NOT ALLOW TIME FOR SUCH
         NOTICE OR THE INMATE WAIVES THE 24 HOUR PERIOD AS AUTHORIZED IN RULE
         33-601, FLORIDA ADMINISTRATIVE CODE.

                    DELIVERED BY : Sgt Street - T. ___
--------------------------------------------------------------------------------


     NOTICE TO INMATE:
     AS AN INMATE BEING CHARGED WITH A VIOLATION OF THE RULES OF PROHIBITED
     CONDUCT, YOU ARE ADVISED THE FOLLOWING:
--------------------------------------------------------------------------------


     INVESTIGATION:
     AN IMPARTIAL INVESTIGATION WILL BE CONDUCTED ON THIS DISCIPLINARY REPORT.
     DURING THE INVESTIGATION OF THE DISCIPLINARY REPORT, YOU WILL BE ADVISED
     OF THE CHARGES AGAINST YOU AND YOU MAY REQUEST STAFF ASSISTANCE. DURING
     THE INVESTIGATION YOU SHOULD MAKE KNOWN ANY WITNESSES TO THE INVESTIGATING
     OFFICER. THE TESTIMONY OF WITNESSES SHALL BE PRESENTED BY WRITTEN STATEMENTS.
     SEE RULE 33-601.307(3) FOR COMPLETE INFORMATION REGARDING WITNESSES. YOU WILL
     HAVE THE OPPORTUNITY TO MAKE A STATEMENT IN WRITING REGARDING THE CHARGE AND
     TO PROVIDE INFORMATION RELATING TO THE INVESTIGATION.
--------------------------------------------------------------------------------

```
                    FLORIDA DEPARTMENT OF CORRECTIONS          10/24/2008
ISSO150 (01)           CHARGING DISCIPLINARY REPORT                        PAGE:    2
                          LOG # 119-082758
--------------------------------------------------------------------------------
 DC#: J13805    INMATE NAME: KORNAGAY, ROBERT D.              INFRACTION
 VIOLATION CODE:  0023   TITLE: PART.IN DISTURBANCE          DATE: 10/22/08
 FACILITY CODE:  119    NAME:  SANTA ROSA C.I.               TIME: 00:05
--------------------------------------------------------------------------------


 DELIVERY OF CHARGES:
 A COPY OF THE CHARGES WILL BE PROVIDED TO YOU AT LEAST 24 HOURS PRIOR
 TO THE CONVENING OF THE DISCIPLINARY HEARING UNLESS YOU WAIVE THE WAITING
 PERIOD. THE HEARING MAY BEGIN ANY TIME AFTER THE 24 HOUR PERIOD UNLESS
 YOU SIGN THE WAIVER.
--------------------------------------------------------------------------------


 DISCIPLINARY HEARING:
 THE DECISION WILL BE MADE IN ADVANCE WHETHER THE HEARING WILL BE CONDUCTED
 BY THE DISCIPLINARY TEAM OR THE HEARING OFFICER. YOU MAY REQUEST A HEARING
 BY THE FULL DISCIPLINARY TEAM RATHER THAN THE HEARING OFFICER. YOU WILL
 APPEAR IN PERSON BEFORE THE DISCIPLINARY TEAM/HEARING OFFICER UNLESS YOU
 WAIVE THIS APPEARANCE BY SIGNING A WAIVER FORM. YOU WILL BE ADVISED OF
 THE CHARGES PLACED AGAINST YOU AND THE RANGE OF PENALTY IF FOUND GUILTY.
 YOU MAY REQUEST STAFF ASSISTANCE. THE CHAIRPERSON/HEARING OFFICER WILL READ
 THE STATEMENT AND ASK YOU FOR YOUR PLEA. A GUILTY PLEA REQUIRES NO FURTHER
 STATEMENT; HOWEVER, YOU MAY MAKE A STATEMENT FOR THE TEAM/HEARING OFFICER
 TO CONSIDER. A NO CONTEST PLEA WILL BE TREATED AS A GUILTY PLEA. A REFUSAL
 TO ENTER A PLEA WILL BE TREATED AS A NOT GUILTY PLEA. IF YOU ENTER A NOT
 GUILTY PLEA, YOU WILL BE ALLOWED TO MAKE A STATEMENT ON YOUR OWN BEHALF,
 PRESENT EVIDENCE AND REQUEST STAFF OR INMATE WITNESSES AS DEEMED APPROPRIATE
 BY THE TEAM/HEARING OFFICER. AFTER THE TEAM/HEARING OFFICER HAS MADE A
 DECISION, YOU WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE DECISION AND
 THE EVIDENCE RELIED UPON IN MAKING THAT DECISION. IF YOU ARE FOUND GUILTY, YOU
 WILL BE ADVISED VERBALLY AND IN WRITING AS TO THE RECOMMENDED PENALTY.
--------------------------------------------------------------------------------


 APPEAL:
 IF YOU ARE FOUND GUILTY, YOU MAY APPEAL THIS DECISION BY FILING A
  FORMAL GRIEVANCE WITH THE WARDEN OF YOUR FACILITY WITHIN 15 DAYS OF
 THE RECEIPT OF WRITTEN NOTICE OF THE TEAM/HEARING OFFICERS DECISION.
 FOR INFORMATION REGARDING THE RULES ON DISCIPLINE, REFER TO: 33-601, F. A. C.
```

```
                    FLORIDA DEPARTMENT OF CORRECTIONS              10/28/08
ISSO158 (14)             DISCIPLINARY REPORT                         PAGE   1
                         HEARING INFORMATION
                         LOG # 119-082758
-------------------------------------------------------------------------------
DC#: J13805   INMATE NAME: KORNAGAY, ROBERT D.          B1215L INFRACTION
VIOLATION CODE:  0023   TITLE: PART.IN DISTURBANCE          DATE: 10/22/08
FACILITY CODE:  119    NAME:  SANTA ROSA C.I.               TIME: 00:05
-------------------------------------------------------------------------------
         TEAM    FINDINGS AND ACTION   DATE: 10/28/08, AT: 08:10
      INMATE OFFERED STAFF ASSISTANCE: DECLINED
      INMATE PLEA: NOT GUILTY   FINDINGS: GUILTY
      INMATE PRESENT: YES
   POSTPONEMENT:
   BASIS FOR DECISION:
      BASED IN PART ON THE WRITTEN STATEMENT OF SGT. RAYBON AND
      CONFIRMED IN THE INVESTIGATION THAT ON 10/22/08 AT APPROX.
      12:05 A.M , I/M KORNAGAY, ROBERT DC# J13805 PARTICIPATED IN
      A DISTURBANCE WHEN HE WAS OBSERVED YELLING IN THE WING AND
      KICKING ON THE CELL DOOR. CHEMICAL AGENTS HAD TO BE UTILIZED
      TO QUELL THE DISTURBANCE THAT I/M KORNAGAY WWAS CREATING IN
      THE DORMITORY. ALL WITNESS STATEMENTS AND EVIDENCE WERE READ
      AND CONSIDERED BY THE DISCIPLINARY HEARING TEAM. A COPY OF
      THE FINDINGS WAS PROVIDED TO I/M KORNAGAY LATER IN THE DAY
      AND HE WAS ADVISED THAT HE HAS FIFTEEN DAYS TO APPEAL THE
      TEAMS DECISION.

ACTIONS TAKEN:
   DISCIPLINARY CONFINEMENT:  30; PROBATION DAYS SET:  0 CONSECUTIVE

  RESTITUTION:      $.00; INDIV.REVIEW/COUNSEL?: N; CONFISCATE CONTRABAND?: N

  TEAM CHAIRMAN:   RTM16 - REYES,T.M.
  TEAM MEMBERS:    GWL00 - GIELOW,W.L.               -
-------------------------------------------------------------------------------
-------------------------------------------------------------------------------
```

EXHIBIT Q

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SEP 0 6 2010

FOR MAILING

ROBERT D. KOPANAGAY, inmate #J13805,
            Plaintiff,

vs.                              CASE NO: 3:09 CV 281/LAC/ EMT

OFFICER BURT, et al.,
            Defendants /

## REQUEST FOR ADMISSIONS

Pursuant to Rule 36, Fed. R. Civ. P., Plaintiff requests the defendants to make the following admissions within 30 days after the service of this request. Please take notice that this request refers to the documents in the defendant's possession, that the Plaintiff have requested and paid for copies of but have not received as of this date.

### First request for documents

1. Please admit that the document identified as page number 000029 is authentic.

2. Please admit that the document identified as page number 000031 is authentic.

3. Please admit that the document identified as page number 000032 is authentic.

4. Please admit that the document identified as page number 000037 is authentic.

5. Please admit that the document identified as page number 000041 is authentic.

6. Please admit that the document identified as page number 000042 is authentic.

7. Please admit that the document identified as page number 000046 is authentic.

1

8. Please admit that the document identified as page number 000047 is authentic.

9. Please admit that the document identified as page number 000052 is authentic.

10. Please admit that the document identified as page number 000085 is authentic.

11. Please admit that the document identified as page number 000086 is authentic.

12. Please admit that the document identified as page number 000088 is authentic.

13. Please admit that the document identified as page number 000089 is authentic.

14. Please admit that the document identified as page number 000090 is authentic.

15. Please admit that the document identified as page number 000091 is authentic.

16. Please admit that the document identified as page number 000092 is authentic.

17. Please admit that the document identified as page number 000093 is authentic.

18. Please admit that the document identified as page number 000094 is authentic.

19. Please admit that the document identified as page number 000099 is authentic.

20. Please admit that the document identified as page number 000101 is authentic.

21. Please admit that the document identified as page number 000102 is authentic.

22. Please admit that the document identified as page number 000103 is authentic.

23. Please admit that the document identified as page number 000104 is authentic.

24. Please admit that the document identified as page number 000105 is authentic.

25. Please admit that the document identified as page number 000115 is authentic.

## Second Request for documents

26. Please admit that the document identified as page number 000005 is authentic.

27. Please admit that the document identified as page number 000007 is authentic.

28. Please admit that the document identified as page number 000091 is authentic.

29. Please admit that the document identified as page number 000092 is authentic.

30. Please admit that the document identified as page number 000093 is authentic.

31. Please admit that the document identified as page number 000094 is authentic.

32. Please admit that the document identified as page number 000095 is authentic.

33. Please admit that the document identified as disposition of videotape or Audiotape evidence / form DC6-2028, Log# 119-082723, is authentic.

34. Please admit that the document identified as disposition of video tape or Audio tape evidence / form DC6-2028, Log# 082669, is authentic.

## Defendant's Motion for Summary Judgment Exhibits

35. Please admit that the document identified as exhibit "C", DRSH000005, is authentic.

36. Please admit that the document identified as exhibit "C", DRSH000006, is authentic.

3

37. Please admit that the document identified as exhibit "E", Hornagy-Grievances. 1000054, is authentic.

38. Please admit that the document identified as exhibit "G" page 1 of 80, is authentic.

39. Please admit that the document identified as exhibit "G" page 5 of 80, is authentic.

40. Please admit that the document identified as exhibit "G" page 6 of 80, is authentic.

41. Please admit that the document identified as exhibit "G", page 9 of 80, is authentic.

42. Please admit that the document identified as exhibit "G", page 22 of 80, is authentic.

43. Please admit that the document identified as exhibit "G", page 35 of 80, is authentic.

9-26-10

/s/ Robert D. Hornagy

Robert D. Hornagy
DC# JT3805
Santa Rosa C.I.
5850 E. Milton RD
Milton, Fla 32583

Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been furnished by U.S. Mail to: Lance E. Neff, Office of the Attorney General, the Capitol, PL-01, Tallahassee, Fla 32399-1050 on this 26 day of September 2010.

Robert D. Hornagy
Robert D. Hornagy

c)

# EXHIBIT

R2



UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SEP _1 2010

AUG 2 9 2010

FOR MAILING
INMATE INITIALS

ROBERT D. KORNAGAY, Inmate #J13805,
            Plaintiff,

vs.                                   Case No. 3:09cv281/LAC/EMT
OFFICER BURT, et al,
            Defendants /

## DEPOSITION BY WRITTEN QUESTIONS

To the Unknown inmate at Santa Rosa C.I., in cell G-3217,
Come now, Plaintiff, Robert D. Kornagay, pro se, and
pursuant to Rule 31 of the Federal Rules of Civil procedure,
Plaintiff requests that the Unknown inmate at Santa
Rosa C.I., in Cell G-3217, answer the following questions:

1. Throughout the months of September, October, and
November of 2008, do you recall being housed at Santa
Rosa C.I., in "D"-dormitory, cell #3112?

2. While you were housed in cell #D-3112, do you remember
a inmate housed in cell #D-3115 named Robert D. Kornagay
also known as New York?

3. While in "D"-dormitory, do you recall Mr. Kornagay
being Sprayed with chemical agents? If so was Mr.
Kornagay ever yelling on the wing, kicking on his cell
door, or creating any kind of disturbance before or
during the application of chemical agents?

4. Do you recall if the Circulation fans on the wing
were turned off, prior to Mr. Kornagay being sprayed?
If so was the fans ever turned back on that night?

1

5. Being that you were in cell D-3112, were you able to see inside of cell D-3115 at a angle, when ever the cell door was open? If so did you see chemical agents on the floor and/or bed and/or walls and/or bunk area before Mr. Hornsby was placed back in cell #3115, after being sprayed with chemical agents?

6. After Mr. Hornsby was escorted to the shower, do you recall ever hearing Sergeant Payton and lieutenant Orso directing the inmate clean up crew to leave some of the chemical agent stained clothes in Mr. Hornsby's cell or to only clean certain areas of the cell? If so please explain who said what and what was said.

7. Throughout the mentioned timeframe, do you recall ever seeing officer Burt go to Mr. Hornsby's cell door threatening to conspire with other correctional officers to write false disciplinary reports and get them to spray Mr. Hornsby with chemical agents, in order to retaliate because of grievances Mr. Hornsby wrote?

8. Before or after officer Grace alleged that Mr. Hornsby attempted and actually spit on him, have you ever heard officer Grace make any comments, statements, or refer to inmate grievances Mr. Hornsby wrote against officer Burt, if so please describe the comments or statements you heard.

9. A day or so before Mr. Hornsby was sprayed with chemical agents, do you recall ever hearing lieutenant Crebow saying to force Mr. Hornsby into writing a witness statement saying the grievances he filed against officer Burt was false?

10. After Mr. Hornsby was sprayed with chemical agents, do you recall seeing any chemical agent stains and/or burn marks as a result of chemical agents in the plaintiff's face, head or any other part of his body, days after being sprayed?

2

11 After Mr. Hornsby was placed on management
meal did you notice a loss of about twenty to twenty
five pounds in his weight?

12 After Mr. Hornsby was sprayed and placed back in
his cell, did you hear sounds throughout the night
coming from his cell as if he was fighting to breath?
If so describe the sounds you heard.

13. Was you standing at your cell door when officer
Grace alleged that Mr. Hornsby made an attempt
to spit on him and/or when he alleged that Mr.
Hornsby did spit on him? If so please explain exactly
what you seen.

3/29/10                                    /s/ Robert D Hornsby
Date                                       Robert D Hornsby
                                           DC# J13805
                                           Santa Rosa C.I.
                                           5850 E Milton Rd
                                           Milton, Fla 32583

Certificate of Service

I hereby certify that a true and correct copy
of the foregoing has been furnished by U.S. Mail to:
Alexandria Walters, Asst. General Counsel, 2601
Blair Stone RD, Tallahassee, Fla 32399-2500, and
Lance E Ness, Office of the Attorney General, The
Capital, PL-01, Tallahassee, Fla 32399-1050 on this 29th
day of August 2010.

                                /s/ Robert D Hornsby

3

## CERTIFICATE OF NOTARY PUBLIC

**STATE OF FLORIDA** )
**in and for** )
H ᴀ ʀ ᴅ ᴇ ᴇ ___ **COUNTY)**

Before me the undersigned authority, this day personally appeared __Dᴏɴɴɪᴇ__

Aᴅᴋɪɴs _____, who first being duly sworn says that he is a witness in the above-

styled cause, the he has read the foregoing affidavit, and has personal knowledge of the facts and

matters therein set forth and alleged and hat each and all of these facts and matters are true and

correct.

Personally known _____; or

Produced a Florida Department of Corrections Inmate Identification # 10466 _____

_Donnie S. Adkins_
**Inmate Signature**

Sworn and Subscribed to before me this 20 day of October , 2010 .

_Nancy Thornton_
Notary Public or other person authorized
to administer and oath (print, type, or
stamp commissioned name of notary public)

March 10, 2012
**My Commission Expires**

**Seal:**

NOTARY PUBLIC-STATE OF FLORIDA
Nancy Thornton
Commission #DD766502
Expires:  MAR. 10, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

3

1) Yes
2) Yes
3) Yes, No
4) No Yes, Yes
5) But Yes, Yes ~~not~~ on the bed and walls.
6) No
7) Yes
8) No
9) No
10) No
11) No
12) No
13) No
~~14)~~

The above response is true and correct to the best of my knowledge.

*Donnie L. Adkins*
Donnie Adkins DC#104066


The following information was taken on October 20, 2010 from Inmate Donnie Adkins DC#104066 in response to the questions asked of him during an interview between him and Officer Nancy Thornton. Litigation Officer and Notary at Hardee Correctional Institution.

The questions were read to him. as he asked and he responded by writing the above.